[ORAL ARGUMENT NOT SCHEDULED]
No. 25-1009

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

In re UNITED STATES, Petitioner

_____

PETITION FOR A WRIT OF MANDAMUS AND PROHIBITION

_____

MATTHEW G. OLSEN
Assistant Attorney General
  for National Security

BRIAN H. FLETCHER
Principal Deputy Solicitor General
U.S. Department of Justice
Washington, D.C.  20530

# CERTIFICATE AS TO PARTIES AND RELATED CASES

## I. Parties and Amici Appearing Below:

1. United States of America, prosecution/petitioner;

2. Khalid Shaikh Mohammad, accused/respondent;

3. Walid Muhammad Salih Mubarak Bin 'Attash, accused/respondent;

4. Mustafa Ahmed Adam al Hawsawi, accused/respondent;

5. Ali Abdul Aziz Ali, accused/intervenor.

## II. Parties and Amici Appearing in this Court

1. United States of America, petitioner;

2. Khalid Shaikh Mohammad, respondent;

3. Walid Muhammad Salih Mubarak Bin 'Attash, respondent;

4. Mustafa Ahmed Adam al Hawsawi, respondent.

## III. Rulings Under Review

This case involves a petition for a writ of mandamus and prohibition to the Military Commission. The order under review was entered on November 6, 2024, and is attached as Exhibit A. A petition for a writ of mandamus and prohibition to the United States Court of Military Commission Review was denied on December 30, 2024. That court's decision is attached as Exhibit B.

## IV. Related Cases

Respondents and their co-defendant have previously sought writs of mandamus and prohibition from this Court.  The cases are:  *In re Ammar Al-Baluchi*, No. 21-1211; *In re Ammar Al-Baluchi*, No. 19-1156; *In re Ammar Al-Baluchi*, No. 19-1146; *In re Mustafa Al Hawsawi*, Nos. 19-1100 & 19-1117; *In re Khalid Shaikh Mohammad*, No. 19-1012; *In re Ammar Al-Baluchi*, 18-1152; *In re Khalid Shaikh Mohammad*, No. 17-1179; *In re Khalid Shaikh Mohammad*, No. 17-1156.

# Table of Contents

**Page**

Certificate as to Parties and Related Cases .............................................................. ii

Table of Authorities .........................................................................................v

Glossary of Abbreviations ........................................................................... vii

Jurisdictional Statement ................................................................................1

Issue...............................................................................................................1

Relief Sought.................................................................................................1

Statement of Facts.........................................................................................2

Summary of Argument .................................................................................7

Reasons for Granting the Writ .....................................................................8

   I.     The Government Lacks an Adequate Alternative Means for Relief..............9

   II.   The Government Has a Clear and Indisputable Right to Relief...................11

   III.  Issuance of the Writ Is Appropriate Under the Circumstances.....................20

Conclusion ..................................................................................................21

Certificate of Compliance ..........................................................................23

Certificate of Service ..................................................................................24

**Material Under Seal Deleted**

**Table of Authorities**

| Cases | Page |
|---|---|

*Al-Bahlul v. United States,* 967 F.3d 858 (D.C. Cir. 2020) ...............................13, 14

*In re Al-Nashiri*, 791 F.3d 71 (D.C. Cir. 2015) ..........................................................9

*Cheney v. United States Dist. Ct.,* 542 U.S. 367 (2004) ...........................................9

*Choate v. TRW, Inc.*, 14 F.3d 74 (D.C. Cir. 1994) ..................................................17

*United States v. Dean,* 67 M.J. 224 (C.A.A.F. 2009) .........................................17, 18

*United States v. Fokker Services B.V.*, 818 F.3d 733 (D.C. Cir. 2016) ..........9, 11, 20

*United States v. Sundel*, 985 F.3d 1029 (D.C. Cir. 2021) ........................................10

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ..................................20

**Statutes**

10 U.S.C. § 113 ...................................................................................................12, 13

Military Commissions Act of 2009
    10 U.S.C. § 948a .........................................................................................2, 12

    10 U.S.C. § 948h ...............................................................................3, 7, 12, 13

    ██████████████ .......................................................................................4

    10 U.S.C. § 948j(a) ...........................................................................................13

    10 U.S.C. § 949a(a) ...........................................................................................13

    10 U.S.C. § 950d(a) ...........................................................................................10

10 U.S.C. § 950f ....................................................................................10

10 U.S.C. § 950g ....................................................................................10

28 U.S.C. § 1651(a) ................................................................................8

## Other Authorities

*Black's Law Dictionary* (10th ed. 2014)................................................17

Regulation for Trial by Military Commission ¶ 1-3(a)...........................13

Rules for Military Commissions
    R.M.C. 103(a)(10) .....................................................................5, 7, 11

    R.M.C. 601(f) ..............................................................................14

    R.M.C. 705(d)(4)(B)..........................................................5, 7, 8, 11, 14, 17

U.S. Dep't of Justice, Office of the Inspector General, *Federal Bureau of Investigation Casework and Human Resource Allocation*, Report No. 03-37, ch. 7, Ex. 7-1 (Sept. 2003) ........................................................................2

# Glossary of Abbreviations

USCMCR – United States Court of Military Commission Review

PTA – Pretrial Agreement

R.M.C. – Rules for Military Commissions

R.T.M.C. – Regulation for Trial by Military Commission

## Jurisdictional Statement

This case concerns an ongoing law-of-war prosecution by military commission. This Court has appellate jurisdiction over military commissions and the United States Court of Military Commission Review pursuant to 10 U.S.C. § 950g. This Court has jurisdiction to issue writs in aid of that jurisdiction pursuant to 28 U.S.C. § 1651(a). *See In re Al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015).

## Issue

Whether the United States is entitled to a writ of mandamus and prohibition because the Secretary of Defense clearly and indisputably had the authority to withdraw pretrial plea agreements that had been signed by a subordinate two days earlier.

## Relief Sought

The United States seeks a writ of mandamus and prohibition recognizing that, on August 2, 2024, the Secretary of Defense validly withdrew from the pretrial agreements signed by his subordinate on July 31, 2024, and prohibiting the military commission from conducting hearings in which the respondents would enter guilty pleas pursuant to the withdrawn pretrial agreements.

## Statement of Facts

The respondents are Khalid Shaikh Mohammad, the alleged mastermind of the September 11, 2001, terrorist attacks that killed thousands of people and injured hundreds more, and two of his three co-defendants, Walid Bin 'Attash and Mustafa al Hawsawi. The allegations against the respondents set forth their extensive roles as the counselors, commanders, and conspirators in the murder of 2,976 people, the injury of numerous civilians and military personnel, and the destruction of property worth tens of billions of dollars. The September 11, 2001 attacks constituted the deadliest attack on American soil since the Japanese attack on Pearl Harbor. The attacks led directly to the largest criminal investigation in American history, *see* U.S. Dep't of Justice, Office of the Inspector General, *Federal Bureau of Investigation Casework and Human Resource Allocation*, Report No. 03-37, ch. 7, Ex. 7-1 (Sept. 2003) (https://oig.justice.gov/ reports/FBI/ a0337/chap7.htm), and to military and law enforcement operations on a global scale.

The respondents are each charged under the Military Commissions Act of 2009, 10 U.S.C. § 948a *et seq.*, with seven law-of-war crimes: (I) conspiracy; (II) attacking civilians; (III) attacking civilian objects; (IV) murder in violation of the law of war; (V) destruction of property in violation of the law of war;

(VI) hijacking or hazarding a vessel or aircraft; and (VII) terrorism. Five of these charges carry the potential for capital punishment.

Unlike civilian courts, military trial courts are not standing bodies. Instead, a court-martial or military commission is convened to try a particular case. Pursuant to the Military Commissions Act, a military commission "may be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose." 10 U.S.C. § 948h. The military commission in this case was convened in 2012 at the direction of Retired Vice Admiral Bruce MacDonald, who had been appointed as the Convening Authority for Military Commissions by Secretary of Defense Gates. Ruling on Defense Motions to Schedule Entry of Pleas 4 (Mil. Comm'n Nov. 6, 2024) (MC Ruling) (attached as Exhibit A). Between 2012 and 2023, several different individuals served as Convening Authority. *See id.*

On August 21, 2023, Secretary of Defense Austin designated retired Brigadier General Susan Escallier as Convening Authority. *Id.* Exercising her authority, Convening Authority Escallier authorized the Chief Prosecutor for Military Commissions, Rear Admiral Aaron Rugh, to negotiate with the respondents in an effort to agree on proposed pretrial agreements. *See id.* at 6.

On July 29, 2024, Mohammad and Bin 'Attash signed Offers for Pretrial

Agreements, *see id.*, in which they offered, *inter alia*, to plead guilty to all seven

charges against them, as well as an eighth charge—intentionally causing serious

bodily injury, in exchange for, *inter alia*, the removal of the possibility of death

sentences.  Under the agreements, ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ On July 30,

2024, Hawsawi signed a similar Offer for Pretrial Agreement, ████████████

████████████████████████████████████

██████████████████████████ *See* MC Ruling 6-7.

On July 31, 2024, Convening Authority Escallier signed all three offers.

*See id.* at 7.  Two days later, on August 2, 2024, Secretary Austin issued a

memorandum to Convening Authority Escallier stating:

> I have determined that, in light of the significance of the decision to
> enter into pre-trial agreements with the accused in the above-
> referenced case, responsibility for such a decision should rest with
> me as the superior convening authority under the Military
> Commissions Act of 2009.  Effective immediately, I hereby

> withdraw your authority in the above-referenced case to enter into a pre-trial agreement and reserve such authority to myself.
>
> Effective immediately, in the exercise of my authority, I hereby withdraw from the three pre-trial agreements that you signed on July 31, 2024 in the above-referenced case.

*Id.* at 9.

The respondents argued that the Secretary's decision was invalid and filed motions asking the military commission to schedule dates for them to enter pleas in accordance with the pretrial agreements. *See id.* at 2.

The Rules for Military Commissions (R.M.C.) provide that the "convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement" and define the term "convening authority" to mean "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense for that purpose." R.M.C. 103(a)(10); R.M.C. 705(d)(4)(B).[1] Nevertheless, the military commission judge found the withdrawal to be unlawful because, in the commission's view, Convening Authority Escallier was the only convening authority, MC Ruling 23,

---

[1] The Rules for Military Commissions are available at https://www.mc.mil/Portals/0/pdfs/Manual%20for%20Military%20Commissions%202019%20Edition.pdf.

and because the commission believed the respondents had begun performing promises in the agreements, *id.* at 26-27.

The government sought a writ of mandamus and prohibition in the United States Court of Military Commission Review (USCMCR), which declined to issue the writ. Opinion, *In re Mohammad*, No. 24-001 (U.S.C.M.C.R. Dec. 30, 2024) (USCMCR Decision) (attached as Exhibit B). Although the USCMCR ultimately denied relief, it agreed with much of the government's position. In particular, the court held that the Secretary clearly and indisputably had authority, as the superior officer, to reserve for himself authorities related to pretrial agreements while retaining Convening Authority Escallier as convening authority for other purposes. *See id.* at 18 (finding that the government "has established a clear and indisputable right regarding [that] matter"). The USCMCR explained that the "Secretary has vast authority in the Department of Defense, and in military commissions." *Id.* at 13. The USCMCR concluded that, "[l]ogically, this vast authority includes the authority to act as convening authority to approve or disapprove [pretrial agreements] without taking all of the responsibilities of the convening authority." *Id.*

The USCMCR nevertheless declined to issue a writ of mandamus concerning respondents' pretrial agreements on the sole ground that the

respondents had begun performing a promise contained in their pretrial agreements. *Id.* at 17.

The government sought a continuance of the plea hearings until January 27, 2025, but the military commission judge denied the motion and set the hearings to begin on Friday, January 10, 2025, at 9:00 AM. *See* Ruling on Government Motion to Continue the Hearing for the Entry of Pleas (Mil. Comm'n Jan. 3, 2025) (attached as Exhibit C).

## Summary of Argument

The Military Commissions Act of 2009 designates the Secretary of Defense as the convening authority for military commissions and empowers him to appoint subordinate convening authorities. 10 U.S.C. § 948h; *see also* R.M.C. 103(a)(10). A convening authority "may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement." R.M.C. 705(d)(4)(B). Acting as the superior convening authority, the Secretary lawfully withdrew the pretrial agreements at issue here only two days after they were signed by a subordinate convening authority.

The USCMCR correctly recognized that the Secretary had clear and indisputable authority to reserve for himself decisions related to pretrial agreements while retaining a subordinate officer as convening authority for other

7

purposes. The discrete dispute raised in this petition concerns the USCMCR and the military commission's misunderstanding of unambiguous language of the pretrial agreements, and their resulting conclusion that the respondents had begun performing the "promises" contained in those agreements before the Secretary's action. That error is narrow but plain. For example, the USCMCR principally reasoned that the respondents had begun to perform promises contained in the agreements by refraining from participating in a motions hearing, and by otherwise declining to act in ways that would have breached the agreements. But by its plain terms, the relevant promise was to *withdraw* pending motions, not for the respondents to remain inactive—and the respondents did not perform the promise to withdraw motions. And the relevant procedural rules governing withdrawal confirm the government's entitlement to relief: One cannot "perform" a promise contained in an agreement merely by refraining from affirmatively violating the agreement, particularly for a period as short as two days. A contrary understanding would render the language in R.M.C. 705(d)(4)(B) meaningless, as another provision allows the government to withdraw in response to a violation.

## Reasons for Granting the Writ

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the power to issue a writ of mandamus to a military commission in order to preserve this

Court's appellate jurisdiction over convictions from military commissions. *In re Al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015). This Court will issue a writ of mandamus where the three *Cheney* factors are satisfied: (i) the petitioner has no other adequate means to attain the relief it desires; (ii) the petitioner has a clear and indisputable right to relief; and (iii) the Court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances. *United States v. Fokker Services B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (citing *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380 (2004)). Each of these conditions is satisfied here. The writ is "reserved for really extraordinary cases," *id.* (internal quotation marks omitted), and this case—where a military judge has misinterpreted unambiguous contract terms and thus prevented the Secretary of Defense from exercising his clear authority to make a crucial decision regarding the prosecution of the alleged plotters of the 9/11 attacks—clearly qualifies.

## I. The Government Lacks an Adequate Alternative Means for Relief

There is no alternative means for relief because the military commission's ruling invalidating the Secretary's August 2, 2024, action is not subject to either interlocutory or final-judgment appeal. *See Fokker Servs.*, 818 F.3d at 747 (holding that the first *Cheney* factor is satisfied where "interlocutory appeal is

unavailable, and appeal after final judgment would be an inadequate form of relief").

This Court's appellate jurisdiction to review decisions from military commissions is defined by the Military Commissions Act.  *See United States v. Sundel*, 985 F.3d 1029, 1031-32 (D.C. Cir. 2021).  Under that statute, the government has only limited authority, which does not apply here, to take an interlocutory appeal to the USCMCR, *see* 10 U.S.C. § 950d(a), and no authority to bring interlocutory appeals in this Court, *see id.*; 10 U.S.C. § 950g.

Nor could the government take an appeal at the end of the case.  Review of a final judgment from the military commission by the USCMCR is limited to "any matter properly raised by the *accused*."  10 U.S.C. § 950f (emphasis added).  And this Court can review a final judgment only where there is a "final decision" from the USCMCR or where the accused waives review by the USCMCR.  10 U.S.C. § 950g(c).  Thus, the government cannot appeal a final judgment of the military commission to the USCMCR, and it cannot appeal to this Court unless a defendant has either appealed to the USCMCR or waived such review.  There is thus no other avenue for this Court's review of the ruling at issue.

## II.    The Government Has a Clear and Indisputable Right to Relief

The government has a clear and indisputable right to relief.  *See Fokker Servs.*, 818 F.3d at 749.  Establishing this *Cheney* factor has, of course, "never required the existence of a prior opinion addressing the precise factual circumstances or statutory provision at issue in order to find clear error justifying mandamus relief."  *Id.* at 749-50.  But here it is undisputed that the Rules provide that the "convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement."  R.M.C. 705(d)(4)(B).  Thus, the only relevant questions are:  (1) Does the term "convening authority" under the Rule include the Secretary?; and (2) Did the respondents begin performance of the promises in the agreements before the Secretary withdrew from them on August 2, 2024?  As the USCMCR correctly recognized, the answer to the first question is a clear "yes."  And the answer to the second question is a clear "no."

1.  The question whether the term "convening authority" in the Rules for Military Commissions includes the Secretary is straightforward because the Rules define the term.   Under the Rules, "convening authority" means "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense for that purpose."  R.M.C. 103(a)(10).  Thus, the term "convening

authority" clearly encompasses the Secretary, who is, as he said in his August 2 memorandum, the "superior convening authority."  MC Ruling 9.

The USCMCR recognized that straightforward conclusion.  *See* USCMCR Decision 7-10.  The Military Commissions Act itself does not contain a specific definition of the term "convening authority," *see* 10 U.S.C. § 948a (setting out the defined terms in the statute), but instead simply uses the term to refer to an official with the "authority" to "conven[e]" military commissions—an authority that the statute expressly grants to the Secretary.  10 U.S.C. § 948h (titled "who may convene military commissions" and specifying the Secretary as well as "any officer or official . . . designated by the Secretary for that purpose").  And as the USCMCR explained, "powerful interlocking authorities give the Secretary of Defense supervisory authority to replace [Brigadier General] (Ret.) Escallier as convening authority for [pretrial agreements] without taking all convening authority responsibilities from her."  USCMCR Decision 7.

The Secretary is "the principal assistant to the President in all matters relating to the Department of Defense" and is vested with "authority, direction, and control" over the Department.  10 U.S.C. § 113(b).  "Unless specifically prohibited by law," he is statutorily authorized to "perform any of his functions or duties, or exercise any of his powers through . . . such person in, or organizations of, the

Department of Defense as he may designate" "*without being relieved of his responsibility*."  10 U.S.C. § 113(d) (emphasis added).

As particularly relevant here, the Secretary has principal statutory and regulatory authority over the military commission process.  *See, e.g.*, 10 U.S.C. § 948h; *id.* § 948j(a) ("The Secretary of Defense shall prescribe regulations providing for the manner in which military judges are so detailed to military commissions."); *id.* § 949a(a) ("Pretrial, trial, and post-trial procedures, including elements and modes of proof, for cases triable by military commission under this chapter may be prescribed by the Secretary of Defense."); Regulation for Trial by Military Commission (R.T.M.C.) ¶ 1-3(a) ("The Secretary of Defense is responsible for the overall supervision and administration of military commissions within the [Department of Defense].").[2]  He has the power "to prescribe procedures and rules of evidence governing military commissions."  *Al-Bahlul v. United States*, 967 F.3d 858, 872 (D.C. Cir. 2020) (citing 10 U.S.C. § 949a(a)).  And, in addition to having the sole power under the Military Commissions Act to either convene commissions himself or to "designate[]" "any officer or official" to serve as a subordinate convening authority, 10 U.S.C. § 948h, he has the power to

---

[2] The Regulation for Trial by Military Commission is available at https://www.mc.mil/ portals/0/2011%20regulation.pdf.

remove such subordinate convening authorities "at will." *Al-Bahlul*, 967 F.3d at 872.

Indeed, the military commission judge recognized that "[t]he Secretary of Defense, as superior competent authority, can have the case transmitted to his level" for action. MC Ruling 21; *see also* R.M.C. 601(f) (using the terms "superior convening authorit[y]" and "superior competent authority" interchangeably). Because the Secretary—not the retired Brigadier General he appointed to a subordinate position—oversees the Department of Defense and the military commission process, he lawfully exercised his authority by reserving for himself the power to enter into or to withdraw from pretrial agreements.

2. The only remaining question is whether, when the Secretary withdrew from the pretrial agreements on August 2, 2024, the respondents had already begun "performance of promises contained in the agreement[s]." R.M.C. 705(d)(4)(B). Determining whether a defendant had begun performance of a promise in an agreement requires assessing both the text of the agreement (to determine what the promises were) and the actions of the defendant (to determine what he performed). Here, a review of the plain terms of the agreement and the record demonstrates that

the respondents had not yet performed any of the promises in the agreements when the Secretary withdrew from those agreements.

a. The respondents have argued (and the military commission found) that they "performed" by "negotiat[ing]" what the military commission has called "red-boxed letterhead memoranda."  MC Ruling 26.  But it is clear and indisputable that *negotiating* the red-boxing was not something promised in the agreements.  Rather, it was done as part of the negotiation of the agreement.  The relevant text of Mohammad's agreement states:  ██████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████ Khalid

Shaikh Mohammad Offer for Pretrial Agreement 5 n.2 (Mohammad PTA) (attached as Exhibit D).  The other agreements have similar language.  Walid Bin 'Attash Offer for Pretrial Agreement 5 n.2 (Bin 'Attash PTA) (attached as Exhibit E); Mustafa al Hawsawi Offer for Pretrial Agreement 4 n.2 (Hawsawi PTA) (attached as Exhibit F).  ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ *See* Mohammad

PTA ¶ 13; Bin 'Attash PTA ¶ 13; Hawsawi PTA ¶ 13.  But that information has never been offered into evidence, prior to August 2, 2024 or since, and thus the respondents have not performed that promise.

b.  The military commission also erred in concluding that the respondents began performance of the agreements by signing factual stipulations attached to the agreements.  MC Ruling 16.  The text of the agreements makes clear that signing the factual stipulations was part of the process through which the agreements were formed, not performance of a promise under the agreements once they were signed.  Mohammad's pretrial agreement provides that ███████████████████

███████████████████████████████████████████████████

██████████████  Mohammad PTA ¶ 6.  It further states that ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████  The agreement also provides that █████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  *Id.* ¶ 47.  Bin 'Attash's agreement contains identical text, Bin 'Attash PTA ¶¶ 6, 47, and Hawsawi's is substantially similar, but phrased in the first person rather than the third person, Hawsawi PTA

¶¶ 6, 47.  And although the agreements also recite that ███████████████

████████████████████████████████████████████  Mohammad

PTA ¶ 6, respondents signed the stipulations at the time they signed their plea

offers, *before* Convening Authority Escallier accepted the offer.  The signing of the

stipulations thus did not constitute "performance of promises contained in the

agreement" within the meaning of R.M.C. 705(d)(4)(B) because a "promise[]" in

that context refers to a commitment to take some future action, not a recitation of

action already taken.  *See, e.g.*, *Black's Law Dictionary* 1406 (10th ed. 2014) ("The

manifestation of an intention to act or refrain from acting in a specified manner.");

*Choate v. TRW, Inc.*, 14 F.3d 74, 77 (D.C. Cir. 1994) ("[A] promise is 'an

expression of intention that the promisor will conduct himself in a specified way or

bring about a specified result *in the future*.'" (emphasis added; citation omitted)).

In contending otherwise, the respondents have cited *United States v. Dean*,

67 M.J. 224 (C.A.A.F. 2009), a court-martial case in which the court found that the

defendant had begun performing promises in his pretrial agreement by "elect[ing]

trial by military judge alone," "enter[ing] into a stipulation of fact with [the

prosecution] as to the circumstances of the offense," and "fil[ing] an amended

witness list."  *Id.* at 225.  But as the USCMCR correctly recognized (Decision 16),

*Dean* is not controlling in military commission cases.  In addition, *Dean* did not

rely on the stipulation alone and did not analyze the stipulation issue in any detail because it believed that it was clear that the defendant had "performed or began to perform several of the promises listed in the agreement." 67 M.J. at 228. And in any event, *Dean*'s reliance on the stipulation at most stands for the proposition that entering into a factual stipulation *can* be performance of a promise in an agreement, not that it necessarily qualifies as such. Here, the text of the agreements illuminated by the accompanying course of conduct makes clear that that the respondents did not promise that they *would* enter into factual stipulations; they acknowledged that they *were* entering into the factual stipulations that were attachments to the agreements.

c. The military commission also found that the respondents had performed promises in the agreement by declining to question a witness at an evidentiary hearing concerning co-defendant Ali's pending motion to suppress his statements to law enforcement. But, once again, although counsel for both the respondents and the government indicated in court that questioning witnesses might breach the agreements, declining to question witnesses is not a promise contained in the agreements. The promise in the agreements was ███████████████████ ███████ Mohammad PTA ¶ 23; *see also* Bin 'Attash PTA ¶ 22; Hawsawi PTA ¶

23, not to litigate them less aggressively.  And the respondents did not move to withdraw any pending motions.

The USCMCR summarily stated that respondents began performance of "a promise . . . not to make or participate in motions," USCMCR Decision 17, but it too cited no evidence that the respondents refrained from making any motion because of the agreements during the relevant two-day period.  And it too misread the agreements, which do not contain any promise to refrain from "participat[ion]." Again, the relevant promise was to withdraw pending motions, and the respondents did not do that.

d.  Finally, the military commission found that the respondents performed promises in the agreement when they refrained from filing motions apart from the ones seeking to schedule plea hearings.  MC Ruling 27.  It is true that the filing of certain motions would have violated the pretrial agreements.  *See* Mohammad PTA ¶ 23; Bin 'Attash PTA ¶ 22; Hawsawi PTA ¶ 23.  But the military commission judge made no finding that the respondents refrained from filing any motions that they otherwise would have filed, and there is no support in the record for such a finding.  The USCMCR similarly cited nothing in the record to support such a finding.  *See* USCMCR Decision 17.

Moreover, merely not affirmatively violating the respondents' agreements cannot be considered "performance" of their terms. Doing so would render the relevant language of R.M.C. 705(d)(4)(B) a nullity, as the rule separately allows the government to withdraw from a pretrial agreement "upon the failure by the accused to fulfill any material promise or condition in the agreement."

\* \* \*

In sum, as the superior convening authority, the Secretary of Defense lawfully withdrew from the pretrial agreements before the respondents had begun performing any of the promises contained in the agreements.

## III.   Issuance of the Writ Is Appropriate Under the Circumstances

Writs of mandamus "are particularly appropriate when the issues also have an importance beyond the immediate case." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008). For example, this Court has found mandamus appropriate where, for "the first time[,] a [deferred prosecution agreement] negotiated by the government has been subjected to judicial scrutiny of the prosecution's basic exercise of charging discretion" because the trial court's order amounted to "an unwarranted impairment of another branch in the performance of its constitutional duties." *Fokker Servs.*, 818 F.3d at 750.

In requiring the government to move forward with plea agreements that have been lawfully withdrawn, the military commission judge's ruling improperly curtailed the Secretary's statutory and regulatory authorities regarding military commissions. And relief is particularly warranted here because that ruling countermands the Secretary's considered judgment about the appropriate handling of a case of unique national importance, arising out of the devastating terrorist attacks on September 11, 2001. Preserving the Secretary of Defense's authority to make fundamental decisions about the handling of the prosecutions of the individuals allegedly responsible for those attacks is a matter of critical importance warranting the issuance of extraordinary relief.

## Conclusion

For the reasons set forth above, this Court should issue a writ of mandamus and prohibition to the military commission directing it to recognize that the Secretary validly withdrew from the pretrial agreements with the respondents and prohibiting the military commission from conducting hearings in which the respondents would enter guilty pleas pursuant to the invalid pretrial agreements.

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General
  for National Security

 /s/ *Brian H. Fletcher*
BRIAN H. FLETCHER
Principal Deputy Solicitor General
U.S. Department of Justice
Washington, D.C.  20530

<u>CERTIFICATE OF COMPLIANCE WITH VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.  This response complies with the volume limitation of Fed. R. App. P. 21(d)(1) because:

    this response contains 4,373 words.

2.  This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font size and Times New Roman type style.

DATED: January 7, 2025



<u>/s/ *Brian H. Fletcher*   </u>
Brian H. Fletcher

<u>CERTIFICATE OF SERVICE</u>

     I certify that, on January 7, 2025, I caused the sealed and public versions of foregoing Petition for a Writ of Mandamus and Prohibition, along with its Exhibits, to be served on counsel for respondents and counsel for Ali Abdul Aziz Ali, intervenor below, by hand and by email. Defense counsel will be served today at their office at the Guantanamo Naval Base by the Department of Defense's Office of the Chief Prosecutor.

     Counsel receiving service are:

Gary D. Sowards
*Counsel for Respondent Mohammad*

Captain Marian D. Messing
*Counsel for Respondent Bin 'Attash*

Sean M. Gleason
*Counsel for Respondent Hawsawi*

Rita Radostitz
*Counsel for Intervenor Ali*

/s/ *Brian H. Fletcher*
Brian H. Fletcher

Exhibit A

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **AE 955J / AE 956J / AE 957I** |
| **v.** | **RULING** |
| **KHALID SHAIKH MOHAMMAD,** **WALID MUHAMMAD SALIH** **MUBARAK BIN 'ATTASH,** **ALI ABDUL AZIZ ALI,** **MUSTAFA AHMED ADAM** **AL HAWSAWI** | **Defense Motions** to Schedule Entry of Pleas  **6 November 2024** |

1. **Procedural History**.

    a. On 1 August 2024, the Prosecution filed three pretrial agreements (PTAs) with the Commission.[1] The filings indicated that, on 31 July 2024, the Convening Authority, Brigadier General (United States Army, Retired) Susan Escallier, entered into three separate PTAs with Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi, respectively.[2] Mr. Ali (a.k.a. al Baluchi) was not party to a PTA.

    b. On 2 August 2024, the Prosecution filed a Memorandum (SECDEF Memo) signed by Secretary of Defense, Secretary Lloyd J. Austin III, purporting to, *inter alia*, withdraw from the PTAs.[3]

---

[1] *See* AE 955 (GOV), Government Filing of Pre-Trial Agreement, filed 1 August 2024 (under seal) (Mohammad PTA); AE 956 (GOV), Government Filing of Pre-Trial Agreement, filed 1 August 2024 (under seal) (bin 'Attash PTA); AE 957 (GOV), Government Filing of Pre-Trial Agreement, filed 1 August 2024 (under seal) (Hawsawi PTA). Although the PTAs were filed under seal and remain under temporary seal, their contents are discussed within this Ruling to the extent they have been discussed on the record, described in a pleading, or otherwise necessary to resolve the Defense motions.
[2] *See id.*
[3] *See* AE 955B (GOV)/AE 956A (GOV)/AE 957A (GOV), Government Notice of Secretary of Defense Memorandum, Attach. B, filed 2 August 2024.

c. On 6 August 2024, Mr. Mohammad filed a motion requesting that "the Military Commission schedule an entry of plea hearing in accordance with Mr. Mohammad's pre-trial agreement (PTA) . . . ."[4]

d. On 8 August 2024, Mr. Hawsawi filed a motion requesting that "the Military Commission schedule a plea hearing in accordance with Mr. al Hawsawi's pre-trial agreement (PTA), which requires an entry of pleas within a prescribed timeframe from signature of the PTA."[5]

e. On 12 August 2024, the Commission issued a specified issue order directing the Prosecution, Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi to answer specific questions regarding a superior convening authority's legal authority to take certain actions in an ongoing miltiary commission, the answers being necessary to determine the enforceability of the PTAs and pending motions to schedule a hearing for the entry of pleas.[6] On 6 September 2024, the Prosecution,[7] Mr. bin 'Attash,[8] and Mr. Ali[9] separately responded. Mr. Mohammad and Mr. Hawsawi jointly responded.[10]

---

[4] AE 955C (KSM), Mr. Mohammad's Motion to Schedule Hearing for Entry of Plea, at 1, filed 6 August 2024.

[5] AE 957B (MAH), Defense Motion to Schedule Entry of Pleas, at 1, filed 8 August 2024 (under seal). Attachment B to Mr. Hawsawi's motion included an additional argument and request for relief under seal.

[6] See AE 955D / AE 956B / AE 957C, SPECIFIED ISSUE ORDER, Actions of a Superior Convening Authority Pursuant to the Military Commissions Act, dated 12 August 2024. Mr. Ali was permitted, though not required, to respond. See id. at 3, n.7.

[7] See AE 955F (GOV) / AE 956D (GOV) / AE 957F (GOV), Government Response To Specified Issue Order: Actions of a Superior Convening Authority Pursuant to the Military Commissions Act, filed 6 September 2024.

[8] See AE 956E (WBA), Mr. bin 'Atash's Response to Specified Issue Order, filed 6 September 2024.

[9] See AE 955E (AAA) / AE 956C (AAA) / AE 957D (AAA), Mr. al Baluchi's Response to AE 955D / AE 956B / AE 957C, Specified Issues Order Actions of a Superior Convening Authority Pursuant to Military Commissions Act, filed 6 September 2024.

[10] See AE 955H (KSM MAH) / AE 957G (KSM MAH), Mr. Mohammad and Mr. al Hawsawi's Response to Specified Issues In Accordance with AE 955D / AE 957C Specified Issue Order Actions of a Superior Convening Authority Pursuant to the Military Commissions Act, filed 6 September 2024.

2

f. On 6 September 2024, the Prosecution filed a consolidated response to the motions filed by Mr. Mohammad and Mr. Hawsawi to schedule a hearing for the entry of pleas, opposing both Defense motions.[11]

g. On 13 September 2024, Mr. bin 'Attash filed a motion requesting that "the Military Judge enforce the pretrial agreement ("PTA") signed by him on 29 July 2024 and accepted and approved by the Convening Authority ("CA") on 31 July 2024 by scheduling this matter for a plea agreement inquiry . . . ."[12]

h. On 20 September 2024, Mr. Mohammad and Mr. Hawsawi separately replied to the Prosecution's response to their motions to schedule a hearing for the entry of pleas.[13]

i. On 26 September 2024, the Prosecution filed a response to Mr. bin 'Attash's motion to schedule a hearing for the entry of pleas, requesting the Commission deny the motion.[14]

j. On 3 October 2024, Mr. bin 'Attash replied to the Government response to his motion to schedule a hearing for the entry of pleas.[15]

k. The Commission did not hear oral argument on the motions.[16]

---

[11] *See* AE 955G (GOV) / AE 957E (GOV), Government Consolidated Response To AE 955C (KSM) and AE 957B (MAH), Defense Motions to Schedule Entry of Pleas, filed 6 September 2024.

[12] *See* AE 956F (WBA), Mr. bin 'Atash's Motion to Schedule Entry of Pleas Pursuant to R.M.C. 910, at 1, filed 13 September 2024.

[13] *See* AE 955I (KSM), Mr. Mohammad's Reply To Government Consolidated Response to AE 955C (KSM) and AE 957B (MAH), Defense Motions to Schedule Entry of Pleas, filed 20 September 2024; AE 957H (MAH), Mr. al Hawsawi's Reply to AE 957E (GOV) Government Consolidated Response to AE 957B (MAH), Defense Motions to Schedule Entry of Pleas, filed 20 September 2024.

[14] *See* AE 956H (GOV), Government Response To AE 956F (WBA), Mr. Bin 'Attash's Motion to Schedule Entry of Pleas Pursuant to R.M.C. 910, filed 26 September 2024.

[15] *See* AE 956I (WBA), Mr. bin 'Atash's Reply to AE 956H (GOV), Government's Response to Mr. bin 'Atash's Motion to Schedule Entry of Pleas Pursuant to R.M.C. 910, filed 3 October 2024.

[16] *See* Military Commissions Trial Judiciary Rules of Court, effective 1 September 2016 (including both Change #1, 2 March 2017, and Change #2, 21 December 2017), Rule 3.5.m. ("[T]he decision to grant oral argument on a written motion is within the sole discretion of the Military Judge."); Rule for Military Commissions (R.M.C.) 905(h).

3

2. **Findings of Fact**.

a. On 25 March 2010, Secretary of Defense Robert Gates designated Vice Admiral (United States Navy, Retired) Bruce MacDonald as the Convening Authority for Military Commissions pursuant to 10 U.S.C. § 948h.[17]

b. On 4 April 2012, at the Convening Authority's direction, Ms. Donna Wilkins signed the referral documents to refer capital charges against all five named co-Accused to this Commission.[18]

c. Between 2012 and 2023, successor Secretaries of Defense designated various individuals to serve as the Convening Authority for Military Commissions. None of these individuals entered into a PTA with Mr. Mohammad, Mr. bin 'Attash, Mr. Ali, Mr. Hawsawi, or Mr. bin al Shibh. However, some of these Convening Authorities did enter into PTAs with the Accused in other Military Commission cases.[19] During this time, no Secretary of Defense ever designated himself as the Convening Authority responsible for *United States v. Mohammad et. al.,* or any other referred military commission case, in its entirety, nor did any of them withhold individual authorities or duties from the Convening Authority and reserve those actions to themselves as a "superior competent authority" or a "superior convening authority."

d. On 21 August 2023, Secretary Austin designated Ms. Escallier as Convening Authority for Military Commissions, effective 8 October 2023. Secretary Austin's appointment memorandum stated that her authorities as Convening Authority were to continue "until a new

---

[17] *See* AE 955G (GOV), at Attach. B.
[18] Mr. bin al Shibh's case has since been severed from those of his co-Accused due to lack of capacity to stand trial. *See* AE 914EE, RULING AND ORDER, Rule for Military Commissions 909 Competency Determination and Severance, dated 21 September 2023.
[19] *See, e.g.*, *United States v. Majid Shoukat Khan*; *United States v. Ahmed Mohammed Ahmed Haza al Darbi*; *United States v. Abd al Hadi al-Iraqi*; *United States v. Mohammed Farik Bin Amin (a.k.a. Zubair) and Mohammed Nazir Bin Lep (a.k.a. Lillie)*.

4

Convening Authority is designated."[20] No "new" Convening Authority has since been designated. The appointment memorandum further stated that "Ms. Escallier shall exercise her *independent legal discretion* with regard to judicial acts and other duties of the Convening Authority."[21]

e. When the Secretary of Defense appointed Ms. Escallier as Convening Authority, he did not reserve any individual authorities of the Convening Authority to himself as either a "superior convening authority" or "superior competent authority." In the appointment memorandum, the Secretary of Defense did not "withdraw," "withhold," or "reserve to himself" the authority to enter into a PTA. The Secretary of Defense cited the "Rules for Military Commissions, the Regulation for Trial by Military Commission, and judicial orders" as the sources of law governing Ms. Escallier's future decisions and actions.[22]

f. There is no evidence before the Commission that the Secretary of Defense curtailed, altered, or amended Ms. Escallier's authority as the Convening Authority for this Commission between 21 August 2023, and his attempt to do so via the SECDEF Memo on 2 August 2024. The Rules for Military Commissions (R.M.C.), published in 2019, have not been changed since. The Regulation for Trial by Military Commission (R.T.M.C.) was prescribed in 2011. The duties, responsibilities, and authorities of the Convening Authority described therein have not been changed since.[23]

---

[20] AE 955G (GOV), at Attach. C.
[21] *Id.* (emphasis added).
[22] *Id.*
[23] *See generally* R.T.M.C. Chapter 2. Chapter 9 of the R.T.M.C. pertaining to Defense Counsel, and not relevant here, was amended in 2016.

5

g. Prior to the Secretary's appointment of Ms. Escallier as Convening Authority, the Prosecution sought the Biden Administration's endorsement of "Policy Principles" for proposed PTAs, indicating the Secretary of Defense was likely aware PTA negotiations were ongoing.[24] Letters from members of Congress to the Secretary of Defense about the PTA negotiations, and news articles discussing them,[25] further indicate the Secretary of Defense was likely aware of the negotiations before August 2023, yet chose not to withhold the authority to enter into PTAs from Ms. Escallier at the time of her designation on 21 August 2023 or at any other time before she signed the three PTAs that are the subject of this Ruling.

h. As the Convening Authority, Ms. Escallier authorized the Prosecution to negotiate PTAs on her behalf.[26] The Prosecution and various Defense teams negotiated the terms of possible PTAs between October 2023 and July 2024. On 12 July 2024, in an email to various Defense Counsel, Chief Prosecutor, Rear Admiral (RDML) Rugh, recognized that everyone had worked "in good faith to find common ground on which to build an agreement."[27] He projected a "final opportunity to reach a negotiated settlement" was soon approaching.[28]

i. Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi reached agreements in principle for PTAs during the final weekend of July 2024.[29] Mr. Mohammed and Mr. bin 'Attash submitted Offers for Pretrial Agreements on 29 July 2024; Mr. Hawsawi submitted an offer on

---

[24] *See* AE 901G (GOV), Government Notice Of Status Update in Accordance with AE 901F, Interim Ruling and Order, at 1, filed 27 July 2023 (policy principles forwarded to the Department of Defense Office of General Counsel).
[25] *See* AE 926 (AAA), Mr. al Baluchi's Motion to Dismiss All Charges for Unlawful Influence by Members of Congress, filed 8 February 2024, at Attachs. X (pages 253-55) and EE (pages 292, 308).
[26] *See* AE 926A (GOV), Government Response To Mr. Ali's Motion to Dismiss All Charges for Unlawful Influence by Members of Congress, at 4, filed 22 February 2024.
[27] AE 956F, at Attach. B.
[28] *Id.*
[29] *See id.* at Attachs. C and D.

6

30 July 2024. Ms. Escallier signed all three offers as the Convening Authority on 31 July 2024.[30] There is no signed PTA between Mr. Ali and the Convening Authority.

j. When she signed the three PTAs, Ms. Escallier possessed the legal authority to do so.

k. In the three PTAs, the three co-Accused individually agreed to, *inter alia*, plead guilty to all charges and specifications.[31] As the Convening Authority, Ms. Escallier agreed to, *inter alia*, remove the death penalty as a possible punishment.[32]

l. Each of these three co-Accused agreed to enter,[33] and did in fact enter,[34] into a Stipulation of Fact with the Trial Counsel, which could be used to establish guilt and aid the Panel Members in adjudging an appropriate sentence. Each Accused agreed to waive certain objections to a number of Prosecution Exhibits, to include a Letterhead Memorandum (LHM), summarizing statements made by each Accused to the Federal Bureau of Investigation (FBI) in 2007.[35]

m. By its terms, each agreement became "binding" on the Parties upon the Convening Authority's acceptance of the offer (including the Convening Authority agreeing to the contents of the attached agreed-to Stipulations of Fact and "red-boxed" LHMs, which would be used against the Accused for findings and/or sentencing purposes)."[36]

---

[30] *See* Mohammad PTA at 20; bin 'Attash PTA at 19; Hawsawi PTA at 19.
[31] *See* Mohammad PTA at 2, para. 5; bin 'Attash PTA at 2, para. 5; Hawsawi PTA at 2, para. 5.
[32] *See* Mohammad PTA at 13-14, para. 38; bin 'Attash PTA at 13, para. 38; Hawsawi PTA at 13-14, para. 37.
[33] *See* Mohammad PTA at 2-3, paras. 6-7; bin 'Attash PTA at 2-3, paras. 6-7; Hawsawi PTA at 2-3, paras. 6-7.
[34] *See* AE 955 (GOV), at 31-58; AE 956 (GOV), at 30-53; AE 957 (GOV), at 30-59.
[35] *See* Mohammad PTA at 5, para. 12.ii. and para. 13; bin 'Attash PTA at 4-5, para. 12.b. and para. 13; Hawsawi PTA at 4, para. 12.ii. and para. 13; *see also* footnotes in paragraph 12 of each PTA related to the "red-boxed" LHMs. The admissibility of the LHMs has been the subject of contested pretrial litigation for several years and has been the primary focus for the last year and a half.
[36] Mohammad PTA at 19, para. 62; bin 'Attash PTA at 18, para. 56; Hawsawi PTA at 18-19, para. 59.

n. On the same day Ms. Escallier entered into the PTAs, the Prosecution sent a letter to victim family members of the 9/11 attacks.[37] The Prosecution described Ms. Escallier as "the United States Government official empowered by the Secretary of Defense with authority to, among other things, enter into pre-trial agreements on behalf of the United States government," and advised the victim family members that three separate deals had, in fact, been reached.[38]

o. On 1 August 2024, the Trial Counsel announced in open session that Ms. Escallier had signed and accepted the PTA offers from Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi.[39] The Trial Counsel sought to docket a hearing for the entry of pleas for Mr. Mohammad and Mr. bin 'Attash the next week, and Mr. Hawsawi to follow in September 2024.[40] That morning, pretrial proceedings continued as previously scheduled, with the Commission hearing testimony from a witness on a pending motion. Counsel for Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi abstained from questioning the witness.[41] Mr. Ali, not subject to a PTA, cross-examined the witness.[42]

p. On the morning of 2 August 2024, the Trial Counsel reiterated a "preferred plan" to schedule the entry of pleas before the culmination of the August hearings, due to a "genuine desire" to have pleas entered and to "insulate the proceedings from any unlawful influence."[43]

---

[37] *See* AE 926 (AAA 2nd Sup), Supplement to AE 926 (AAA) Mr. al Baluchi's Motion to Dismiss All Charges for Unlawful Influence by Members of Congress, at Attach. B, filed 14 August 2024.
[38] *Id.*
[39] *Unofficial/Unauthenticated Transcript*, *United States v. Mohammed et. al.*, (Tr.) at 49312.
[40] *See* Tr. at 49314.
[41] The Trial Counsel took the position that the waive all waivable motions provisions in the three PTAs would not permit Counsel for Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi to examine the witness. *See* Tr. at 49317-18 ("they can't actively continue to participate in any of the contested litigation based on the pretrial agreement.").
[42] *See* Tr. at 49324 (beginning of witness examination).
[43] Tr. at 49418.

8

He continued, "[t]here's obviously a lot of attention on this right now, and we do think that the faster that the pleas are entered, the better we're able to insulate the commission from that."[44]

q. Later on 2 August 2024, the Secretary of Defense issued a memorandum which stated, in full:



**SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

AUG 0 2 2024

MEMORANDUM FOR SUSAN ESCALLIER, CONVENING AUTHORITY FOR MILITARY COMMISSIONS

SUBJECT: Authority to Enter into Pre-Trial Agreements in *United States v. Khalid Shaikh Mohammad et al.* (*United States v. Khalid Shaikh Mohammad; United States v. Walid Muhammad Salih Mubarak Bin 'Attash; United States v. Mustafa Ahmed Adam Al Hawasawi; United States v. Ramzi Binalshibh; and United States v. Ali Abdul Aziz Ali*)

I have determined that, in light of the significance of the decision to enter into pre-trial agreements with the accused in the above-referenced case, responsibility for such a decision should rest with me as the superior convening authority under the Military Commissions Act of 2009. Effective immediately, I hereby withdraw your authority in the above-referenced case to enter into a pre-trial agreement and reserve such authority to myself.

Effective immediately, in the exercise of my authority, I hereby withdraw from the three pre-trial agreements that you signed on July 31, 2024 in the above-referenced case.

*[signature]*

r. Since signing the PTAs, counsel for the three signatory Accused to the PTAs have refrained from filing motions (other than the instant motions to schedule a hearing for the entry of pleas pursuant to the PTA and motions related to scheduling matters), requesting discovery, examining witnesses, or arguing motions.

---



[44] *Id.*

Appellate Exhibit 955J
Page 9 of 29

s. The Defense represents that, from 2 August 2024 to date, Ms. Escallier has continued to act as the Convening Authority in this case.[45]

3. **Law**.[46]

a. "[T]he burden of proof on any factual issue the resolution of which is necessary to decide a motion shall be by a preponderance of the evidence."[47] The burden of persuasion rests with the moving party.[48]

<em>Sources of Law Governing the Military Commissions System</em>

b. The Military Commissions Act (M.C.A.) of 2009 "establishes procedures governing the use of military commissions to try alien unprivileged enemy belligerents for violations of the law of war and other offenses triable by military commission."[49]

c. Congress designated the Secretary of Defense as the principal Executive Branch official to govern the administration of the military commissions system. The Secretary of Defense has the power to prescribe procedures and rules governing military commissions.[50] He has done so in the Manual for Military Commissions (M.M.C.). The M.M.C. is "adapted from the Manual for Courts-Martial,"[51] which governs the military justice system. The M.M.C.

---

[45] *See* AE 956F (WBA), at 14. Although representations of counsel are not evidence, this representation has neither been contested nor contradicted by evidence offered by the Prosecution. Additionally, as the SECDEF Memo only discussed the authority to enter into PTAs in *United States v. Mohammad et. al.* and did not remove Ms. Escallier as the Convening Authority in this case or any other case, the Commission finds this fact by a preponderance of the evidence.

[46] This Ruling resolves the pending motions on legal grounds other than the prohibition against unlawful influence. *See* 10 U.S.C. § 949(b); R.M.C. 104; R.T.M.C. Chapter 1-4; *In Re Ali*, 558 F. Supp. 3d 1167, 1176 (C.M.C.R. 2021). Therefore, that body of statutory, regulatory, and case law is neither presented nor analyzed, except as necessary to support the Commission's interpretation of the law governing the scope of the Secretary of Defense's legal authority.

[47] R.M.C. 905(c)(1).

[48] R.M.C. 905(c)(2)(A).

[49] 10 U.S.C. § 948b(a).

[50] *See* 10 U.S.C. § 949a(a).

[51] 2019 M.M.C. Foreword.

10

contains the R.M.C., the Military Commission Rules of Evidence (M.C.R.E.), and a Crimes and Elements section. Pursuant to 10 U.S.C. § 949a(a), the then-Acting Secretary of Defense published the current version of the M.M.C. on 2 May 2019.[52] R.M.C. 705, which provides the rules governing PTAs, has not been amended since Ms. Escallier became the Convening Authority.

d. The 2009 M.C.A. also authorizes the Secretary of Defense to prescribe regulations governing military commissions generally.[53] The then-Deputy Secretary of Defense prescribed the current version of the R.T.M.C. on 6 November 2011.[54] The R.T.M.C "prescribes policies and provisions for the administration of military commissions . . . ."[55] Neither Chapter 2 ("The Convening Authority"), nor Chapter 12 ("Pretrial Agreements"), have been amended since Ms. Escallier became the Convening Authority.

*The Convening Authority*

e. "Military commissions . . . may be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose."[56] The M.C.A. refers to "*the person* designated under Section 948h as the 'convening authority.'"[57] The

---

[52] *See id.*

[53] *See, e.g.*, 10 U.S.C. § 948j(a) ("The Secretary of Defense shall prescribe regulations providing for the manner in which military judges are so detailed to military commissions.").

[54] R.T.M.C. Foreword.

[55] R.T.M.C. Chapter 1-1.a.

[56] 10 U.S.C. § 948(h); *see also* R.M.C. 504(b) ("A military commission may be convened by the Secretary of Defense or, unless otherwise limited by superior competent authority, any officer or official of the United States designated by the Secretary of Defense.").

[57] *Al Bahlul v. United States*, 967 F.3d 858, 863 (D.C. Cir. 2020) (emphasis added) (reviewing the statutory construct of military commissions as provided for in the M.C.A.). Although *Al Bahlul* analyzed the 2006 M.C.A., it is authoritative for this Ruling because the provisions regarding the convening authority's duties and responsibilities remained unchanged in the 2009 M.C.A.

11

"convening authority" means "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense for that purpose."[58]

f. The term "convening authority" is used fifty-four times in the 2009 M.C.A. Almost every time that term is used, the article "the" precedes "convening authority."[59] Nowhere in the 2009 M.C.A. does Congress allocate the convening authority's responsibilities among multiple individuals, nor does it use the term "convening authorities."

*Other Duties of the Convening Authority, "Superior Competent Authority," or "Superior Convening Authority"*

g. The M.C.A. "vests the convening authority with significant powers and responsibilities other than convening military commissions,"[60] for example, disposing of charges. Only the convening authority or the Secretary of Defense may dispose of charges.[61] "Disposition of charges" means "dismissing any or all of them, forwarding any or all of them to another authority for disposition, or referring any or all of them to a military commission."[62] Entering or withdrawing from a PTA is not a method of disposing of charges. "A superior competent authority may withhold the authority of a subordinate to dispose of charges in individual cases, types of case, or generally."[63]

h. When in receipt of charges, "unless the authority to do so *has been* limited or withheld by a superior competent authority"[64] the convening authority may: (1) dismiss any charges or

---

[58] R.M.C. 103(a)(10); *see also* R.T.M.C. Chapter 2-2 (same).
[59] Where the article "the" does not precede "convening authority," the M.C.A. simply states "convening authority." *See, e.g.*, 10 U.S.C. § 950b(a) (NOTICE TO CONVENING AUTHORITY).
[60] *Al Bahlul*, 967 F.3d at 863; *see also* R.T.M.C. Chapter 2-3 (providing a list of twenty duties "directly related to military commissions").
[61] *See* R.M.C. 401(a).
[62] R.M.C. 401(b).
[63] R.M.C. 401(a).
[64] R.M.C. 401(b) (emphasis added).

12

specifications; (2) forward charges (or, after dismissing charges, the matter) to a subordinate convening authority for disposition; (3) forward any charges to a superior competent authority for disposition; or (4) subject to R.M.C. 601(d), refer any or all charges to a military commission.[65]

i. "Referral" occurs when a convening authority orders that "charges against an accused will be tried by a specified military commission."[66] Unless the authority to refer "*has been withheld*" by a superior competent authority, the charges may be referred to a military commission convened by that convening authority or by a predecessor.[67]

j. The term "superior convening authorities" is used once in the Rules, the title of R.M.C. 601(f), which states, "Except as otherwise provided in these rules, a superior competent authority may cause charges, whether or not referred, to be transmitted to the authority for further consideration, including, if appropriate, referral."[68]

k. "The convening authority or a superior competent authority may for any reason cause any charges or specifications to be withdrawn from a military commission at any time before findings are announced."[69] Withdrawal of charges should not be "unfair[] to the accused," and may only be accomplished at "the direction of the convening authority or a superior competent authority in the exercise of that authority's independent judgment."[70] Once charges have been withdrawn, they may be re-referred to another military commission "unless the withdrawal was

---

[65] R.M.C. 407(a).
[66] R.M.C. 601(a).
[67] R.M.C. 601(b) (emphasis added).
[68] R.M.C. 601(f). Though the Rule is titled "Superior convening authorities," the Rule itself only mentions a "superior competent authority." For consistency and clarity, the Commission refers to the Secretary of Defense as a "superior competent authority." The SECDEF Memo invokes this title as the basis for the actions contained within.
[69] R.M.C. 604(a).
[70] R.M.C. 604(a), Discussion.

13

from an improper reason."[71] Improper reasons for a withdrawal include "an intent to interfere with the free exercise by the accused of any rights to which he may be entitled, or with the impartiality of a military commission."[72]

l. A superior is not permitted "in a specific case and after-the-fact, to influence directly the action of a subordinate convening authority with respect to the latter's judicial acts already properly taken in that case . . . ."[73]

*Pretrial Agreements*

m. PTAs generally. A PTA is a contract between an accused and the convening authority.[74] R.M.C. 705 describes how a PTA is entered into, the nature of the agreement, permissible terms, impermissible terms, and withdrawal from a PTA.

n. Entering into a PTA.

(1) "Subject to such limitations as the Secretary may prescribe, an accused and the convening authority may enter into a pretrial agreement in accordance with this rule."[75] The Secretary of Defense did not change this default condition when prescribing the R.T.M.C.[76] While specifically referencing R.M.C. 705, the Secretary of Defense prescribed:

> *Unless such authority is withheld* by a superior competent authority, the Convening Authority is authorized to enter into or reject offers to enter into Pretrial Agreements (PTAs) with the accused. The decision to accept or reject a

---

[71] R.M.C. 604(b).
[72] R.M.C. 604(b), Discussion.
[73] *United States v. Hardy*, 4 M.J. 20, 22 (C.M.A. 1977).
[74] *See United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999).
[75] R.M.C. 705(a).
[76] *See* R.T.M.C. Chapter 2-3(a)(9) (listing authority to "[a]pprove or disapprove plea agreements with the accused" as a duty "directly related to military commissions.").

14

PTA offer submitted by an accused is *within the sole discretion* of the Convening Authority who referred the case to trial.[77]

This paragraph combines the text of R.M.C. 705(a) and R.M.C. 705(d)(3). The Secretary of Defense chose to adopt, rather than modify, the R.M.C. language in the R.T.M.C. Prior to 2 August 2024, no document promulgated, prescribed, or signed by the Secretary of Defense withheld Ms. Escallier's authority to enter into PTAs.

(2) Rule for Courts-Martial (R.C.M.) 705(a), similar to R.M.C. 705(a), states, "Subject to such limitations as the Secretary concerned may prescribe, an accused and the convening authority . . . may enter into a plea agreement in accordance with this rule."[78] No "Secretary concerned" has prescribed a limitation of this authority, reserving the authority to enter into a plea agreement to themselves at Secretarial level.[79]

o. <u>Withdrawing from a PTA</u>.

(1) R.M.C. 705(d)(4)(B) presents bases for a convening authority to withdraw from a PTA:

The convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement, upon the failure by the accused to fulfill any material promise or condition in the agreement, when inquiry by the military judge discloses a disagreement as to a

---

[77] R.T.M.C. Chapter 12-1 (emphasis added). The Commission notes an ambiguity within Chapter 12-1. If a superior competent authority has withheld a convening authority's ability to enter into a PTA, the decision to "accept or reject a PTA offer" thereafter would no longer be in the "sole discretion" of the convening authority who "referred the case to trial."

[78] *Manual for Courts-Martial*, *United States* (2024 ed.) (emphasis added).

[79] *See* Air Force Instruction 51-201, *Administration of Military Justice*, 24 January 2024, at para. 17.5.1; Army Regulation 27-10, *Military Justice*, 20 April 2024, at paras. 5-27, 5-28; Manual of the Judge Advocate General of the Navy (JAGMAN), 1 December 2023, at para. 0137.

material term in the agreement, or if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.[80, 81] Historically, an accused has enjoyed greater latitude to withdraw from a PTA than does the convening authority to afford an accused "additional measure of protection against prosecutorial abuse."[82]

(2) R.M.C. 705(d)(4)(B) is identical to the compatible R.C.M. 705(d)(4)(B) in effect when Congress created the military commissions system in 2009. Therefore, case law interpreting that provision is instructive. In *United States v. Dean*, the Court of Appeals for the Armed Forces (CAAF) held the convening authority was not permitted to withdraw under R.C.M. 705(d)(4)(B) when the accused began performance by requesting a military judge alone forum, entering a confessional stipulation of fact, and waiving the live appearance of several witnesses.[83] Performance may begin before the PTA is signed.[84]

(3) To "provide a clearer point at which the right of the convening authority to withdraw terminates," and in direct response to *Shepardson v. Roberts*, 14 M.J. 35 (C.M.A. 1983), the Drafters of R.C.M. 705(d)(4)(B) chose to use the "begin[ning] performance" as the time after which the convening authority may not withdraw from a PTA.[85] Based on a plain language interpretation of the Rule that the beginning of performance by an accused terminates the convening authority's ability to withdraw from a PTA, and that performance had in fact

---

[80] R.M.C. 705(d)(4)(B); *see also* R.T.M.C. 12-3 (same).
[81] In this case, the three PTAs list nine permissible reasons for the Convening Authority to withdraw, some of which overlap with the R.M.C. *See, e.g.*, Mohammad PTA at 15, para. 46. For the purposes of this Ruling, the Commission assumes without deciding the Parties may contractually agree to conditions not in conflict with applicable law.
[82] *Manual for Courts-Martial, United States*, Analysis of the Rules for Courts-Martial app. 21 at A21-36 (1984 ed.).
[83] *See* 67 M.J. 224, 227-28 (C.A.A.F. 2009).
[84] *See id.* at 228 (election of military judge alone forum before PTA signed, stipulation of fact concurrent with PTA; amended witnesses requests after PTA signed).
[85] *Manual for Courts-Martial, United States*, Analysis of the Rules for Courts-Martial app. 21 at A21-41 (2005 ed.) (analysis of the Rule analyzed in *Dean*).

16

begun in Dean's case, the CAAF declined to answer the question whether detrimental reliance is required in a situation where performance has not begun.[86]

(4) Post-*Dean*, the current R.C.M. 705(e)(4)(B)(i) alters the "begins performance" language to read, "The convening authority . . . may withdraw from a plea agreement at any time before *substantial performance* by the accused of promises contained in the agreement."[87] However, R.M.C. 705(d)(4)(B) has not been so amended. The Commission has no legal basis to apply the current version of R.C.M. 705(e)(4)(B)(i) in lieu of R.M.C. 705(d)(4)(B).

4. **Analysis**.

a. Resolution of the Defense motions turns on whether Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi still have enforceable PTAs notwithstanding the Secretary of Defense's 2 August 2024 memorandum purporting to, *inter alia*, withdraw from the PTAs. For the reasons explained below, the Commission concludes the three PTAs remain valid and are enforceable.

b. The SECDEF Memo.

(1) The Parties have differing interpretations regarding what the SECDEF Memo actually accomplished. The Defense principally argues the SECDEF Memo had no legal effect because the Secretary of Defense did not have the authority to do what he did. Thus, the Defense concludes his actions were *void ab initio* and the PTAs signed by the Convening Authority are still intact and enforceable as if the SECDEF Memo never occurred. The Prosecution takes the opposite approach, arguing the Secretary of Defense acted within his lawful powers authorized

---

[86] *See* 67 M.J. at 228, n.3 (citing *Shepardson*, 14 M.J. at 358).
[87] *Manual for Courts-Martial*, *United States* (2024 ed.) (emphasis added).

by the M.C.A., the R.C.M., and the R.T.M.C. Thus, in the Prosecution's view, the SECDEF Memo resulted in the PTAs being properly rescinded.

(2) The Commission analyzes, as it must, the plain language of the SECDEF Memo itself. The Secretary of Defense announced he was taking three discrete actions. First, he purported to "withdraw" Ms. Escallier's authority as the Convening Authority in *United States v. Mohammad et. al.* to enter into PTAs. Second, he purported to "reserve" the authority to enter into PTAs to himself. Third, he announced he was "withdraw[ing]" from the three PTAs in "exercise of [his own] authority." These three distinct actions guide the Commission's analysis; there are legal, factual, and/or temporal defects with each.

c. "Withdraw" the authority of Ms. Escallier to enter into PTAs.

(1) The Secretary of Defense purported to "withdraw" Ms. Escallier's authority to enter into PTAs. He likely intended to "withhold" her authority do so. Each verb has a distinct legal meaning.[88] Charges can be withdrawn.[89] Authority can be withheld.[90] Word choice matters because the Secretary of Defense's actions must be tethered to a legal authority. The Prosecution did not cite, and the Commission did not find, any source of law authorizing the Secretary of Defense to "withdraw" Ms. Escallier's authority to enter into a PTA. Though some rules permit a superior competent authority to "withhold" the right to take certain actions from a convening authority,[91] the governing rules are devoid of any entitlement of a superior competent authority

---

[88] *See Russello v. United States*, 464 U.S. 16, 23 (1983) (when concluding that different terms must have different meanings, stating "We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").
[89] *See, e.g.*, R.C.M. 604.
[90] *See, e.g.*, R.C.M. 407(a); R.M.C. 601(b); R.T.M.C. Chapter 12-1.
[91] *See, e.g.*, R.M.C. 401(a) ("A superior competent authority may withhold the authority of a subordinate to dispose of charges in individual cases, types of case, or generally.").

to "withdraw" a subordinate's authority to act.[92] Moreover, the use of the term "withdraw" authority instead of "withhold" authority may also be the Secretary's recognition that his actions came *after* he had already delegated Ms. Escallier the authority to act and after she, in fact, acted in accordance with that authority.

(2) None of the Parties dispute that Ms. Escallier had the authority to enter into the PTAs on 31 July 2024 when she did so. The facts and law support that conclusion. Her appointment memorandum instructed her to "exercise her independent legal discretion with regard to judicial acts and other duties of the Convening Authority."[93] As the Convening Authority, she authorized the Parties to engage in negotiations. The correspondence included her Legal Advisor. Ms. Escallier personally signed the PTAs. The Prosecution, in a letter to victim family members, characterized Ms. Escallier as the Government official authorized to sign a deal with the various Accused on behalf of the United States. No counsel for the Accused included the Secretary of Defense or his Office of General Counsel on any correspondence. No one negotiated with the Secretary of Defense. No one sought his signature or approval.

(3) R.M.C. 705(a) and R.T.M.C. Chapter 12-1, which each independently authorize a convening authority to enter into PTAs, were in effect when Ms. Escallier became the Convening Authority. No promulgation or prescription from the Secretary of Defense between 23 October 2023 and 1 August 2024 altered, amended, or curtailed Ms. Escallier's authority to enter into PTAs. Collectively, these circumstances indicate everyone—including the

---

[92] Whereas to "withhold" authority is a prospective action, "withdraw" is an after-the-fact action. *Compare Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/withhold (last visited November 6, 2024) (defining "withhold" as "to refrain from granting, giving, or allowing") *with Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/withdraw) (last visited November 6, 2024) (defining "withdraw" as to "take back or away"). *See also infra* at paras. 4.(c)(2)-(6) (discussing timing).
[93] AE 955G (GOV), at Attach. C.

19

Prosecution, all Defense teams, the Secretary of Defense, and Ms. Escallier herself— understood Ms. Escallier possessed legal authority to sign the Offers for Pretrial Agreement submitted to her and the agreements became binding upon her signature. It was appropriate and correct for each entity to understand that arrangement as the status quo.

(4) The timing of the SECDEF Memo is fatal to its enforceability. Assuming the Secretary of Defense had the authority to withhold Ms. Escallier's authority to enter into PTAs as a matter of law, the Secretary's new power would only be effective *prospectively*, not *retroactively*.[94] The fact that the Secretary of Defense gave himself exclusive authority to enter into PTAs on 2 August 2024, does not invalidate or somehow render the PTAs Ms. Escallier signed on 31 July 2024 void. The PTAs are enforceable contracts with the classic elements of offer, acceptance, and consideration. Those PTAs, by operation of contract law and the terms of the PTAs themselves, transformed into binding agreements when signed by the Convening Authority, who had authority to sign them when she did so.

(5) To consider the SECDEF Memo retroactively applicable is to give the Secretary an absolute veto over any discretionary act of the Convening Authority with which he disagrees. This prospect is wholly inconsistent with the delegation of independence in the performance of her duties—a delegation that the Secretary of Defense personally gave Ms. Escallier concurrent with her appointment as the Convening Authority—and the notion that a superior is not permitted "in a specific case and after-the-fact, to influence directly the action of

---

[94] The Secretary of Defense may prescribe limitations on a convening authority's authority to enter into a PTA with an accused. *See* R.C.M. 705(a). But the prescription must be written down, published, and made available to the Parties and/or relevant decision makers ahead of time so everyone may act in accordance with the prescribed limitation. Even if the 2 August 2024 SECDEF Memo was issued in furtherance of the R.M.C. 705(a) authority, its timing is fatal to its validity as applied to the PTAs entered into on 31 July 2024.

a subordinate convening authority with respect to the latter's judicial acts already properly taken in that case . . . ."[95] The Defense motions are not being resolved on unlawful influence grounds, but the idea that each of the Convening Authority's actions and decisions are immediately reversible if the Secretary of Defense disagrees potentially raises the specter of unlawful influence.

(6) There are certain things the Rules do allow. The Secretary of Defense, as superior competent authority, can have the case transmitted to his level.[96] He can withdraw the charges at any time before findings are announced.[97] With limited exceptions, he can refer the charges to a different military commission himself.[98] He could remove Ms. Escallier and make himself the Convening Authority in this case.[99] What the Secretary of Defense could not do, however, was delegate authority to Ms. Escallier, recognize her independent discretion, then reverse that discretion upon disagreeing with how that discretion was utilized.

d. "[R]eserve that authority" to himself.

(1) The Prosecution suggests that, as a superior competent authority and the principal Executive Branch official charged by Congress to implement and oversee military commissions, the Secretary of Defense derives inherent power from the M.C.A. to reserve certain convening authority duties and/or responsibilities to himself. By analogy, each of the convening authority's duties is a "stick" in a "bundle of sticks." The Prosecution's position is

---

[95] *Hardy*, 4 M.J. at 22.
[96] *See* R.M.C. 601(f).
[97] *See* R.M.C. 604(a).
[98] *See* R.M.C. 604(b).
[99] *See Al Bahlul*, 967 F.3d at 872 ("The long-standing rule relating to the removal power is that, in the face of congressional silence, the power of removal is incident to the power of appointment.") (internal citation omitted); *see also Edmond v. United States*, 520 U.S. 651, 664 (1997) (noting "the power to remove officers ... is a powerful tool for control.").

21

that the Secretary of Defense can take a stick from the bundle for himself and leave the rest of the bundle with the Convening Authority. The Commission disagrees.

(2) The Prosecution's position suggests there can be multiple convening authorities over the same case at the same time—concurrent convening authorities. The M.C.A. indicates the opposite. The fact that the term "convening authority" is used fifty-four times in the 2009 M.C.A., always referring to a singular entity and never multiple convening authorities, indicates Congress's intent that the convening authority of a particular military commission be a single individual. Nowhere in the 2009 M.C.A. does Congress allocate the convening authority's responsibilities among multiple individuals, nor does it use the term "convening authorities." This makes sense. It is difficult to foresee the functionality of a system of co-convening authorities over different aspects of the same case where one is the boss of the other, yet remain faithful to statutory, regulatory, and case law prohibitions against unlawful influence.[100]

(3) To the extent R.M.C. 705(a) or R.T.M.C. 12-1 provide a stand-alone exception as the only instance in which the Secretary of Defense may pull a "stick" from the bundle for himself, timing is key. As discussed *supra*, any prescribed "limitations" must be in effect before the convening authority acts. Otherwise, the convening authority enjoys no real

---

[100] Moreover, it is difficult to understand how the bundle of sticks argument would play itself out in practice. How many convening authorities could there be in a given case? One per duty/responsibility as set out in R.T.M.C. Chapter 2-3? Many convening authority responsibilities and duties overlap. For instance, it would be unmanageable for the Secretary of Defense to determine what investigative resources are necessary for the Defense and another convening authority to determine what experts are relevant and necessary for the Defense. Would this induce forum shopping or lobbying for particular convening authorities to preside over certain actions? In the event of a disagreement, how would a decision be made? Would the Secretary invoke a "veto?" Would the convening authority seek formal or informal approval of her decisions before acting? The answers to these questions do not matter as much as the existence of the questions themselves.

22

discretion to act in any circumstance without the fear of reversal, let alone with the "sole discretion" the Secretary had previously bestowed upon Ms. Escallier.[101]

(4) The Prosecution supported its position on the bundle of sticks argument by citing *O'Connell v. Shalala*, 79 F.3d 170, 177 (1st Cir. 1996) for the proposition that "[T]he statutory grant of a greater power typically includes the grant of a lesser power."[102] From *O'Connell*, the Government argues, "these interlocking authorities establish that, unless otherwise limited by law, the Secretary may exercise or otherwise reserve to himself any function of a military-commission convening authority."[103] That position is untenable. First, appellate courts have not well-received the "everything is permitted if not prohibited" argument in the face of clear unambiguous rules.[104] Second, it is unclear whether *O'Connell*, which would be persuasive to the Commission at best, remains good law. It relied on the *Chevron* Deference[105] principle, which the United States Supreme Court overruled last term.[106] Finally, the greater power/lesser power argument does not carry the day on the facts of this case. Just because the Secretary of Defense *could have* arguably withheld the power to enter into PTAs under R.M.C. 705(a), he did not actually do so in 2023 upon Ms. Escallier's appointment and failed to do so before she acted in 2024. The Secretary of Defense unequivocally, and without reservation, delegated full authority to Ms. Escallier to enter into PTAs. Once he did, that authority became hers and not his. Further, the Secretary of Defense was aware that Ms.

---

[101] R.T.M.C. Chapter 12-1.
[102] AE 955F (GOV), at 3.
[103] *Id.*
[104] *See, e.g.*, *United States v. Edwards*, 82 M.J. 243, 244 (C.A.A.F. 2022) (concluding the Air Force Court of Criminal Appeals' reliance on the principle that a victim unsworn statement was not obviously unreasonable in light of Article 6b, UCMJ, was "misplaced" when R.C.M. 1001A—which implemented Article 6b, UCMJ—was clear and "plain.").
[105] *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).
[106] *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).

23

Escallier's predecessor was engaging in ongoing PTA negotiations for over a year, and that other military commission cases had been resolved by PTA, prior to appointing Ms. Escallier. He could have, but did not, withhold her authority to enter into PTAs upon her designation. The Secretary of Defense never, prior to Ms. Escallier accepting the three PTAs at issue in these motions, withheld her authority to enter PTAs or made himself the Convening Authority.

(5) Finally, the Commission notes that the Prosecution has not cited, nor has the Commission found, a military justice or military commissions appellate case where the Secretary of Defense or the "Secretary concerned" in a traditional military justice context withheld the authority to enter into PTAs to his or her level in a case referred by a subordinate convening authority. No service regulation withholds the authority to enter into PTAs (or now, plea agreements) pursuant to R.C.M. 705(a) to the Secretary level.[107] The Prosecution's argument presents a vision of a judicial system where the Secretary of Defense enjoys plenary authority to act in any ongoing cases referred by a duly appointed convening authority. This, of course, is antithetical to the military justice system as it has historically functioned. The 2009 M.C.A. is not sufficiently distinct from the Uniform Code of Military Justice to adopt such an expansive and unrestrained interpretation of the Secretary of Defense's authority.[108]

e. "Withdraw" from PTAs.

(1) Assuming *arguendo* the Secretary of Defense had the legal authority to withhold the Convening Authority's authority to enter into PTAs and reserve that authority to

---

[107] That no service regulation has done what the Secretary of Defense purports to do here is not dispositive, but it is at least a point for the Commission to consider. Had a service Secretary done so, it would have supported the Prosecution's argument.

[108] This vision of an unconstrained Secretary of Defense is also inconsistent with the statutory, regulatory, and case law prohibitions against unlawful influence. At the very least, those sources of law provide some constraint on his ability to act and is inconsistent with the position advanced by the Prosecution.

24

himself, even after the Convening Authority had already exercised her sole discretion to enter into the PTAs, he still did not possess the authority to withdraw from the PTAs.

(2) By the plain terms of the SECDEF Memo, the Secretary of Defense reserved the authority to *enter* PTAs to himself. He did not reserve to himself the authority to *withdraw* from a PTA that had already been entered into by someone with authority to do so. Nor is it clear he could have. R.M.C. 705(a) grants authority to prescribe limitations regarding the *entering* of PTAs. R.M.C. 705(d)(4)(B), which discusses withdrawal from PTAs, has no comparable provision. Under that Rule, withdrawal authority belongs to the convening authority alone and is not subject to a limitation as the Secretary may prescribe.[109] The Secretary of Defense did not purport to make himself the Convening Authority for this case. Thus, even if he possessed legal authority to enter into a PTA, the Rules reserved withdrawal authority to the Convening Authority, Ms. Escallier. This asymmetrical result that would ensue if the SECDEF Memo is given effect is further evidence that the roles of the convening authority cannot be so spliced as the Prosecution urges; the fair-handed, even administration of justice requires a singular entity with oversight over the case at large to be able to act on matters before him or her.[110]

(3) Further assuming, without deciding, that the reservation of power to enter into a PTA also necessarily encompasses the power to withdraw from that PTA,[111] which in this case would make the Secretary of Defense a "convening authority" for the purposes of R.M.C. 705 alone, the Secretary of Defense could not withdraw from the PTAs in this case because each of

---

[109] *Compare* R.M.C. 705(d)(4)(B) and R.T.M.C. Chapter 12-3 *with* R.M.C. 705(a) and R.T.M.C. Chapter 12-1.
[110] The Defense has represented that Ms. Escallier has continued to act as the Convening Authority after 2 August 2024 to date. *See* AE 956F (WBA), at 14.
[111] The Prosecution did not support this proposition with a citation to law.

the three individual Accused began performance. If an accused begins performance of the terms of a PTA, the convening authority loses the right to withdraw from the deal.[112] Here, Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi all began performance as that term is explained in *Dean*. The CAAF's reasoning from *Dean* is just as strong now as it was then. The version of R.C.M. 705(d)(4)(B) it analyzed is the same as the R.M.C. 705(d)(4)(B) at issue here. No intervening circumstance has changed the force of that decision. It has been neither overruled nor abrogated.

        (4) Performance began in a number of ways. All three Accused signed lengthy confessional stipulations of fact, which could be used to establish their guilt and for the Panel Members to determine an appropriate sentence. All three Accused negotiated an acceptable version of their respective LHMs which can be offered against them in presentencing proceedings without certain objections.[113] All three Accused refrained from examining the witness(es) for pretrial motions while the Prosecution and Defense Counsel for Mr. Ali questioned those same witnesses. The Trial Counsel himself insisted upon that course of action so that the Defense teams did not violate a material term of their agreements.[114] Other than the

---

[112] *See* R.M.C. 705(d)(4)(B); *Dean*, 67 M.J. at 228.
[113] The admissibility of the LHMs has been the subject of contested pretrial litigation for several years. That these three Accused agreed to not lodge certain objections to versions of the LHMs is a dramatic change of litigation posture, one that was presumably precipitated by the Convening Authority's agreement to remove capital punishment as a sentencing consideration.
[114] *See* Tr. at 49317-18.

present motions to schedule a hearing for the entry of pleas, these three Accused have refrained from filing motions.[115]

(5) Per *Dean*, these acts, or intentional failures to act, qualify as "beginning performance." *Dean* is the most direct case law provided by the Parties in support of their arguments. Using a "plain language" analysis, the CAAF held the convening authority lost the right to withdraw because Dean had begun performance when he satisfied his obligation to enter a confessional stipulation of fact and elect a military judge alone forum. The CAAF rejected the argument presented by the Prosecution here that "beginning performance" can only occur after a PTA is signed. Just as in *Dean*, where entering into a confessional stipulation of fact and electing a military judge alone forum was sufficient to qualify as beginning performance, here all three co-Accused have begun performance simply by entering into a Stipulation of Fact as was required by each of the three PTAs. The timing of the entry of such stipulation is not the issue; the act of doing so is what begins performance. Such remains the state of law with R.M.C. 705(d)(4)(B).[116]

(6) The Prosecution also advances the position that performance has not begun because there has been no detrimental reliance by the three co-Accused.[117] In short, the Prosecution argues that any actions the three co-Accused have taken can be undone and all

---

[115] The Commission does not consider the Accused's motions to schedule a hearing for entry of pleas, a requirement under the PTA, to be a material breach of a separate PTA requirement to not file future motions. It would be logically inconsistent to designate a requirement of the contract to be a provision which could void the contract.

[116] The current R.C.M. 705(e)(4)(B)(i) alters the "begins performance" language to read, "The convening authority . . . may withdraw from a plea agreement at any time before *substantial performance* by the accused of promises contained in the agreement." (emphasis added). No comparable change was made to R.M.C. 705(d)(4)(B). From this, two conclusions may be drawn. First, the President intended to swing the pendulum away from the "begins performance" standard and provide a more liberal basis for the convening authority to withdraw from a PTA in military justice cases. Second, the Secretary of Defense chose not to do this and instead remain under control of a *Dean* analysis for PTA withdrawal purposes in military commissions cases.

[117] *See* AE 955G (GOV) / AE 957E (GOV), at 5-6.

Parties may be returned to *status quo ante*. For example, the witnesses the Defense Counsel have not examined can be recalled, any motions the Defense has not filed may be filed, any Stipulations of Fact or agreed-to LHMs can be disregarded, and any mention of stipulations or deals themselves can be excluded per M.C.R.E. 410. This argument fails. First, it stands in direct conflict with *Dean*. If performance has begun, no detrimental reliance analysis need be undertaken.[118] Second, the argument transposes the detrimental reliance concept onto the performance that has already begun. However, the detrimental reliance analysis discussed in *Shepardson* and in note 3 of the *Dean* opinion envisions a detrimental reliance analysis *only if* performance *had not* begun. The salient fact pattern in *Shepardson* is that performance had not begun *and* there had been no detrimental reliance; that is why the case resolved as it did.[119] Here, performance had begun, so it is immaterial whether or not any actions taken by the three co-Accused can be undone.[120]

(7) Further assuming performance had not begun, the Rules and the PTA collectively assign a list of reasons a convening authority may withdraw from a PTA.[121] None of those conditions apply and, therefore, the withdrawal amounts to a material breach of the PTAs.[122] The SECDEF Memo provides no explicit rationale for attempting to withdraw from the

---

[118] *Dean*, 67 M.J. at 228, n.3.
[119] 14 M.J. at 356 ("[N]one of the conditions precedent set out in the offer had occurred.")
[120] The Government also relies on *United States v. Villareal*, 52 M.J. 27 (C.A.A.F. 1999). That case is inapposite. The granted issue revolved around unlawful command influence when it appeared as if a superior pressured or suggested the convening authority withdraw from a PTA, a different set of facts than presented here. Moreover, though the CAAF used the phrase "the convening authority revoked his approval of a pretrial agreement, after all parties had signed it but before appellant exercised any reliance thereon," *id.* at 30, in context that statement is about the accused failing to begin performance rather than the contract principle of detrimental reliance. Finally, *Dean* is more recent in time and controlling.
[121] *See* R.M.C. 705(d)(4)(B); R.T.M.C. Chapter 12-3; Mohammad PTA at 15, para. 46; bin 'Attash PTA at 14-15, para. 43; Hawsawi PTA at 15, para. 44.
[122] The three PTAs have burden reassignment provisions in the event one party considers the opposing party to have committed a material breach, placing the burden on Prosecution to demonstrate either there was or was not a breach.

PTAs. One could surmise the reason for doing so may be his determination that the decision to enter into PTAs is "significant" and, thus, the decision to withdraw should also rest with him. The significance of a PTA is not one of the reasons the governing legal sources permit the Convening Authority to withdraw.[123]

5. **Ruling**.

a. The Defense motions at AE 955C (KSM), AE 956F (WBA), and AE 957B (MAH) are **GRANTED**.

b. Pursuant to the terms of three valid and enforceable PTAs, the Commission will schedule a hearing for the entry of pleas for Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi at a date to be determined by the Commission.

So **ORDERED** this 6th day of November, 2024.


//s//
MATTHEW N. MCCALL, Colonel, USAF
Military Judge
Military Commissions Trial Judiciary

---

*See, e.g.*, Mohammad PTA at 16, para. 50. Based on the Commission's Ruling that the Secretary of Defense's actions were *void ab initio*, there is no breach of the PTA, and thus, the Commission need not render any conclusions regarding whether there was a material breach in order to grant the Defense motions. If a reviewing authority determines the Secretary of Defense's actions were lawful and timely, and the question becomes whether he could withdraw from the PTA, the Commission concludes the evidence does not establish a legally permissible purpose to withdraw from the PTA, no matter which party owns the burden.

[123] Finally, the Commission notes that paragraph 40 of Mr. Mohammad's PTA and paragraph 39 of Mr. Hawsawi's PTA appear to have the effect of precluding capital litigation if the Convening Authority withdraws from the PTA for a purpose other than those specifically agreed to within their PTAs. None of those agreed-to bases for withdrawal apply. If a reviewing authority determines the Secretary of Defense's actions were lawful and timely, the Parties would need to engage in further litigation surrounding whether the Government is precluded from seeking the death penalty in the cases of Mr. Mohammad or Mr. Hawsawi. Mr. bin 'Attash does not have an identical provision in his PTA.

Exhibit B

# UNITED STATES COURT OF MILITARY COMMISSION REVIEW

## BEFORE THE COURT
### RICHARDSON, PRESIDING JUDGE
### SCHENCK AND KIRKBY, APPELLATE JUDGES

━━━━━━

### IN RE KHALID SHAIKH MOHAMMAD, WALID MUHAMMAD SALIH MUBARAK BIN 'ATTASH, AND MUSTAFA AHMED ADAM AL HAWSAWI

## CMCR 24-001

## December 30, 2024

━━━━━━

*Colonel James L. Pohl*, U.S. Army, military commission judge, arraignment; and *Colonel Matthew N. McCall*, U.S. Air Force, military commission judge, presiding.

On briefs for petitioner were *Michael J. O'Sullivan*; *Haridimos V. Thravalos*; *Bryce G. Poole*; *Clay Trivett*; and *Rear Admiral Aaron C. Rugh*, JAGC, U.S. Navy.

On brief for respondent Mohammad were *Gary D. Sowards*; *Nicholas W. McCue*; *Gabriela M. McQuade*; *Melanie T. Partow*; and *Major Michael P. Leahy*, JA, U.S. Air Force.

On brief for respondent Hawsawi were *Walter B. Ruiz*; *Suzanne M. Lachelier*; *Sean M. Gleason*; *Major Kerry A. Mawn*, JA, U.S. Air Force; and *Major Patrick C. Tipton*, JA, U.S. Air Force.

On brief for intervenor Ali Abdul Aziz Ali also known as Ammar al Baluchi were *James G. Connell, III*; *Alka Pradhan*; *Rita J. Radostitz*; *Defne Ozgediz*; *Major Jessica Casciola*, JA, U.S. Army; and Lieutenant *Jennifer Joseph*, JAGC, U.S. Navy.

On brief for *amicus curiae* was *Colonel (Ret.) James A. Young*, U.S. Air Force.

--------------------------------------------------------
## PUBLISHED OPINION OF THE COURT
--------------------------------------------------------

Opinion for the court filed by SCHENCK, J., in which RICHARDSON and KIRKBY, JJ., concur.

Opinion for the court

Schenck, Judge:

Respondents Khalid Shaikh Mohammad (KSM or Mohammad), Walid
Muhammad Salih Mubarak Bin 'Attash (WBA or Bin 'Attash), and Mustafa
Ahmed Adam al Hawsawi (MAH or Hawsawi) are three of four co-accused being
tried by military commission at Guantanamo Bay, Cuba, in *Khalid Shaikh
Mohammad et al.* The other co-accused, Ali Abdul Aziz Ali, also known as
Ammar al Baluchi, moved to join as an intervenor in the writ petition that was
filed in this court by petitioner, the United States Government. Ali Mot. to
Intervene (Dec. 6, 2024). In September 2023, the military commission severed
from *Mohammad et al.*, the fifth defendant, Ramzi Binalshibh, because he
lacked capacity to stand trial. Pet'r's App. 628 (Nov. 26, 2024).

Petitioner seeks a writ of mandamus and prohibition and asks our court to
vacate the military judge's rulings in AE 955J (KSM), AE 956J (WBA), and
AE 957I (MAH). Pet'r's Br. 1–2 (Nov. 26, 2024). The military judge ruled that
the Secretary of Defense (Secretary) did not have authority to "withdraw"
Brigadier General (BG) (Retired) [hereinafter (Ret.)] Susan Escallier's authority
to enter into pretrial agreements (PTA)[1] and retroactively replace the convening
authority with himself as the convening authority authorized to make PTAs in
the case of *Mohammad et al.*, and to vacate existing PTAs[2] between these
accused and the convening authority.

We deny the writ of mandamus and prohibition for two reasons. First, we
conclude that although the Secretary had authority to replace BG (Ret.)
Escallier with himself as the convening authority for *future* PTAs, the Secretary
has not taken any actions on future PTAs. Advisory decisions on writs of
mandamus and prohibition are not permitted. And second, we agree with the
military judge that the Secretary did not have authority to revoke respondents'
existing PTAs because the respondents had started performance of the PTAs.

Respondents are charged with multiple violations of the law of war under
the Military Commissions Act of 2009 (M.C.A.), 10 U.S.C. §§ 948a–950t, for
their alleged roles in the planning and execution of the September 11, 2001,
attacks on the United States. *See In re Ali*, 558 F. Supp. 3d 1167, 1170 (CMCR

---

[1] In military commissions, the term "pretrial agreement" refers to "terms or conditions
requested by the accused, within the power of the convening authority, and not otherwise
prohibited," which the convening authority may agree to as a step in the disposition of
offenses. Rule for Military Commissions (R.M.C.) 705(b), Manual for Military
Commissions, United States (MMC) (2019 ed.). In courts-martial, the term "plea agreement"
is the same as pretrial agreement (PTA). *See* Rule for Courts-Martial (R.C.M.) 705(b),
Manual for Courts-Martial, United States (MCM) (2024).

[2] The pretrial agreements are filed under and remain under seal except as indicated in this
decision. Pet'r's App. 912–14 (Nov. 26, 2024).

2021). The charges allege that respondents aided, abetted, and conspired with 19 al Qaeda hijackers to commit attacks, which resulted in the deaths of 2,976 people. Pet'r's Br. 1 (citing Pet'r's App. 774 (charge sheet, referred April 4, 2012)); *see United States v. Mohammad*, 280 F. Supp. 3d 1305, 1308 (CMCR 2017) (listing charges). Their capital charges were referred to trial by military commission, pursuant to the 2009 MCA. Pet'r's App. 775; *see* 10 U.S.C. § 948b. Our court has resolved twelve writs or government appeals in this case. *See Ali*, 558 F. Supp. 3d at 1170–71 (detailing writ and appellate history).

## I. Statement of facts

On August 21, 2023, the Secretary appointed BG (Ret.) Escallier as the convening authority for respondents' military commission effective on October 8, 2023. Pet'r's App. 670. The appointment memorandum stated that "Ms. Escallier shall exercise her independent legal discretion with regard to judicial acts and other duties of the Convening Authority." *Id.* at 401. On July 29 and 30, 2024, petitioner and respondents signed stipulations of fact and respondents signed PTAs. *Id.* at 29, 149, 280, 298; *see also id.* at 402–03. The resulting three PTAs contained numerous requirements, including that the respondents enter into stipulations of fact, accept admissibility of Letterhead Memoranda (LHM) summarizing statements made by each accused to the Federal Bureau of Investigation (FBI) in 2007, and also in 2008 for Bin 'Attash, and not litigate or contest motions in respondents' case. *Id.* at 12–13, 15, 20 (KSM PTA); 133–36, 140 (WBA PTA), 281–83, 289 (MAH PTA); *see also id.* at 403, 404 n.41. The PTAs included stipulations of fact and partially redacted LHM statements as Attachments A and B. *See, e.g.*, *id.* at 680–81 (WBA PTA) (citing AE 956 (GOV), Attach. B, at 53–148). Petitioner and each respondent signed that respondent's stipulation of fact on July 29 or 30, 2024. *Id.* at 58, 174, 328. "Paragraph 56 of the PTA provides that 'the Convening Authority's acceptance of this Offer, including Attachments A and B[,] will transform this Offer into an Agreement binding upon the Accused and the Government.'" *Id.* at 681 (WBA PTA) (alteration in original). On July 31, 2024, the convening authority signed each PTA. *Id.* at 30, 50, 298, 403 & n.30

The next day, on August 1, 2024, petitioner notified the military judge at a hearing that "the convening authority has reached pretrial agreements in this case" with respondents. *Id.* at 912; *see id.* at 404. That same day, during a discussion with the judge about severing Mohammad, Bin 'Attash, and Hawsawi (the individuals who had PTAs) from the trial of Ali (who did not have a PTA), trial counsel stated: "But at this point, with the waiver of all motions from three of the four accused, they can't actively continue to participate in any of the contested litigation based on [their] pretrial agreement[s]." *Id.* at 917–18. An FBI special agent testified later that same day. *Id.* at 926. Ali's counsel cross-examined the witness; counsel for the three respondents did not ask any questions. *Id.* at 404; *see id.* at 926.

On August 2, 2024, the Secretary issued a memorandum to the convening authority, Subject: Authority to Enter into Pre-Trial Agreements in *United States v. Khalid Shaikh Mohammad et al.* (*United States v. Khalid Shaikh Mohammad*; *United States v. Walid Muhammad Salih Mubarak Bin 'Attash*; *United States v. Mustafa Ahmed Adam al Hawsawi*; *United States v. Ramzi Binalshibh*; and *United States v. Ali Abdul Aziz Ali*), which states:

> I have determined that, in light of the significance of the decision to enter into pre-trial agreements with the accused in the above-referenced case, responsibility for such a decision should rest with me as the superior convening authority under the Military Commissions Act of 2009.  Effective immediately, I hereby withdraw your authority in the above-referenced case to enter into a pre-trial agreement and reserve such authority to myself.

> Effective immediately, in the exercise of my authority, I hereby withdraw from the three pre-trial agreements that you signed on July 31, 2024 in the above-referenced case.

*Id.* at 405, 636.  Prior to issuing his memorandum, the Secretary did not issue or place any limitations on BG (Ret.) Escallier's authority to enter into PTAs that are relevant to the mandamus petition before the court.  *Id.* at 401, 411.

Counsel for Hawsawi noted on the record that if Hawsawi's PTA was "to be somehow revoked or removed, that [] would be a breach of [the] agreement" because specific performance on Hawsawi's agreement had already begun because he had abstained from examining witnesses.  *Id.* at 684 (citation omitted).  The parties briefed the issues.  *See id.* at 644.

After the PTAs were signed, respondents did not file motions (other than for scheduling matters), request discovery, examine witnesses, or argue motions.  *Id.* at 405.  The military judge found that BG (Ret.) Escallier had continued to act as the convening authority in this case.  *Id.* at 406.  She did not, however, take any actions with respect to the three PTAs in respondents' case—there is no evidence of changes to those PTAs.  Nor is there any evidence of a PTA between Intervenor Ali and the convening authority, BG (Ret.) Escallier.

On November 6, 2024, the military judge ruled in AE 955J (KSM), AE 956J (WBA), and AE 957I (MAH) that the Secretary's memorandum was *void ab initio*.  *Id.* at 424 n.122.  He further determined that the Secretary could not *withhold* ex post facto the authority already given and exercised to make PTAs.  *See id.* at 419–20.  Regarding *withdrawal* from the PTAs, the military judge stated:

> R.M.C. [Rule for Military Commissions] 705(a)[, Manual for Military Commissions, United States (MMC),] grants authority to

prescribe limitations regarding the *entering* of PTAs. R.M.C. 705(d)(4)(B), which discusses withdrawal from PTAs, has no comparable provision. Under that Rule, withdrawal authority belongs to the convening authority alone and is not subject to a limitation as the Secretary may prescribe. The Secretary did not purport to make himself the Convening Authority for this case. Thus, even if he possessed legal authority to enter into a PTA, the Rules reserved withdrawal authority to the Convening Authority, Ms. Escallier. This asymmetrical result that would ensue if the SECDEF Memo is given effect is further evidence that the roles of the convening authority cannot be so spliced as the Prosecution urges; the fair-handed, even administration of justice requires a singular entity with oversight over the case at large to be able to act on matters before him or her.

*Id.* at 421 (footnotes omitted). The military judge also cited practical difficulties involved in parsing responsibilities between two convening authorities, and the absence of legal precedent for two convening authorities on the same case. *Id.* at 417–21.

Petitioner said in its petition that there is ample precedent for superior convening authorities granting or limiting the authority of subordinate convening authorities.[3]

Additionally, the military judge suggested that the Secretary could not appoint himself as the convening authority for future PTAs, and determined he could not withdraw from the PTAs because respondents' performance had begun. *Id.* at 417–20. The military judge stated:

Performance began in a number of ways. All three Accused signed lengthy confessional stipulations of fact, which could be used to establish their guilt and for the Panel Members to determine an appropriate sentence. All three Accused negotiated an acceptable version of their respective LHMs which can be offered against them in presentencing proceedings without certain objections. All three

---

[3] Petitioner quotes from The Judge Advocate General's Legal Center & School, U.S. Army, Criminal Law Deskbook, at 1-6 (Jan. 2019), noting it states, "[b]y policy, the Secretary of Defense has withheld the disposition authority for all sexual offenses." Pet'r's Br. 22 (Nov. 26, 2024) (alteration in original) (quoting Pet'r's App. 1115). Petitioner quotes from The Judge Advocate General's Legal Center & School, U.S. Army, Commander's Legal Handbook, Misc. Pub. No. 27-8, at 18 (2019), noting it states that a superior commander may "[w]ithhold authority over types of offenses, types of offenders, or certain commanders." *Id.* (alteration in original) (quoting Pet'r's App. 1102). Petitioner also compares Rule for Military Commissions 401(a) with Rule for Courts-Martial 306(a)(2), and 10 U.S.C. § 837(d)(1), and cites to paragraph 12-1 of the Regulation for Trial by Military Commission. ¶ 12-1. *Id.*

Accused refrained from examining the witness(es) for pretrial motions while the Prosecution and Defense Counsel for Mr. Ali questioned those same witnesses. The Trial Counsel himself insisted upon that course of action so that the Defense teams did not violate a material term of their agreements.

*Id.* at 422 (footnotes omitted).  The military judge noted:  "That these three Accused agreed to not lodge certain objections to versions of the LHMs is a dramatic change of litigation posture. . . ."  *Id.* at 422 n.113.

## II. Law and analysis

This court has jurisdiction over mandamus petitions for extraordinary relief under the All Writs Act, 28 U.S.C. § 1651(a) (2024).  *See In re Al-Nashiri* (*Al-Nashiri III*), 921 F.3d 224, 227, 233 (D.C. Cir. 2019).  A writ of mandamus may only be granted when a petitioner demonstrates

that [his] right to issuance of the writ is clear and indisputable, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires, and the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Id.* at 233 (alterations in original) (internal quotation marks omitted) (quoting *Cheney v. U.S. District Court*, 542 U.S. 367, 380–81 (2004)).

### A. The Secretary's decision to appoint himself as the convening authority for future PTAs

The parties and intervenor do not cite any authority explicitly authorizing a superior convening authority to withdraw authority from a subordinate convening authority to make PTAs or explicitly prohibiting a superior convening authority from withdrawing the authority of a subordinate convening authority to enter into PTAs, without withdrawing all convening authority responsibilities.  *See* Resp'ts Mohammad & Hawsawi's Br. 24–26 (Dec. 11, 2024); Resp't 'Attash's Br. 9–19 (Dec. 11, 2024); Intervenor Ali's Br. 7–25 (Dec. 11, 2024).  The Secretary's action results in two convening authorities in respondents' case with different responsibilities, which may potentially overlap or conflict.

The military judge ruled that, in these circumstances, the Secretary lacked authority to reserve for himself the authority to enter into PTAs.  Pet'r's App. 421.  The judge provided three reasons for his ruling that the Secretary could not be the convening authority for PTAs with respondents.  First, the Secretary did not "reserve" to himself the authority to *withdraw* from PTAs or to withhold BG (Ret.) Escallier's authority to withdraw.  *Id.* at 411–12 (quoting R.M.C.

705(d)(4)(B)), 421.[4]  Second, respondents had already begun their performance, and third, the Secretary was not specifically authorized under the PTAs or Rule for Military Commissions 705 to be the convening authority for PTAs.  *Id.* at 414–15, 422–23; *see* sealed AEs (Pet'r's App. vols. 1–3).  We agree with the military judge's observations about the absence of authority in the PTAs and Rule for Military Commissions 705 for the Secretary's actions, and that respondents had already begun performance under the PTAs.

We agree with petitioner that powerful "interlocking authorities" give the Secretary of Defense supervisory authority to replace BG (Ret.) Escallier as convening authority for PTAs without taking all convening authority responsibilities from her.  Pet'r's Br. 15.  The Secretary "is the principal assistant to the President in all matters relating to the Department of Defense."  10 U.S.C. § 113(b).  "[H]e has authority, direction, and control over the Department of Defense."  *Id.*  "Unless specifically prohibited by law, the Secretary [of Defense] may, without being relieved of his responsibility, perform any of his functions or duties or exercise any of his powers through, or with the aid of, such persons in, or organizations of, the Department of Defense as he may designate."  10 U.S.C. § 113(d).  In *United States v. Khadr*, 717 F. Supp. 2d 1212, 1213 (CMCR 2007), the court stated, "The plain language of 10 U.S.C. § 113(d) provides the Secretary broad authority to delegate his powers as he sees fit, subject only to the limitation that he may not do so when it is "*specifically prohibited by law*."  In *Khadr*, we "appl[ied] the ordinary meaning of the terms 'specific' and 'prohibit' in analyzing this provision and [found] no 'explicit or definite' provision of law" that prohibited the action taken by the Secretary of Defense in *Khadr*; we denied the challenge to the Secretary's authority to "delegat[e]" his "authority to appoint appellate judges to this court."  *Id.* at 1213–14.

The Secretary has authority under the Military Commissions Act to prescribe "[p]retrial, trial, and post-trial procedures, including elements and modes of proof, for cases triable by military commission under this chapter."  10 U.S.C. § 949a(a).  He also has authority to convene trials by military commissions or to appoint "any officer or official of the United States" to be a convening authority.  10 U.S.C. § 948h; *see Al Bahlul v. United States* (*Al Bahlul IV*), 967 F.3d 858, 868–69 (D.C. Cir. 2020) (discussing Secretary's designation authority under 2006 MCA).

Based on 10 U.S.C. § 949a, the Secretary of Defense issued the Manual for Military Commissions, which was adapted from the Manual for Courts-Martial, United States (MCM).  MMC, at Foreword (2019 ed.)  The Manual for Military Commissions contains the Rules for Military Commission.  The

---

[4] Unless stated otherwise, all references to the Manual for Military Commissions refer to the 2019 version; all references to the Regulation for Trial by Military Commission refer to the 2011 version; all references to the Manual for Courts-Martial refer to the 2024 version; all references to the Military Commissions Act, 10 U.S.C. §§ 948a–950t, refer to the 2009 version, and all other citations to the United States Code refer to the 2024 version.

Secretary also issued the Regulation for Trial by Military Commission (2011 ed.) (RTMC). Under this regulation, "The Secretary of Defense is responsible for the overall supervision and administration of military commissions within the DoD [Department of Defense]." RTMC, ¶ 1-3(a).

Rule for Military Commission 401 provides the procedures and authorities for disposition of charges. That rule provides:

### Rule 401. Forwarding and disposition of charges in general

(a) *Who may dispose of charges*. Only the Secretary or an officer or official of the United States designated by the Secretary for the purpose to convene military commissions may dispose of charges. A superior competent authority may withhold the authority of a subordinate to dispose of charges in individual cases, types of case, or generally.

(b) *How charges may be disposed of*. Unless the authority to do so has been limited or withheld by a superior competent authority, an authority may dispose of charges by dismissing any or all of them, forwarding any or all of them to another authority for disposition, or referring any or all of them to a military commission.

One tool in the disposition of charged offenses is through a PTA. "[P]lea agreements [must be] consistent with the requirements of voluntariness and intelligence -- because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). In military commissions, PTAs are "created through the process of bargaining, similar to that used in creating any commercial contract. As a result, we look to the basic principles of contract law when interpreting pretrial agreements." *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999) (citing *Cooper v. United States*, 594 F.2d 12, 16 (4th Cir. 1979)); *see also United States v. Moreno-Membache*, 995 F.3d 249, 256 (D.C. Cir. 2021) ("Because a plea agreement is a contract, it must be read as a whole.").

The procedures, limitations, and requirements for PTAs in trials by military commission are detailed in Rule for Military Commissions 705(a). That rule states, "(a) *In general*. Subject to such limitations as the Secretary may prescribe, an accused and the convening authority may enter into a pretrial agreement in accordance with this rule." This provision is repeated in paragraph 12-1 of the Regulation for Trial by Military Commission. Petitioner has not cited any defects in the negotiation process or in the three PTAs.

The Secretary of Defense is a "superior competent authority," and as such, he "may withhold the authority of [his] subordinate," BG (Ret.) Escallier,

"to dispose of charges."  R.M.C. 401(a).  Rule for Courts-Martial 401(a) (R.C.M.), MCM, and Rule for Military Commissions 401(a) have the same language.  For at least ninety years, higher-level military commanders have had authority to withhold the authority of lower-level military commanders to serve as convening authorities in specific cases, and higher-level commanders also have occupied that role.  However, the role of a superior convening authority is not to tell a subordinate convening authority what action he or she should take in a particular case.  The following two cases address when a superior convening authority's intervention in the disposition of charges has been upheld.

In *United States v. Fleming*, 2 A.B.R. 359, 372 (1931), the United States Army Board of Review considered a court-martial in which the department commander withheld authority of subordinate commanders to dispose of charges against Captain Fleming.  Pet'r's App. 985.  The *Fleming* Board of Review said, "It is believed that the right of a superior commanding officer to order his military inferiors not to dispose of a given case, thus reserving disposition thereof to himself, is a necessary attribute of command without which he might become powerless to maintain discipline."  *Id*.

More recently, in *Hayes v. Maksym*, No. NMCCA 200301982, 2004 CCA LEXIS 35 (N-M. Ct. Crim. App. Feb. 11, 2004) (unpub.), Hayes filed a petition for a writ of mandamus to overturn the decision of a superior convening authority to withdraw and refer his case to a higher-level court-martial.  After arraignment for a special court-martial, Hayes submitted a PTA offer; the special court-martial convening authority agreed to refer his case to a lower-level summary court-martial in return for a guilty plea in a summary court-martial.  *Id*. at *3.  The maximum possible confinement was less at a summary court-martial than at a higher-level special court-martial.  Later, based upon Rule for Courts-Martial 401(a), a superior convening authority withheld the authority of a special court-martial convening authority to dispose of Hayes' charges at a summary court-martial.  *Id*. at *4.  The superior convening authority then referred to a special court-martial the same charge and specifications upon which Hayes had previously been arraigned.  *Id*.  The United States Navy-Marine Corps Court of Criminal Appeals noted that Hayes "can point to no provision in the Uniform Code of Military Justice, the Manual for Courts-Martial, or case precedent that prohibits what happened in this case." *Id*. at *7.  The Court of Criminal Appeals denied Hayes' petition for a mandamus writ.  *Id*. (citing R.C.M. 401(a)).

The Secretary, as a superior convening authority, has an important role in referral of charges to trial by military commission.  He "may cause charges, whether or not referred, to be transmitted to the authority for further consideration, including, if appropriate, referral."  R.M.C. 601(f); *see* R.M.C. 601(b) ("A convening authority may refer charges to a military commission convened by that convening authority, or a predecessor, unless the power to do

so has been withheld by superior competent authority."). The Secretary also "may for any reason cause any charges or specifications to be withdrawn . . . at any time before findings are announced." R.M.C. 604(a); *see also* R.C.M 604(a) (stating same), *quoted in United States v. Leahr*, 73 M.J. 364, 369 (C.A.A.F. 2014). However, the charges may not be re-referred if the withdrawal was "for an improper reason." *Leahr*, at 369 (quoting R.C.M. 604(b)); *see* R.M.C. 604(a), Discussion ("Charges should not be withdrawn from a court-martial arbitrarily or unfairly to an accused." (quoting R.C.M. 604(b)).

The Secretary of Defense's intervention in respondents' existing PTAs is without precedent. Service secretaries, nonetheless, occasionally intervene in the disposition of individual cases. *See, e.g.*, Message from Stanley R. Resor, Sec'y of the Army, to Maj. Gen. George L. Mabry, Jr., Commanding General, The Support Troops, USARV, Subject: Charges Against Colonel Rheault et al (Sept. 29, 1969)[5] (Pet'r's App. 1080) ("Acting as a superior convening authority under the provisions of Article 22, UCMJ, I hereby assume jurisdiction over and hereby dismiss the court-martial charges . . . alleging conspiracy to murder and the murder of [an individual] on or about 20 June 1969."); *see also* Pet'r's Br. 18 n.83 (citing and discussing same message). We note that this precedent petitioner provides is for a superior convening authority to intervene by taking complete jurisdiction over disposition of a case—not partial control by being the convening authority for PTAs, while leaving the remainder of control to a subordinate convening authority.

Next, we consider concerns about the Secretary exercising improper influence over BG (Ret.) Escallier in his new role as convening authority for PTAs in respondents' case. The military judge stated in his ruling that respondents' motions seeking enforcement of their existing PTAs "are not being resolved on unlawful influence grounds, but [on] the idea that each of the Convening Authority's actions and decisions are immediately reversible if the Secretary disagrees[, which] potentially raises the specter of unlawful influence." Pet'r's App. 417. The military judge acknowledged that the Secretary could impose limits on BG (Ret.) Escallier's authority, *see id.*, yet concluded that "any prescribed 'limitations' must be in effect before the convening authority acts. Otherwise, the convening authority enjoys no real discretion to act in any circumstance without the fear of reversal, let alone with the 'sole discretion' the Secretary had previously bestowed upon Ms. Escallier." *Id.* at 418–19.

The military judge expressed additional concern about the independence of BG (Ret.) Escallier because of the Secretary acting as convening authority for PTAs and BG (Ret.) Escallier acting as convening authority for all other matters in respondents' cases. The military judge noted that "[i]t is difficult to foresee

[5] (Message No. DA OUT 925536) (File No. OSA 250.1 VIETNAM), *in* NARA-RG 335 (UD-UP Entry 35), Security Classification: UNCLAS EFTO.

the functionality of a system of co-convening authorities over different aspects of the same case where one is the boss of the other, yet remain faithful to statutory, regulatory, and case law prohibitions against unlawful influence." *Id.* at 418; *see* Resp'ts' Br. 23, 31–32.[6]

Intervenor Ali relies on *United States v. Hardy*, 4 M.J. 20 (C.M.A. 1977), *abrogated on other grounds by United States v. Blaylock*, 15 M.J. 190, 192–93 (C.M.A. 1983), to support his argument "that a superior convening authority may either take over a case in its entirety, or allow the lawfully designated subordinate to exercise its authority over the case without interfering with the subordinate's exercise of discretion." Intervenor Ali's Br. 13; *see id.* at 14. In *Hardy*, the case was referred to a special court-martial, and a superior convening authority ordered the subordinate convening authority who referred the case to withdraw the charges from the special court-martial. *Hardy*, 4 M.J. at 21.

The United States Court of Military Appeals in *Hardy* stated:

Where, as here, the superior commander seeks to affect a *particular* case by *countermanding* discretionary judicial decision of a subordinate commander which the latter made pursuant to his then existing powers under the Uniform Code of Military Justice, the superior has injected the spectre of unlawful command control over the judicial act of the subordinate. This contravenes the intent of Article 37(a), UCMJ.[7]

*Id.* at 24. The court further observed that the order of the superior convening authority was improper because the subordinate convening authority's withdrawal of charges from the special court-martial "must result from his *own* decision . . . . His action in withdrawing a specific case from a court to which it

[6] Petitioner argues that unlawful influence is not ripe for consideration because the military judge's ruling was decided on other grounds. Pet'r's Reply Br. 18 n.101 (Dec. 16, 2024) (citing App. 406 n.46; Resp'ts 'Attash & Hawsawi's Opp. to Ali's Mot. to Intervene 1–3 (Dec. 12, 2024)).

[7] The version of 10 U.S.C. § 837(a) in effect when *Hardy* was decided stated:

No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceeding. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts. . . .

Act of Oct. 24, 1968, Pub. L. No. 90-632, § 2(13), 82 Stat. 1335, 1338.

already properly had been referred must not be the result of a superior's *order* to do so pursuant to the *superior's* decision." *Id*. at 23. The court in *Hardy* added, "to tolerate otherwise would permit that superior commander, in a specific case and after-the-fact, to influence directly the action of the subordinate convening authority with respect to the latter's judicial acts *already properly taken* in that case." *Id*. (footnote citation omitted; emphasis added).

We find that *Hardy* stands for the proposition that the Secretary of Defense cannot *order* BG (Ret.) Escallier to withdraw from respondents' PTAs, which were already approved. *Hardy*, however, does not prevent the Secretary of Defense from withdrawing BG (Ret.) Escallier's authority to approve *future* PTAs in respondents' case.

Unlawful influence of convening authorities for military commissions is prohibited in 10 U.S.C. § 949b(a)(2), which states, "No person may attempt to coerce or, by any unauthorized means, influence . . . (B) the action of any convening, approving, or reviewing authority with respect to their judicial acts[.]" This language is similar to the language in the version of 10 U.S.C. § 837(a) that the Court of Military Appeals applied in *Hardy*. *See supra* note 7.

Title 10, section 837(d) of the United States Code, which applies to courts-martial, not military commissions, states:

> (1) A superior convening authority or commanding officer may withhold the authority of a subordinate convening authority or officer to dispose of offenses in individual cases, types of cases, or generally.

> (2) Except as provided in paragraph (1) or as otherwise authorized by this chapter, a superior convening authority or commanding officer may not limit the discretion of a subordinate convening authority or officer to act with respect to a case for which the subordinate convening authority or officer has authority to dispose of the offenses.

*See also* R.C.M. 104(d) (same). Section 837(d)(1) is repeated in Rule for Military Commissions 401, *supra*, but section 837(d)(2), prohibiting limitations on a convening authority's discretion, is not reflected in Rule for Military Commissions 401. Moreover, the Uniform Code of Military Justice provision prohibiting unlawful influence of superior convening authorities (R.C.M. 104(d)) is broader than what is provided for in the Military Commissions Act (R.M.C. 401(b)). In any event, the issue of unlawful influence was not fully litigated before respondents' military commission, and this issue therefore is not ripe for our consideration. *See* Pet'r's Reply Br. 18 n.101 (Dec. 16, 2024).

Nevertheless, neither of the litigants cited caselaw nor Rule for Military Commissions 401 to support prohibiting the Secretary from withdrawing BG (Ret.) Escallier's authority to approve future PTAs by withholding that authority now.

We agree with Intervenor Ali that the Secretary is prohibited "from telling the Convening Authority how to accomplish her judicial functions, including the negotiation of pretrial agreements." Intervenor Ali Br. 20 (citing 10 U.S.C. § 949b(a)(2)).[8] Section 949b(a)(2) provides: "No person may attempt to coerce or, by any unauthorized means, influence . . . (B) the action of any convening, approving, or reviewing authority with respect to their judicial acts . . . ." Paragraph 12-1 of the Regulation for Trial by Military Commission, entitled "Authority to Conclude Agreement" (emphasis omitted), provides additional guidance, as follows:

> Unless such authority is withheld by a superior competent authority, the Convening Authority is authorized to enter into or reject offers to enter into Pretrial Agreements (PTAs) with the accused. The decision to accept or reject a PTA offer submitted by an accused is within the sole discretion of the Convening Authority who referred the case to trial. *See* R.M.C. 705.

The Secretary has vast authority in the Department of Defense, and in military commissions. Logically, this vast authority includes the authority to act as convening authority to approve or disapprove PTAs without taking all of the responsibilities of the convening authority. A review of the First Circuit decision in *United States v. O'Neil*, 11 F.3d 292 (1st Cir. 1993), is helpful in explaining our analysis. That case discussed the principles of "the greater includes the lesser" and "avoiding illogical results" in the interpretation of statutes. The First Circuit stated:

> The principle that the grant of a greater power includes the grant of a lesser power is a bit of common sense that has been recognized in virtually every legal code from time immemorial. It has found modern expression primarily in the realm of constitutional law.
>
> While this principle has nested less frequently in the criminal law context, it is fully applicable in that milieu. . . .
>
> . . . .
>
> . . . It is also an established canon of statutory construction that a legislature's words should never be given a meaning that produces

---

[8] Intervenor Ali's brief cites to 10 U.S.C. § 949(a)(2). We corrected the section number to read § 949b(a)(2).

a stunningly counterintuitive result -- at least if those words, read
without undue straining, will bear another, less jarring meaning.

*Id*. at 296–97 (citations omitted); *see Andrews v. Warden*, 958 F.3d 1072, 1076
(11th Cir. 2020) ("Because *the greater power ordinarily includes the lesser
power*, the President's pardon power includes the authority to commute a
sentence to a lesser punishment." (emphasis added) (citing *Schick v. Reed*,
419 U.S. 256, 265–66 (1974); *Biddle v. Perovich*, 274 U.S. 480, 486–87
(1927))); *O'Connell v. Shalala*, 79 F.3d 170, 177 (1st Cir. 1996) ("[T]he
statutory grant of a greater power typically includes the grant of a lesser power
. . . ."). The United States Court of Appeal for the District of Columbia Circuit
(D.C. Circuit) also has proclaimed that "[t]he greater power includes the lesser."
*Quaker Action Grp. v. Hickel*, 429 F.2d 185, 192 (D.C. Cir. 1970) (per curiam).
The D.C. Circuit, however, has noted that the scope of the "greater-includes-
the-lesser-power argument" is limited when a "statute disallows the agency"
from taking action to eliminate part of the requirements without eliminating all
of them. *See Nat. Res. Def. Council v. EPA*, 777 F.3d 456, 471 (D.C. Cir.
2014). There are no such statutory limitations on the Secretary of Defense's
authority relating to PTAs in the 2009 Military Commissions Act, the Manual
for Military Commissions, or the Regulation for Trial by Military Commission.

Essentially, the Secretary has the power to withhold the authority of
BG (Ret.) Escallier to dispose of charges in respondents' case under Rule for
Military Commissions 401(a), and Regulation for Trial by Military Commission,
paragraph 12-1. Accordingly, he has the lesser authority to withhold BG (Ret.)
Escallier's power to approve PTAs in respondents' case, which is used in the
process of disposing of charges. When BG (Ret.) Escallier signed the PTAs, she
had authority to do so. Once those PTAs were signed, withdrawal could only
occur if there was authority within the pretrial agreement itself, or there was
statutory or rule authority to do so. Brigadier General (Ret.) Escallier's
authority to withdraw from the PTAs in this case, however, is unavailable in any
event because respondents began performance under these PTAs.[9]

The authority that the Secretary of Defense exercised in this case is
located in Rule for Military Commissions 705(a), which authorized him to
prescribe limitations on convening authorities to enter into PTAs. *See United
States v. Allen*, 31 M.J. 572, 594 (N-M.C.M.R. 1990) (en banc) (stating Rule for
Courts-Martial 705(a) "authorized the Secretary of the Navy to prescribe
limitations on convening authorities to enter into pretrial agreements and that is
exactly the authority that the Secretary exercised via § 0129c, JAGMAN," which
"specifically prohibits a convening authority from entering into a pretrial

---

[9] Brigadier General (Retired) Escallier retains authority to take any necessary actions on the
existing PTAs in the case at bar. *See, e.g.*, *United States v. Hunter*, 65 M.J. 399, 400
(C.A.A.F. 2008) (involving whether convening authority had authority to withdraw from
sentence limitation in PTA); *United States v. Williams*, 60 M.J. 360, 363 (C.A.A.F. 2004)
(involving whether trial counsel had authority to withdraw from PTA due to untimely
restitution).

agreement in a national security case without first obtaining the approval of the Secretary of the Navy"); Sec'y of Navy Instr. 5800.7D, Manual of the Judge Advocate General (JAGMAN) § 0137c (Mar. 15, 2004) [hereinafter JAGMAN Instr.] (Pet'r's Suppl. App. 32) ("No official of the [Department of the Navy] is authorized to enter into a pretrial agreement in any national security case . . . without first obtaining permission to do so from the Secretary of the Navy."); JAGMAN Instr. 5800.7E at § 0137c (June 20, 2007) (Pet'r's Suppl. App. 35) (same); *see also United States v. Kroetz*, No. ACM 40301, 2023 CCA LEXIS 450, at *11–12 (A.F. Ct. Crim. App. Oct. 27, 2023) (noting applicability of an Air Force instruction prohibiting "plea agreements involving an exact term of *confinement*," but noting absence of prohibition limiting agreements "to a particular punitive discharge"), *petition for rev. denied*, 84 M.J. 417 (C.A.A.F. Apr. 25, 2024); *United States v. Saulter*, 23 M.J. 626, 627 (A.F.C.M.R. 1986) (stating differences in "service-level restrictions" on PTAs may result in different outcomes among the services).

Statutory and regulatory authorities permit the Secretary to appoint himself as convening authority in full in respondents' case and to remove a subordinate convening authority in full. 10 U.S.C. § 948h. The Secretary of Defense also has authority to prescribe pretrial, trial, and post-trial procedures for military commission cases. 10 U.S.C. § 949a(a); *Al-Bahlul IV*, 967 F.3d at 872 (citing § 949a(a)); 10 U.S.C. § 948h. More specifically, the Secretary may prescribe limitations on the content of PTAs. R.M.C. 705(a); R.C.M. 705(a) (same). That secretarial authority is evident in another military commission rule, which provides: "A superior competent authority may withhold the authority of a subordinate to dispose of charges in individual cases, types of cases, or generally." R.M.C. 401(a); R.C.M. 401(a) (same); *see Blaylock*, 15 M.J. at 194 (stating a superior convening authority "may intervene to cause the withdrawal and rereferral of charges which in his view should be tried by a different kind of court-martial").

These broad authorities—including the specific authorities supporting the Secretary's appointment of convening authorities and withdrawal and re-referral of charges to a higher-level court (so long as those charges are not for improper reasons)—encompass the authority to withhold BG (Ret.) Escallier's authority to enter into PTAs with respondents. *See* RTMC, ¶ 12-1. Accordingly, we find a lack of evidence that the Secretary of Defense attempted to coerce or improperly influence BG (Ret.) Escallier with issuance of his August 2024 memorandum.

**B. Vacation of respondents' existing pretrial agreements (PTAs)**

The military judge determined the Secretary's withdrawal from the three PTAs was void because respondents had begun performance under the PTAs before that withdrawal. Pet'r's App. 411–13, 421–25. He concluded that performance of the PTAs began when respondents: (i) signed stipulations of

fact; (ii) negotiated and agreed to their respective LHMs; (iii) did not cross-examine "witness[es] for pretrial motions while the Prosecution and Defense Counsel for Mr. Ali questioned those same witnesses"; and (iv) did not file motions. *Id.* at 421–23.

The military judge based his decision primarily on Rule for Military Commissions 705(d)(4)(B) and he concluded that *United States v. Dean*, 67 M.J. 224, 227–28 (C.A.A.F. 2009), was "controlling." *Id.* at 424 n.120; *see id.* at 411–13, 422–24. Our court is not bound by *Dean*'s ruling regarding when an accused begins performance of a PTA because decisions of the United States Court of Appeals for the Armed Forces are not binding on our court. *See* 10 U.S.C. § 948b(c) ("The judicial construction and application of chapter 47 of this title, while instructive, is therefore not of its own force binding on military commissions established under this chapter."). Similarly, appellate court decisions discussing the Rules for Courts-Martial that are worded the same as Rules for Military Commissions are instructive but not binding on our court. *See generally United States v. Finch*, 79 M.J. 389, 395 (C.A.A.F. 2020) (finding interpretation of a word in federal appellate courts to be instructive when language of military rule "is identical to the corresponding federal rule").

In *Dean*, the following series of events occurred: "Contemporaneous with the Offer to Plead Guilty, Dean submitted a stipulation of fact to the convening authority which had been executed by Dean, his defense counsel and the trial counsel. The convening authority accepted and signed the Offer to Plead Guilty on [the same date]." 67 M.J. at 226. On the eve of Dean's trial, the trial counsel sought to amend the stipulation of fact to add additional misconduct, the defense counsel objected, and the convening authority withdrew the PTA. *Id.* The military judge permitted the withdrawal of the PTA, and after a contested trial, Dean received, and the convening authority approved, a sentence exceeding the limit in the PTA. *Id.*

The *Dean* Court cited Rule for Courts-Martial 705(d)(4)(B), and stated:

> In this case, Dean either performed or began to perform several of the promises listed in the agreement before the convening authority announced his withdrawal . . . : Dean elected trial by military judge alone . . . ; he entered into a stipulation of fact with trial counsel as to the circumstances of the offense . . . ; and . . . he filed an amended witness list which complied with two separate promises he made regarding the production of witnesses. The convening authority's right to withdraw "any time before the accused begins performance of promises contained in the agreement" therefore terminated before he announced his withdrawal from the agreement.

*Id.* at 228. Dean's election of forum and entering into a stipulation of fact with trial counsel both occurred before the convening authority signed the PTA; the amended witness list was filed after the convening authority approved the PTA. *Id.* at 226, 228.

In the case at bar, the military judge said, "Just as in *Dean*, where entering into a confessional stipulation of fact and electing a military judge alone forum was sufficient to qualify as beginning performance, here all three co-Accused have begun performance simply by entering into a Stipulation of Fact as was required by each of the three PTAs." Pet'r's App. 423.

Setting the stage for our continuing analysis, we discuss Rule for Military Commissions 705(d)(4), concerning withdrawal from a PTA, which states:

*Withdrawal.*

(A) *By accused.* The accused may withdraw from a pretrial agreement at any time; however, the accused may withdraw a plea of guilty or a confessional stipulation entered pursuant to a pretrial agreement only as provided in R.M.C. 910(h) or 811(d), respectively.

(B) *By convening authority.* The convening authority may withdraw from a pretrial agreement at any time *before the accused begins performance of promises contained in the agreement*, upon the failure by the accused to fulfill any material promise or condition in the agreement, when inquiry by the military judge discloses a disagreement as to a material term in the agreement, or if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

(Third emphasis added.) This provision is repeated in paragraph 12-3(a) of the Regulation for Trial by Military Commission. Until 2018, Rule for Military Commissions 705(d)(4)(B) and Rule for Courts-Martial 705(d)(4)(B) were the same.

On August 1, 2024, the day before the Secretary withdrew the PTAs in respondents' case, an FBI special agent testified on a pretrial motion. Pet'r's App. 906, 923, 926. Petitioner objected to respondents' "participat[ion] in any of the contested litigation based on the [PTAs]," reminding the respondents of their obligation under the PTAs. *Id.* at 917–18. Accordingly, respondents' counsel did not ask any questions of the witness. *Id.* at 404, 917–19. Respondents clearly began performance of a promise contained in the PTA—not to make or participate in motions—and Rule for Military Commissions 705(d)(4)(B) precluded the convening authority's withdrawal unless one of the

circumstances in Rule 705(d)(4)(B) applied.  *See infra* Part III.A.  None of those circumstances apply at this point in the litigation.

## III. Application of *Cheney* tests

Petitioner's writ of mandamus and prohibition must meet all three of the *Cheney* tests, 542 U.S. at 380–81, otherwise we cannot grant relief. Extraordinary relief is available to enforce a PTA; yet, the right to relief must be "clear and indisputable."  *See In re United States*, 32 F.4th 584, 597–98 (6th Cir. 2022) (concluding that government's writ of mandamus seeking to require reconsideration of improperly rejected plea agreement provided a "clear and indisputable right to mandamus").

### A. Right to issuance of the writ must be clear and indisputable

Our analysis on the right to issuance of the writ involves two matters, (i) the military judge's vacatur of the Secretary's memorandum withdrawing from respondents' PTAs, and (ii) the military judge's order vacating the Secretary's memorandum pertaining to future PTAs.  Petitioner has not established a clear and indisputable right regarding the first matter but has established a clear and indisputable right regarding the second matter.

Respondents began to perform a promise contained in their PTAs when they refrained from cross-examining an FBI special agent on August 1, 2024. Therefore, neither BG (Ret.) Escallier nor the Secretary could withdraw from the PTAs unless one of the other conditions in Rule for Military Commissions 705(d)(4)(B) applies; however, there is no evidence that any of those circumstances currently apply.  Petitioner has not clearly established their right to a writ reversing the military judge's decision to vacate the Secretary's memorandum withdrawing the PTAs.  The issue of the Secretary's withdrawal of the existing PTAs is resolved against petitioner.

We note, the authority of the convening authority to withdraw from a PTA is different under the Manual for Military Commissions than under the Manual for Courts-Martial.  Under the Manual for Courts-Martial, the performance in this case would not have foreclosed the convening authority's withdrawal from the PTAs.  In the 2018 amendment of Rule for Courts-Martial 705(e)(4)(B)(i),[10]

---

[10] Rule for Courts-Martial 705(e)(4)(B) (2024) now states:

      (B) *By convening authority or special trial counsel.* The convening authority or special trial counsel, as applicable, may withdraw from a plea agreement at any time:

            (i) *before substantial performance by the accused of promises contained in the agreement;*

the President authorized the convening authority's withdrawal from a plea agreement "(i) before *substantial performance* by the accused of promises contained in the agreement."  (Emphasis added.)

"Pursuant to 10 U.S.C. § 949a, the Manual for Military Commissions is adapted from the Manual for Courts-Martial."  MMC, Foreword.  Consistency between Rule for Military Commissions 705(d)(4)(B) in the Manual for Military Commissions and Rule for Courts-Martial 705(e)(4)(B)(i) in the Manual for Courts-Martial should be maintained.  *See generally In re Al-Nashiri* (*Al-Nashiri I*), 791 F.3d 71, 86 (D.C. Cir. 2015) (recommending change to appointment process of CMCR judges to avoid constitutional issues).

We agree with the military judge that the Military Commissions Act and the Manual for Military Commissions do not use the plural of the word convening authority, and practical and legal difficulties with overlapping responsibilities are possible with two convening authorities on the same case.  Pet'r's App. 418 & n.100.  The Secretary nonetheless clearly has the authority to withdraw or withhold BG (Ret.) Escallier's authority in respondents' case to enter into future PTAs and reserve for himself such authority without requiring the Secretary to withdraw all convening authority responsibilities from BG (Ret.) Escallier.  *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 762 (D.C. Cir. 2014).

Here we find a clear abuse of discretion to the extent the military judge's order vacated the Secretary's memorandum pertaining to future PTAs.  Thus, the first *Cheney* test is met with regard to potential future PTAs.  Petitioner has satisfied the conditions in the first test.  We next consider the second *Cheney* test.

## B. No other adequate means to attain the relief desired

In *Al-Nashiri I*, 791 F.3d 75, Al-Nashiri "alleged that military judges are assigned to the CMCR in violation of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2."  The Court denied a writ of mandamus and prohibition seeking to

---

(ii) upon the failure by the accused to fulfill any material promise or condition in the agreement;

(iii) when inquiry by the military judge discloses a disagreement as to a material term in the agreement; or

(iv) if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

(Second emphasis added.)  The "substantial performance" standard was added to Rule 705 in the Manual for Courts-Martial by Executive Order 13825, 83 Fed. Reg. 9889, 9967 (Mar. 8, 2018), effective January 1, 2019.  Rule for Military Commissions 705(d)(4)(B), however, has not been amended.

recuse the military judges because the issue could be resolved on direct appeal, and it would constitute an advisory opinion to grant the writ of mandamus and prohibition. *Id.* at 80–81. In respondents' case, even though we find the military judge committed error when he vacated the Secretary's decision to withdraw BG (Ret.) Escallier's authority to enter into future PTAs and reserved such authority to himself, Pet'r's App. 405, this finding does not support the issuance of a writ of mandamus because the error "could be corrected on appeal without irreparable harm." *See Nat'l Ass'n of Criminal Def. Lawyers, Inc. v. DOJ*, 182 F.3d 981, 987 (D.C. Cir. 1999).

Petitioner essentially urges us to act in an advisory capacity, as the Secretary has not entered into any PTAs in this case. "Even if we were willing, we are unable to use advisory mandamus here because it would circumvent the no-other-adequate-means requirement." *Al-Nashiri I*, 791 F.3d at 80.

## IV. Conclusion

Having found that petitioner failed to meet at least one of the first two *Cheney* tests—because petitioner has "other adequate means to obtain desired relief"—it is unnecessary to address the third test concerning appropriateness of the writ under the circumstances. *Id.* at 80–82 (dismissing writ of mandamus and prohibition without addressing third *Cheney* test).

Accordingly, it is hereby

**ORDERED** that petitioner's motions to admit appendix and supplemental appendix are **GRANTED**. It is

**FURTHER ORDERED** that respondents Mohammad and Hawsawi's appendix is **ADMITTED**.[11] It is

**FURTHER ORDERED** that respondent Bin 'Attash's motion to admit appendix is **GRANTED**. It is

**FURTHER ORDERED** that petitioner's motions for leave to file an outsized brief and reply brief are **GRANTED**. It is

**FURTHER ORDERED** that respondent Bin 'Attash's motion to file an outsized brief is **GRANTED.** It is

**FURTHER ORDERED** that the motion for leave to file an *amicus curiae* brief in support of respondents is **GRANTED**. It is

---

[11] Respondents failed to move for admission of their appendix.

**FURTHER ORDERED** that respondents Bin 'Attash and Hawsawi's motion for leave to file out of time an opposition to Ali's motion to intervene is **GRANTED.**  It is

**FURTHER ORDERED** that intervenor Ali's motion to dismiss is **DENIED** and motion to intervene is **GRANTED**.  It is

**FURTHER ORDERED** that petitioner's writ of mandamus and prohibition is **DENIED**.

FOR THE COURT:

Mark Harvey
Clerk of Court, U.S. Court of Military
Commission Review

Exhibit C

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**KHALID SHAIKH MOHAMMAD,<br>WALID MUHAMMAD SALIH<br>MUBARAK BIN 'ATTASH,<br>ALI ABDUL AZIZ ALI,<br>MUSTAFA AHMED ADAM<br>AL HAWSAWI** | **AE 955T / AE 956S / AE 957Q**<br><br>**RULING**<br><br>Government Motion<br>To Continue the Hearing for<br>the Entry of Pleas<br><br>**3 January 2025** |

1. **Procedural History**.

    a. On 2 January 2025, the Prosecution filed AE 955Q (GOV) / AE 956Q (GOV) / AE 957P (GOV) [1] requesting the Commission continue the hearing for the entry of pleas of Mr. Mohammad, Mr. bin 'Attash, and Mr. Hawsawi from 6 January 2025 [2] until 27 January 2025 in order to "provide the Government the opportunity to determine whether to pursue relief in the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") and to submit appropriate filings, should the Government decide to pursue such relief." In its Certificate of Conference, the Prosecution indicated that Messrs. Mohammad, bin 'Attash, and Hawsawi opposed the Prosecution's requested delay. [3]

---

[1] AE 955Q (GOV) / AE 956Q (GOV) / AE 957P (GOV), Government Motion to Continue the Hearing for the Entry of Pleas, filed 2 January 2025.

[2] The Commission notes that 6 January 2025 was never designated as the specific date upon which the Commission would conduct the hearing for the entry of pleas for any of the Accused. Rather, 6 January 2025 was designated as the beginning of the week the Commission intended to set aside for matters pertaining to the providence inquiry of Mr. Mohammad with the following week potentially being used to conduct the providence inquiries of Messrs. bin 'Attash, and Hawsawi. *See* 970A, Docket Order, 6 – 31 January 2025 Hearing Session, dated 13 December 2025.

[3] *Id.* at 10-11.

b. On 2 January 2025, Messrs. bin Mr. bin 'Attash and Mohammad filed

AE 955S (KSM WBA) / AE 956R (KSM WBA)[4] in opposition to the Prosecution's request for

delay.

2. **Facts**. The Commission adopts the Facts from the Government's Motion[5] and those facts from

the Defense Reply in paragraphs 4a-4f.[6]

3. **Discussion**.

a. Having considered the Prosecution's request for a continuance, and applying the

authority and standards set forth in 10 U.S.C. § 949e and R.M.C. 707(b)(4)(E)(i), and the factors

set forth for consideration of requests for continuance in *United States v. Miller*, 47 M.J. 352

(C.A.A.F. 1997) as a framework, this Commission finds that the Prosecution has not met its

burden of providing reasonable cause for requesting a continuance for the period it has

requested.

b. The Prosecution has been aware of the scheduled date for this hearing since

12 November 2024.[7] Although the Government's first action was to file a Petition for Writ of

Mandamus and Prohibition with the United States Court of Military Commission Review

(C.M.C.R), the Prosecution was not precluded from concurrently planning a litigation strategy

---

[4] AE 955S (KSM WBA) / AE 956R (KSM WBA), Mr. bin 'Atash and Mr. Mohammad's Opposition to AE 955Q
(GOV) / AE 956Q (GOV) Government Motion to Continue the Hearing for the Entry of Pleas, filed 2 January 2025.
[5] *See* AE 955Q (GOV) / AE 956Q (GOV) / AE 957P (GOV) at para 5, pp. 2-5; and
[6] *See* AE 955S (KSM WBA) / AE 956R (KSM WBA). The Defense argument regarding the Prosecution's Motion
failing to address its burden in obtaining a stay, or the standard an appellate court would apply to such requested
relief, is not matters before the Commission. Although the Defense correctly highlights that such standard is quite
high, the issue before this Commission is a request for continuance to potentially pursue a stay – not the stay itself.
For that reason, given the Defense argument in para. 4.g. of its reply regarding the standard applicable to a requested
stay, the Commission does not adopt that asserted fact.
[7] *See* AE 953 (Amend), Amended Scheduling Order, Calendar Year 2025, dated 12 November 2024.

2

and drafting the shell of potential briefs to be filed with the D.C. Circuit based on a reasonable possibility the C.M.C.R. would deny its Petition.

c. The Prosecution's stated justification for the requested continuance, however, implies that it did not engage in such concurrent planning or drafting. Accordingly, contrary to its arguments, the Prosecution has not established the *Miller* factors of requested length of continuance, reasonable diligence of the moving party, or good faith of the moving party weigh in its favor.

d. The Prosecution's argument that it may be prejudiced by a more complicated voir dire process if the Accused enter a plea of guilty and the D.C. Circuit later overturns the Commission ruling on the validity of the plea agreements is not without some merit. However, the Commission finds that given the obvious anticipated complexities of voir dire and impaneling of members for a contested capital case involving the significant, public, and notorious offenses, the additional possible issue that the Accused may once have entered a plea of guilty to the charged offenses does not add significantly to the burden already facing the Prosecution in empaneling members. Therefore, any such potential prejudice to the Prosecution does not constitute reasonable cause to justify the requested extension.

e. The remaining *Miller* factors do not weigh significantly in favor of either Party and, therefore, do not significantly factor in the Commission's ruling.

f. The Prosecution's presentation falls short of the burden necessary to justify a continuance. However, the Commission finds it appropriate to refrain from scheduling any of the

3

hearings for the entry of pleas for the Accused until after Thursday, 9 January 2025 in order to account for the following additional factors:

(1) A snowstorm that has been forecast for the National Capital Region for Monday, 6 January 2025 that could adversely impact the availability of the Remote Hearing Room (RHR);

(2) The Commission's desire to discuss, preliminary matters related to the hearings for the entry of pleas with Counsel for Mr. Mohammad and the Prosecution, to include a review of the trial guide and responses to some remaining questions the Commission has related to Mr. Mohammad's pretrial agreement; and

(3) The recently announced closure of all executive departments and agencies of the Federal Government on Thursday, 9 January 2025 as a mark of respect for James Earl Carter, Jr., the thirty-ninth President of the United States.[8]

g. The delay occasioned by the factors in paragraph 3.f. above should provide the Prosecution with a reasonable amount of time to determine whether to pursue appellate relief and to submit appropriate filings, should the Prosecution decide to pursue such relief.

3. **Ruling**.

a. The Prosecution motion is **DENIED**.[9]

b. The Commission, however, **will not begin** the hearing session to call on Mr. Mohammad to enter pleas **prior to 0900, Friday, 10 January 2025**.

---

[8] Executive Order Providing for the Closing of Executive Departments and Agencies of the Federal Government on January 9, 2025, dated December 30, 2024.
[9] Although the Commission normally permits a movant to file a reply brief, due to the short period of time between the filing of the Prosecution's motion and the scheduled departure of the Commission participants for Naval Station Guantanamo Bay, Cuba, the Commission has decided rule on this motion without the benefit of receiving a reply brief.

c. The Commission also **will not begin** a hearing session to call upon Mr. bin 'Attash or Mr. Hawsawi to enter pleas **prior to 0900, Wednesday, 15 January 2025**.

d. The Commission may continue to address preliminary matters pertaining to the entry of pleas by Messrs. Mohammad, bin 'Attash, and Hawsawi and issue appropriate Trial Conduct Orders prior to 10 January 2025.

So **ORDERED** this 3rd day of January, 2025.


*//s//*
MATTHEW N. MCCALL, Colonel, USAF
Military Judge
Military Commissions Trial Judiciary

5

**Material Under Seal Deleted**

Exhibit D

**Material Under Seal Deleted**

Exhibit E

**Material Under Seal Deleted**

Exhibit F