**PUBLIC COPY - SEALED MATERIAL DELETED**

[ORAL ARGUMENT NOT SCHEDULED]
No. 25-____

_____

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

In re UNITED STATES, Petitioner

_____

ON PETITION FOR A WRIT OF MANDAMUS AND PROHIBITION

_____

PETITIONER'S EMERGENCY MOTION FOR A STAY
PENDING A RULING ON THE PETITION FOR A WRIT OF MANDAMUS
AND PROHIBITION AND FOR AN ADMINISTRATIVE STAY PENDING
DISPOSITION OF THE STAY MOTION

MATTHEW G. OLSEN
Assistant Attorney General
  for National Security

BRIAN H. FLETCHER
Principal Deputy Solicitor General
U.S. Department of Justice
Washington, D.C.  20530

# Table of Contents

Page

Table of Authorities ................................................................. ii

Introduction ........................................................................... 1

Statement ............................................................................... 2

Argument ................................................................................ 8

    I.     The Government Has a Likelihood of Success on the Merits ................... 8

          A. The Government Lacks an Adequate Alternative Means for Relief ..... 9

          B.  The Government Has a Clear and Indisputable Right to Relief ......... 10

          C. Issuance of the Writ Is Appropriate Under the Circumstances .......... 20

    II.    The Balance of Harms and the Public Interest Strongly Favor a Stay ..... 21

Conclusion ............................................................................ 23

Certificate of Compliance ...................................................... 24

Certificate of Service ............................................................ 25

Material Under Seal Deleted

## Table of Authorities

**Cases**                                                                                      **Page**

*Al-Bahlul v. United States,* 967 F.3d 858 (D.C. Cir. 2020)......................................13

*In re Al-Nashiri,* 791 F.3d 71 (D.C. Cir. 2015) ...............................................8

*Cheney v. United States Dist. Ct.,* 542 U.S. 367 (2004) ...........................................8

*Choate v. TRW, Inc.*, 14 F.3d 74 (D.C. Cir. 1994) ...............................................16

*Nken v. Holder*, 556 U.S. 418 (2009)...............................................................8

*United States v. Dean,* 67 M.J. 224 (C.A.A.F. 2009)................................................17

*United States v. Fokker Services B.V.*, 818 F.3d 733 (D.C. Cir. 2016) ......8, 9, 10, 20

*United States v. Patterson,* 381 F.3d 859 (9th Cir. 2004) ........................................21

*United States v. Sundel*, 985 F.3d 1029 (D.C. Cir. 2021)..........................................9

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)....................................20

**Statutes**

10 U.S.C. § 113 ...............................................................................................12

The Military Commissions Act of 2009 (MCA)
   10 U.S.C. § 948a..............................................................................3, 11

   10 U.S.C. § 948h............................................................1, 3, 11, 12, 13

   ██████████████ ...............................................................................5

   10 U.S.C. § 948j(a) ........................................................................12

10 U.S.C. § 949a(a) ...............................................................12, 13

10 U.S.C. § 949h(a) ....................................................................21

10 U.S.C. § 950d(a) ......................................................................9

10 U.S.C. § 950f .........................................................................10

10 U.S.C. § 950g..........................................................................9, 10

28 U.S.C. § 1651(a) .......................................................................8

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014)....................................................16

Regulation for Trial by Military Commission (R.T.M.C.) ¶ 1-3(a)...................12, 13

Rule for Military Commissions (R.M.C.)
    R.M.C. 103(a)(10) ................................................................1, 6, 11

    R.M.C. 601(f) ........................................................................13

    R.M.C. 705(d)(4)(B)..........................................................1, 6, 10, 14, 16, 19

U.S. Dep't of Justice, Office of the Inspector General, *Federal Bureau of Investigation Casework and Human Resource Allocation*, Report No. 03-37, ch. 7, Ex. 7-1 (Sept. 2003) ......................................................................3

INTRODUCTION

Respondents are charged with perpetrating the most egregious criminal act on American soil in modern history—the 9/11 terrorist attacks.  The military commission judge intends to enforce pretrial plea agreements that will deprive the government and the American people of a public trial as to the respondents' guilt and the possibility of capital punishment, despite the fact that the Secretary of Defense has lawfully withdrawn those agreements.  The harm to the government and the public will be irreparable once the judge accepts the pleas, which he is scheduled to do in hearings beginning on January 10, 2025.

The Military Commissions Act of 2009 (MCA) designates the Secretary of Defense as the convening authority for military commissions and empowers him to appoint subordinate convening authorities.  10 U.S.C. § 948h; *see also* Rule for Military Commissions (R.M.C.) 103(a)(10).[1]  A convening authority "may withdraw from a pretrial agreement at any time before the accused begins performance."  R.M.C. 705(d)(4)(B).  Acting as the superior convening authority, the Secretary withdrew from the pretrial agreements at issue only two days after they were signed by a subordinate convening authority.  The respondents took no

---

[1] The Rules for Military Commissions are available at https://www.mc.mil/Portals/0/pdfs/Manual%20for%20Military%20Commissions%202019%20Edition.pdf.

relevant action to perform the agreements during that two-day period. The military commission judge's ruling is clearly and indisputably erroneous.

The government is likely to prevail on the merits of its petition for a writ of mandamus and prohibition, but it will be a pyrrhic victory unless this Court first issues a stay of the military commission's proceedings, at least as they relate to enforcing the withdrawn pretrial agreements and accepting the respondents' pleas, until this Court can decide the merits of the government's petition. The government therefore respectfully moves for such a stay pending the Court's consideration of the government's petition for a writ of mandamus and prohibition and respectfully requests that the Court issue an administrative stay pending its resolution of the government's stay motion.

## STATEMENT

The respondents are Khalid Shaikh Mohammad, the alleged mastermind of the September 11, 2001 terrorist attacks that killed thousands of people and injured hundreds more, and two of his three co-defendants, Walid Bin 'Attash and Mustafa al Hawsawi. The allegations against the respondents set forth their extensive roles as the counselors, commanders, and conspirators in the murder of 2,976 people, the injury of numerous civilians and military personnel, and the destruction of property worth tens of billions of dollars. The September 11, 2001 attacks constituted the

2

deadliest attack on American soil since the Japanese attack on Pearl Harbor.  The attacks led directly to the largest criminal investigation in American history, *see* U.S. Dep't of Justice, Office of the Inspector General, *Federal Bureau of Investigation Casework and Human Resource Allocation*, Report No. 03-37, ch. 7, Ex. 7-1 (Sept. 2003) (https://oig.justice.gov/ reports/FBI/a0337/chap7.htm), and to military and law enforcement operations on a global scale.

The respondents are each charged under the Military Commissions Act of 2009, 10 U.S.C. § 948a *et seq.*, with seven law-of-war crimes:  (I) conspiracy; (II) attacking civilians; (III) attacking civilian objects; (IV) murder in violation of the law of war; (V) destruction of property in violation of the law of war; (VI) hijacking or hazarding a vessel or aircraft; and (VII) terrorism.  Five of these charges carry the potential for capital punishment.

Unlike civilian courts, military trial courts are not standing bodies.  Instead, a court-martial or military commission is convened to try a particular case. Pursuant to the Military Commissions Act, a military commission "may be convened by the Secretary of Defense or by any officer or official of the United States designated by the Secretary for that purpose."  10 U.S.C. § 948h.  The military commission in this case was convened in 2012 at the direction of Retired Vice Admiral Bruce MacDonald, who had been appointed as the Convening

3

**Material Under Seal Deleted**

Authority for Military Commissions by Secretary of Defense Gates.  Ruling on

Defense Motions to Schedule Entry of Pleas 4 (Mil. Comm'n Nov. 6, 2024) (MC

Ruling) (attached as Exhibit A to the Petition for Mandamus and Prohibition).

Between 2012 and 2023, several different individuals served as Convening

Authority.  *See id.*

On August 21, 2023, Secretary of Defense Austin designated retired

Brigadier General Susan Escallier as Convening Authority.  *Id.*  Exercising her

authority, Convening Authority Escallier authorized the Chief Prosecutor for

Military Commissions, Rear Admiral Aaron Rugh, to negotiate with the

respondents in an effort to agree on proposed pretrial agreements.  *See id.* at 6.

On July 29, 2024, Mohammad and Bin 'Attash signed Offers for Pretrial

Agreements, *see id.*, in which they offered, *inter alia*, to plead guilty to all seven

charges against them, as well as an eighth charge—intentionally causing serious

bodily injury, in exchange for, *inter alia*, the removal of the possibility of death

sentences.  Under the agreements, ██████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

**Material Under Seal Deleted**

████████████████████████████████████████ On July 30,

2024, Hawsawi signed a similar Offer for Pretrial Agreement. █████████

████████████████████████████████████████████

████████████████████ *See* MC Ruling 6-7.

On July 31, 2024, Convening Authority Escallier signed all three offers.

*See id.* at 7.  Two days later, on August 2, 2024, Secretary Austin issued a

memorandum to Convening Authority Escallier stating:

> I have determined that, in light of the significance of the decision to
> enter into pre-trial agreements with the accused in the above-
> referenced case, responsibility for such a decision should rest with
> me as the superior convening authority under the Military
> Commissions Act of 2009.  Effective immediately, I hereby
> withdraw your authority in the above-referenced case to enter into a
> pre-trial agreement and reserve such authority to myself.
>
> Effective immediately, in the exercise of my authority, I hereby
> withdraw from the three pre-trial agreements that you signed on
> July 31, 2024 in the above-referenced case.

*Id.* at 9.

The respondents argued that the Secretary's decision was invalid and filed

motions asking the military commission to schedule dates for them to enter pleas

in accordance with the pretrial agreements.  *See id.* at 2.

The Rules for Military Commissions (R.M.C.) provide that the "convening

authority may withdraw from a pretrial agreement at any time before the accused

begins performance of promises contained in the agreement" and define the term "convening authority" to mean "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense for that purpose." R.M.C. 103(a)(10); R.M.C. 705(d)(4)(B).  Nevertheless, the military commission judge found the withdrawal to be unlawful because, in the commission's view, Convening Authority Escallier was the only convening authority, MC Ruling 23, and because the commission believed the respondents had begun performing promises in the agreements, *id.* at 26-27.

The government sought a writ of mandamus and prohibition in the United States Court of Military Commission Review (USCMCR), which declined to issue the writ.  Opinion, *In re Mohammad*, No. 24-001 (U.S.C.M.C.R. Dec. 30, 2024) (USCMCR Decision) (attached as Exhibit B to the Petition for Mandamus and Prohibition).  Although the USCMCR ultimately denied relief, it agreed with much of the government's position.  In particular, the court held that the Secretary clearly and indisputably had authority, as the superior officer, to reserve for himself authorities related to pretrial agreements while retaining Convening Authority Escallier as convening authority for other purposes.  *See id.* at 18 (finding that the government "has established a clear and indisputable right regarding [that] matter").  The USCMCR explained that the "Secretary has vast

6

authority in the Department of Defense, and in military commissions." *Id.* at 13. The USCMCR concluded that, "[l]ogically, this vast authority includes the authority to act as convening authority to approve or disapprove [pretrial agreements] without taking all of the responsibilities of the convening authority." *Id.*

The USCMCR nevertheless declined to issue a writ of mandamus concerning respondents' pretrial agreements on the sole ground that the respondents had begun performing a promise contained in their pretrial agreements. *Id.* at 17.

The government sought a continuance of the plea hearings until January 27, 2025, but the military commission judge denied the motion and set the hearings to begin on Friday, January 10, 2025, at 9:00 AM. *See* Ruling on Government Motion to Continue the Hearing for the Entry of Pleas (Mil. Comm'n Jan. 3, 2025) (attached as Exhibit C to the Petition for Mandamus and Prohibition).

<u>ARGUMENT</u>

This Court will grant a motion for a stay where the moving party shows: (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury if the stay is denied; (3) that issuance of the stay will not cause substantial harm to other parties; and (4) that the public interest will be served by issuance of the stay.

7

*See Nken v. Holder*, 556 U.S. 418, 434 (2009).  The first two factors are the "most critical."  *Id.*

Here, all four factors favor a stay.

## I.    The Government Has a Likelihood of Success on the Merits

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the power to issue a writ of mandamus to a military commission in order to preserve this Court's appellate jurisdiction over convictions from military commissions.  *In re Al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015).  This Court will issue a writ of mandamus where the three *Cheney* factors are satisfied: (i) the petitioner has no other adequate means to attain the relief it desires; (ii) the petitioner has a clear and indisputable right to relief; and (iii) the Court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances.  *United States v. Fokker Services B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (citing *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380 (2004)).  Each of these conditions is satisfied here.  The writ is "reserved for really extraordinary cases," *id.* (internal quotation marks omitted), and this case—where a military judge has misinterpreted unambiguous contract terms and thus prevented the Secretary of Defense from exercising his clear authority to make a crucial decision regarding the prosecution of the alleged plotters of the 9/11 attacks—clearly qualifies.

8

## A. The Government Lacks an Adequate Alternative Means for Relief

There is no alternative means for relief because the military commission's ruling invalidating the Secretary's August 2, 2024, action is not subject to either interlocutory or final-judgment appeal.  *See Fokker Servs.*, 818 F.3d at 747 (holding that the first *Cheney* factor is satisfied where "interlocutory appeal is unavailable, and appeal after final judgment would be an inadequate form of relief").

This Court's appellate jurisdiction to review decisions from military commissions is defined by the Military Commissions Act.  *See United States v. Sundel*, 985 F.3d 1029, 1031-32 (D.C. Cir. 2021).  Under that statute, the government has only limited authority, which does not apply here, to take an interlocutory appeal to the USCMCR, *see* 10 U.S.C. § 950d(a), and no authority to bring interlocutory appeals in this Court, *see id.*; 10 U.S.C. § 950g.

Nor could the government take an appeal at the end of the case.  Review of a final judgment from the military commission by the USCMCR is limited to "any matter properly raised by the *accused*."  10 U.S.C. § 950f (emphasis added).  And this Court can review a final judgment only where there is a "final decision" from the USCMCR or where the accused waives review by the USCMCR.  10 U.S.C. § 950g(c).  Thus, the government cannot appeal a final judgment of the military

9

commission to the USCMCR, and it cannot appeal to this Court unless a defendant has either appealed to the USCMCR or waived such review.  There is thus no other avenue for this Court's review of the ruling at issue.

### B.  The Government Has a Clear and Indisputable Right to Relief

The government has a clear and indisputable right to relief.  *See Fokker Servs.*, 818 F.3d at 749.  Establishing this *Cheney* factor has, of course, "never required the existence of a prior opinion addressing the precise factual circumstances or statutory provision at issue in order to find clear error justifying mandamus relief."  *Id.* at 749-50.  But here it is undisputed that the Rules provide that the "convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement."  R.M.C. 705(d)(4)(B).  Thus, the only relevant questions are:  (1) Does the term "convening authority" under the Rule include the Secretary?; and (2) Did the respondents begin performance of the promises in the agreements before the Secretary withdrew from them on August 2, 2024?  As the USCMCR correctly recognized, the answer to the first question is a clear "yes."  And the answer to the second question is a clear "no."

1.  The question whether the term "convening authority" in the Rules for Military Commissions includes the Secretary is straightforward because the Rules

10

define the term.   Under the Rules, "convening authority" means "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense for that purpose."  R.M.C. 103(a)(10).  Thus, the term "convening authority" clearly encompasses the Secretary, who is, as he said in his August 2 memorandum, the "superior convening authority."  MC Ruling 9.

The USCMCR recognized that straightforward conclusion.  *See* USCMCR Decision 7-10.  The Military Commissions Act itself does not contain a specific definition of the term "convening authority," *see* 10 U.S.C. § 948a (setting out the defined terms in the statute), but instead simply uses the term to refer to an official with the "authority" to "conven[e]" military commissions—an authority that the statute expressly grants to the Secretary.  10 U.S.C. § 948h (titled "who may convene military commissions" and specifying the Secretary as well as "any officer or official . . . designated by the Secretary for that purpose").  And as the USCMCR explained, "powerful interlocking authorities give the Secretary of Defense supervisory authority to replace [Brigadier General] (Ret.) Escallier as convening authority for [pretrial agreements] without taking all convening authority responsibilities from her."  USCMCR Decision 7.

The Secretary is "the principal assistant to the President in all matters relating to the Department of Defense" and is vested with "authority, direction, and

11

control" over the Department.  10 U.S.C. § 113(b).  "Unless specifically prohibited by law," he is statutorily authorized to "perform any of his functions or duties, or exercise any of his powers through . . . such person in, or organizations of, the Department of Defense as he may designate" "*without being relieved of his responsibility*."  10 U.S.C. § 113(d) (emphasis added).

As particularly relevant here, the Secretary has principal statutory and regulatory authority over the military commission process.  *See, e.g.*, 10 U.S.C. § 948h; *id.* § 948j(a) ("The Secretary of Defense shall prescribe regulations providing for the manner in which military judges are so detailed to military commissions."); *id.* § 949a(a) ("Pretrial, trial, and post-trial procedures, including elements and modes of proof, for cases triable by military commission under this chapter may be prescribed by the Secretary of Defense."); Regulation for Trial by Military Commission (R.T.M.C.) ¶ 1-3(a) ("The Secretary of Defense is responsible for the overall supervision and administration of military commissions within the [Department of Defense].").[2]  He has the power "to prescribe procedures and rules of evidence governing military commissions."  *Al-Bahlul v. United States*, 967 F.3d 858, 872 (D.C. Cir. 2020) (citing 10 U.S.C. § 949a(a)).  And, in

---

[2] The Regulation for Trial by Military Commission is available at https://www.mc.mil/ portals/0/2011%20regulation.pdf.

12

addition to having the sole power under the Military Commissions Act to either convene commissions himself or to "designate[]" "any officer or official" to serve as a subordinate convening authority, 10 U.S.C. § 948h, he has the power to remove such subordinate convening authorities "at will." *Al-Bahlul*, 967 F.3d at 872.

Indeed, the military commission judge recognized that "[t]he Secretary of Defense, as superior competent authority, can have the case transmitted to his level" for action. MC Ruling 21; *see also* R.M.C. 601(f) (using the terms "superior convening authorit[y]" and "superior competent authority" interchangeably). Because the Secretary—not the retired Brigadier General he appointed to a subordinate position—oversees the Department of Defense and the military commission process, he lawfully exercised his authority by reserving for himself the power to enter into or to withdraw from pretrial agreements.

2.  The only remaining question is whether, when the Secretary withdrew from the pretrial agreements on August 2, 2024, the respondents had already begun "performance of promises contained in the agreement[s]." R.M.C. 705(d)(4)(B). Determining whether a defendant had begun performance of a promise in an agreement requires assessing both the text of the agreement (to determine what the promises were) and the actions of the defendant (to determine what he performed).

13

**Material Under Seal Deleted**

Here, a review of the plain terms of the agreement and the record demonstrates that the respondents had not yet performed any of the promises in the agreements when the Secretary withdrew from those agreements.

a.  The respondents have argued (and the military commission found) that they "performed" by "negotiat[ing]" what the military commission has called "red-boxed letterhead memoranda."  MC Ruling 26.  But it is clear and indisputable that *negotiating* the red-boxing was not something promised in the agreements.  Rather, it was done as part of the negotiation of the agreement.  The relevant text of Mohammad's agreement states: ██████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████ Khalid

Shaikh Mohammad Offer for Pretrial Agreement 5 n.2 (Mohammad PTA) (attached as Exhibit D to the Petition for Mandamus and Prohibition).  The other agreements have similar language.  Walid Bin 'Attash Offer for Pretrial Agreement 5 n.2 (Bin 'Attash PTA) (attached as Exhibit E to the Petition for Mandamus and Prohibition); Mustafa al Hawsawi Offer for Pretrial Agreement 4 n.2 (Hawsawi PTA) (attached as Exhibit F to the Petition for Mandamus and Prohibition). ████

████████████████████████████████████████

**Material Under Seal Deleted**

██████████████████████████████████████

████████████████████████████████████

███████████████████████    *See* Mohammad PTA ¶ 13; Bin 'Attash PTA ¶ 13;

Hawsawi PTA ¶ 13.  But that information has never been offered into evidence,

prior to August 2, 2024 or since, and thus the respondents have not performed that

promise.

      b.  The military commission also erred in concluding that the respondents

began performance of the agreements by signing factual stipulations attached to the

agreements.  MC Ruling 16.  The text of the agreements makes clear that signing

the factual stipulations was part of the process through which the agreements were

formed, not performance of a promise under the agreements once they were

signed.  Mohammad's pretrial agreement provides that ████████████████

███████████████████████████████████████

████████████  Mohammad PTA ¶ 6.  It further states that ██████████

████████████████████████████████████████

██████████████████████████████████

██████████████████  The agreement also provides that ████████████

█████████████████████████████████

████████████████████████████████████████

15

**Material Under Seal Deleted**

████████████████████████████████████ *Id.* ¶ 47.  Bin 'Attash's agreement

contains identical text, Bin 'Attash PTA ¶¶ 6, 47, and Hawsawi's is substantially

similar, but phrased in the first person rather than the third person, Hawsawi PTA

¶¶ 6, 47.  And although the agreements also recite that ████████████████

█████████████████████████████████████████████████████ Mohammad

PTA ¶ 6, respondents signed the stipulations at the time they signed their plea

offers, *before* Convening Authority Escallier accepted the offer.  The signing of the

stipulations thus did not constitute "performance of promises contained in the

agreement" within the meaning of R.M.C. 705(d)(4)(B) because a "promise[]" in

that context refers to a commitment to take some future action, not a recitation of

action already taken.  *See, e.g.*, *Black's Law Dictionary* 1406 (10th ed. 2014) ("The

manifestation of an intention to act or refrain from acting in a specified manner.");

*Choate v. TRW, Inc.*, 14 F.3d 74, 77 (D.C. Cir. 1994) ("[A] promise is 'an

expression of intention that the promisor will conduct himself in a specified way or

bring about a specified result *in the future*.'" (emphasis added; citation omitted)).

In contending otherwise, the respondents have cited *United States v. Dean*,

67 M.J. 224 (C.A.A.F. 2009), a court-martial case in which the court found that the

defendant had begun performing promises in his pretrial agreement by "elect[ing]

trial by military judge alone," "enter[ing] into a stipulation of fact with [the

16

prosecution] as to the circumstances of the offense," and "fil[ing] an amended witness list." *Id.* at 225. But as the USCMCR correctly recognized (Decision 16), *Dean* is not controlling in military commission cases. In addition, *Dean* did not rely on the stipulation alone and did not analyze the stipulation issue in any detail because it believed that it was clear that the defendant had "performed or began to perform several of the promises listed in the agreement." 67 M.J. at 228. And in any event, *Dean*'s reliance on the stipulation at most stands for the proposition that entering into a factual stipulation *can* be performance of a promise in an agreement, not that it necessarily qualifies as such. Here, the text of the agreements illuminated by the accompanying course of conduct makes clear that that the respondents did not promise that they *would* enter into factual stipulations; they acknowledged that they *were* entering into the factual stipulations that were attachments to the agreements.

c. The military commission also found that the respondents had performed promises in the agreement by declining to question a witness at an evidentiary hearing concerning co-defendant Ali's pending motion to suppress his statements to law enforcement. But, once again, although counsel for both the respondents and the government indicated in court that questioning witnesses might breach the agreements, declining to question witnesses is not a promise contained in the

17

**Material Under Seal Deleted**

agreements.  The promise in the agreements was ████████████████

████████ Mohammad PTA ¶ 23; *see also* Bin 'Attash PTA ¶ 22; Hawsawi PTA ¶

23, not to litigate them less aggressively.  And the respondents did not move to

withdraw any pending motions.

The USCMCR summarily stated that respondents began performance of "a

promise . . . not to make or participate in motions," USCMCR Decision 17, but it

too cited no evidence that the respondents refrained from making any motion

because of the agreements during the relevant two-day period.  And it too misread

the agreements, which do not contain any promise to refrain from "participat[ion]."

Again, the relevant promise was to withdraw pending motions, and the respondents

did not do that.

d.  Finally, the military commission found that the respondents performed

promises in the agreement when they refrained from filing motions apart from the

ones seeking to schedule plea hearings.  MC Ruling 27.  It is true that the filing of

certain motions would have violated the pretrial agreements.  *See* Mohammad PTA

¶ 23; Bin 'Attash PTA ¶ 22; Hawsawi PTA ¶ 23.  But the military commission

judge made no finding that the respondents refrained from filing any motions that

they otherwise would have filed, and there is no support in the record for such a

finding.  The USCMCR similarly cited nothing in the record to support such a finding.  *See* USCMCR Decision 17.

Moreover, merely not affirmatively violating the respondents' agreements cannot be considered "performance" of their terms.  Doing so would render the relevant language of R.M.C. 705(d)(4)(B) a nullity, as the rule separately allows the government to withdraw from a pretrial agreement "upon the failure by the accused to fulfill any material promise or condition in the agreement."

\* \* \*

In sum, as the superior convening authority, the Secretary of Defense lawfully withdrew from the pretrial agreements before the respondents had begun performing any of the promises contained in the agreements.

## C. Issuance of the Writ Is Appropriate Under the Circumstances

Writs of mandamus "are particularly appropriate when the issues also have an importance beyond the immediate case."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008).  For example, this Court has found mandamus appropriate where, for "the first time[,] a [deferred prosecution agreement] negotiated by the government has been subjected to judicial scrutiny of the prosecution's basic exercise of charging discretion" because the trial court's order

19

amounted to "an unwarranted impairment of another branch in the performance of its constitutional duties." *Fokker Servs.*, 818 F.3d at 750.

In requiring the government to move forward with plea agreements that have been lawfully withdrawn, the military commission judge's ruling improperly curtailed the Secretary's statutory and regulatory authorities regarding military commissions. And relief is particularly warranted here because that ruling countermands the Secretary's considered judgment about the appropriate handling of a case of unique national importance, arising out of the devastating terrorist attacks on September 11, 2001. Preserving the Secretary of Defense's authority to make fundamental decisions about the handling of the prosecutions of the individuals allegedly responsible for those attacks is a matter of critical importance warranting the issuance of extraordinary relief.

## II.     The Balance of Harms and the Public Interest Strongly Favor a Stay

The government will be irreparably and severely harmed in the absence of a stay. Once the military commission accepts the respondents' guilty pleas, there is likely no way to return to the status quo ante. *See, e.g.*, *United States v. Patterson*, 381 F.3d 859, 864 (9th Cir. 2004) ("We conclude that jeopardy attached when the court accepted Patterson's plea and that, once it accepted the plea, the court did not have authority to vacate the plea on the government's motion."); *see also* 10

U.S.C. § 949h(a) ("No person may, without the person's consent, be tried by a military commission under this chapter a second time for the same offense.").  The government and the public will lose the opportunity for a public trial as to the respondents' guilt and to seek capital punishment against three men charged with a heinous act of mass murder that caused the death of thousands of people and shocked the nation and the world.

By contrast, a stay would not harm the respondents.  The respondents are detained as enemy combatants under the law of war; this prosecution has been ongoing since 2012; and the pretrial agreements they are trying to enforce anticipate that they will remain confined for a significant time, probably for life.  A short delay to allow this Court to weigh the merits of the government's request in this momentous case will not materially harm the respondents.

## CONCLUSION

For the reasons set forth above, this Court should grant a stay of the military commission proceedings pending resolution of the government's petition for a writ of mandamus and prohibition.

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General
  for National Security

 /s/ *Brian H. Fletcher*
BRIAN H. FLETCHER
Principal Deputy Solicitor General
U.S. Department of Justice
Washington, D.C.  20530

## CERTIFICATE OF COMPLIANCE WITH VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This response complies with the volume limitation of Fed. R. App. P. 27(d)(2) because:

   this response contains 4,575 words.

2. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font size and Times New Roman type style.

DATED: January 7, 2025


/s/ *Brian H. Fletcher*
Brian H. Fletcher

23

<u>CERTIFICATE OF SERVICE</u>

I certify that, on January 7, 2025, I caused the foregoing motion to be served on counsel for respondents and counsel for Ali Abdul Aziz Ali, intervenor below, by hand and by email. Defense counsel will be served today at their office at the Guantanamo Naval Base by the Department of Defense's Office of the Chief Prosecutor.

Counsel receiving service are:

Gary D. Sowards
*Counsel for Respondent Mohammad*

Captain Marian D. Messing
*Counsel for Respondent Bin 'Attash*

Sean M. Gleason
*Counsel for Respondent Hawsawi*

Rita Radostitz
*Counsel for Intervenor Ali*

/s/ *Brian H. Fletcher*
Brian H. Fletcher

24