[ORAL ARGUMENT NOT YET SCHEDULED]
**Case No. 25-1009**

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE: UNITED STATES,

*Petitioner.*

---

On petition for a writ of mandamus from a decision of the
Court of Military Commission Review

---

**Respondents' Brief in Opposition to
Petitioner's Emergency Motion for a Stay**

---

Walter B. Ruiz
Suzanne M. Lachelier
Sean M. Gleason
Maj. Kerry A. Mawn, JA, USAF
Maj. Patrick C. Tipton, JA, USAF
Military Commission Defense
Organization
1620 Defense Pentagon
Washington, DC 20301-1620

*Counsel for Respondent,*
*Mustafa Al Hawsawi*

/s/     Michel Paradis
Michel Paradis
Gary Sowards
Denny LeBoeuf
Delphine Lourtau
Nicholas McCue
Gabriela McQuade
Melanie Partow
Maj. Michael Leahy, USAF
Maj. Elspeth Theis, USAF
LT William Xu, JAGC, USN
Military Commission Defense
Organization
1620 Defense Pentagon
Washington, DC 20301-1620

*Counsel for Respondent,*
*Khalid Sheikh Mohammed*

## TABLE OF CONTENTS

**Introduction** ............................................................................. **1**

**Statement** .................................................................................. **6**

**Argument** .................................................................................. **9**

    I.     The government has no likelihood of success in obtaining
mandamus relief from this Court. ....................................... 9

        A.    The government has no clear and indisputable entitlement
to mandamus relief. .................................................. 10

        B.    The government has adequate alternatives to mandamus. ................. 23

        C.    The interests of justice strongly disfavor delaying this case
any further. ........................................................ 26

    II.    The balance of harms strongly disfavors a stay. .................................... 26

    III.   A stay is not in the public interest. ............................................ 30

**Conclusion** ............................................................................. **33**

**Certificate of Compliance with Rule 27** ............................................ **34**

**Certificate of Service** ............................................................... **35**

## INTRODUCTION

For the past two decades, Respondent and his codefendants have been in the custody of the United States. The government's prosecutorial efforts since that time have been, to put it generously, fitful. In 2022, with no trial date on the horizon, Respondents and the government began extensive plea negotiations that directly involved the White House. Pet.Ex.A, at 6. Those negotiations culminated in July 2024 in a pretrial agreement signed by Respondent, two of his codefendants, counsel for the government, and the Secretary of Defense's personally appointed delegee, the Convening Authority for Military Commissions.

This pretrial agreement offers the first opportunity for genuine closure after quarter century. As counsel for the government represented to the victims in this case, "it is our collective, reasoned, and good-faith judgment that this resolution is the best path to finality and justice in this case." RADM Aaron Rugh, *et al.*, Letter to the Families of the September 11, 2001 Victims, July 31, 2024.[1]

This pretrial agreement also offers the first opportunity anyone will have for their day in court. Under the unique procedures governing military commissions, Respondent's entry of his plea will be followed later this year by a sentencing proceeding that prosecutors anticipate lasting several months. In that proceeding,

---

[1] *Available at* https://perma.cc/FDB9-5VUU

1

which will be open to the public, a military jury (the "members") will take evidence, hear testimony from the victims, and impose any punishment up to life imprisonment. 10 U.S.C. § 948i. Under this pretrial agreement, the victims will also have a unique opportunity to pose direct questions to Respondent and his co-defendants, who must – on pain of losing the benefits of the pretrial agreement – answer their questions fully and truthfully.

This pretrial agreement became final when it was accepted by the Convening Authority for Military Commissions, the Secretary of Defense's personally appointed delegee, whom this Court held to possess the unilateral and unreviewable power to dispose of military commission cases. *Bahlul v. United States*, 967 F.3d 858, 872 (D.C. Cir. 2020). Respondent promptly began performing his obligations under this agreement. And as the military commission judge assigned to this case, Col Matthew McCall, and the Court of Military Commission Review ("CMCR"), unanimously concluded, the Secretary of Defense had no authority to rescind that agreement nunc pro tunc.

The government's motion for a stay should be promptly denied. Twenty-five years after the September 11th attacks, 20 years after Respondents were taken into custody, 17 years after he was first charged before a military commission, 13 years after they were charged again under a revised statutory scheme, seven years after a prior Secretary of Defense fired a prior Convening Authority for entertaining plea

negotiations in this case, three years after the plea negotiations leading to the pre-trial agreement now in effect became public, six months after Respondent, counsel for the government, and the duly appointed Convening Authority signed that pretrial agreement and Respondent began performance, two months after Col McCall concluded that the Secretary had no authority to rescind the pretrial agreements, and two weeks after the CMCR unanimously concluded that Col McCall was correct, the government has filed an unprecedented mandamus petition, asking an Article III court of appeals to direct one of its own tribunals to take action that its own executive officers unanimously concluded would be illegal.

There is no precedent for such extraordinary relief. This Court lacks jurisdiction to grant such extraordinary relief. And even if it could grant such extraordinary relief, the government's petition fails to satisfy any of the conditions that this Court rigorously applies in mandamus cases. An eleventh-hour stay will accomplish nothing but more delay and it will reward the government for its – at best – negligent handling of what it now pleads with this Court to view as "handling of a case of unique national importance." Pet. 21.

To be entitled to mandamus, a petitioner must have a "clear and indisputable" entitlement to relief on the merits. It must have no alternative means of obtaining the relief it seeks. And extraordinary relief from this Court must be in the interest of justice.

Here, as the unanimous decision of the CMCR illustrates, and as Col McCall's opinion further demonstrates, the government has failed to demonstrate a clear and indisputable entitlement to the relief. The government's arguments about the Secretary's powers not only lack support from binding authority, but would require this Court to answer complex and wholly novel questions of federal statutory and constitutional law. The very complexity of those questions demonstrates why mandamus is inappropriate, because "open questions are the antithesis of the clear and indisputable right needed for mandamus relief." *In re Al-Nashiri*, 835 F.3d 110, 137 (D.C. Cir. 2016). The government's entitlement to relief cannot be clear and indisputable when there are substantial questions for respecting this Court's jurisdiction.

The government is also not without remedies if this Court denies review.  If Respondent pleads guilty as scheduled, the government retains the option of petitioning this Court for review after Respondents enter their pleas, their sentences are announced, and the Convening Authority takes final action. Waiting for finality of course imposes burdens. But it is a "bedrock principle of mandamus jurisprudence that the burdens of litigation are normally not a sufficient basis for issuing the writ." *In re al-Nashiri*, 791 F.3d 71, 80 (D.C. Cir. 2015).

For all these reasons and more, the government is unlikely to succeed in obtaining the mandamus relief it now seeks from this Court. That is sufficient to

4

deny its motion for a stay. Likewise, the government also does not offer this Court a compelling case on the other factors governing the entry of a stay. Whatever harms the government faces if Respondents enter their pleas are remediable via posttrial review, within the government's power to avoid, or are harms entirely of the government's own making. The Secretary's extraordinary intervention in this case is solely a product of his lack of oversight over his own duly appointed delegee. The urgency with which this Court is now being asked to rule is solely a function of the government's failure to seek a stay from either the CMCR or this court promptly after Col McCall ruled two months ago.

Granting a stay also is not in the public interest, for the same reason mandamus is not appropriate. It is a cliché, and one that may seem almost satirical in the context of Guantánamo, but "justice too long delayed is justice denied." Martin Luther King, "Letter from a Birmingham Jail," April 16, 1963. It has been denied to the victims, respondents, and the public for a quarter century. This Court has been given no compelling reason to delay it a day further.

The government's emergency motion for a stay should be denied, and its mandamus petition should be dismissed.

## STATEMENT

Respondents are Guantanamo detainees whom the government has been prosecuting in capital military commission since 2008. On August 21, 2023, Secretary of Defense Lloyd Austin designated BG Susan Escallier as the commission Convening Authority. On July 21, 2024, the Convening Authority successfully concluded more than 26 months of negotiations begun by her predecessor, and signed pretrial agreements with Respondents.

On August 1, 2024, counsel for the government notified the military commission that the parties had reached a negotiated settlement, and requested to schedule the entry of pleas for the following week. Immediately following this announcement, counsel for the government insisted that "based on the pretrial agreement," Respondents and their counsel were no longer allowed to "actively continue to participate in any of the contested litigation," including "to examine the witness." Pet.Ex.B, at 2. Respondents suspended their participation in on-going hearings, including waiving the cross-examination of a government witness then testifying on a respondent motion to suppress. Respondents also signed and submitted a 28-page confessional stipulation of fact, thereby fulfilling "a material term of [the] Agreement." *Ibid*. Counsel for government "insisted upon that course of action so that the Defense teams did not violate a material term of their agreements." Pet.Ex.A, at 26.

Then, without notice, on the eve of Respondent's scheduled entry of his plea of guilty, the Secretary took the extraordinary step of issuing an order that purported to withdraw the Convening Authority's power to enter into pretrial agreements, and to rescind *nunc pro tunc* the pretrial agreement in this case. As the CMCR acknowledged below, the Secretary's order cited no authority permitting such an action, and the government has remained unable produce any at the trial court, the CMCR, or to this Court.  Pet.Ex.B, at 6.

Respectful of the Secretary's unique role in the military commissions system, Col McCall postponed the taking of Respondents' pleas so the parties could brief whether the pretrial agreement remained in force. In a detailed decision, Col McCall concluded both that the Secretary lacked the authority to rescind the Convening Authority's power to enter into pretrial agreements and, in any event, that rescinding the pretrial agreement was unlawful under the Rules for Military Commissions because Respondent had begun to perform under the terms of their agreements to their prejudice.

Unhappy with this result, the Secretary directed military commission prosecutors to petition the CMCR for a writ of mandamus. That petition was filed three weeks after Col McCall's decision and thegovernment did not seek a stay of proceedings before the CMCR. Nevertheless, to give the CMCR time to consider

the government's petition, Col McCall postponed the taking of Respondent's plea until January 6, 2025.

On December 30, 2024, in a unanimous decision, the CMCR upheld Col McCall's decision. It acknowledged complex and open questions respecting the Secretary's authority over the military commissions. But it had no trouble concluding that whatever control the Secretary had to rescind individual judicial powers from a Convening Authority, he had no authority to rescind *nun pro tunc* final actions taken by the Convening Authority. Pet.Ex.B, at 17.

Again, the government did not ask the CMCR for a stay. Instead, on January 2, 2025, it moved Col McCall to delay the taking of Respondent's plea yet again to January 27, so that it could decide whether to seek further review. The following day, Col McCall, in effect, granted that motion in part, postponing Respondent Mohammad's entry of plea until January 10th. Then on January 7th, after all the relevant participants for that plea had assembled in Guantanamo, the government filed yet another extraordinary petition for a writ of mandamus in this Court, coupled with an emergency motion for a stay.

8

## ARGUMENT

A stay pending appeal is an extraordinary remedy. *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). It is "an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). The government bears the burden of justifying why it is entitled to this extraordinary remedy. *Id.* at 433–34.

The government's entitlement to a stay turns on "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434.

Here, all four factors weigh against this Court ordering further delay in this decades-old case.

## I.    THE GOVERNMENT HAS NO LIKELIHOOD OF SUCCESS IN OBTAINING MANDAMUS RELIEF FROM THIS COURT.

To demonstrate a likelihood of success on the merits sufficient to warrant a stay, the government must persuade this Court that it is likely to prevail in obtaining a writ of mandamus compelling Col McCall to accept the Secretary's purported recission of the pretrial agreement in this case:

> Under governing law, the writ of mandamus should issue
> only if: (1) the party seeking issuance of the writ has no
> other adequate means to attain the relief he desires; (2) the
> petitioner satisfies the burden of showing that his right to
> issuance of the writ is clear and indisputable; and (3) the
> issuing court, in the exercise of its discretion, is satisfied
> that the writ is appropriate under the circumstances. All
> three requirements must be satisfied, and the absence of
> any one compels denial of the writ.

*In re Flynn*, 973 F.3d 74, 78 (D.C. Cir. 2020) (en banc) (quoting *Cheney v. U.S.*
*Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380–81 (2004)).

The government has no likelihood of success in obtaining a writ of
mandamus in this case.

## A. The government has no clear and indisputable entitlement to mandamus relief.

The merits arguments the government presses this Court to accept have been
rejected by four of its own duly appointed officials. Neither below, nor here, has it
"cite[d] any authority explicitly authorizing" the Secretary to take the action he
took in this case. Pet.Ex.B, at 6.

Furthermore, even if the government's underlying merits arguments were
stronger, the government's entitlement to relief is neither clear, nor unambiguous
because there are substantial doubts about this Court's jurisdiction. The Military
Commissions Act ("MCA") "established an 'integrated' scheme dictating how
enemy belligerents are to be tried and obtain appellate review." *In re Al-Nashiri*,

10

835 F.3d 110, 122 (D.C. Cir. 2016). Nowhere does the MCA authorize the

government to seek interlocutory review of the questions presented here, and it

contains no provision expressly granting the government the right to file a petition

for review in this Court, challenging the decisions of its own Executive officials in

its own tribunals.

### 1.    The decisions below were not clearly and indisputably erroneous.

There is no dispute that the Rules for Military Commissions ("RMC"),

which were duly promulgated by the Secretary of Defense, forbid any convening

authority from terminating a pretrial agreement once "the accused begins

performance of promises contained in the agreement." Pet., at 5, 7; *see also*

R.M.C. 705(d)(4)(B); Pet.Ex A, at 15-16; Pet.Ex. B, at 17. There is also no dispute

that "the Secretary was required to observe his own regulations." *Roberts v. Vance*,

343 F.2d 236, 239 (D.C. Cir. 1964). As Col McCall found, and as the CMCR

affirmed, "based on a plain language interpretation of the Rule, [] the beginning of

performance by an accused terminates the convening authority's ability to

withdraw from a PTA."  Pet.Ex.A, at 16; Pet.Ex.B, at 17.

Here, both Col McCall and the CMCR based their decisions on uncontested

findings of fact respecting Respondent's performance of material terms of their

pretrial agreements. Pet.Ex.A, at 6-9, 15-17, 26; Pet.Ex.B, at 3-5, 14-18; *see also*

*United States v. Mohammed, et al.*, AE 964 (Amend), Amended Docket Order, at 2 (November 4, 2024) ("The Commission will rule without oral argument as no factual issues are in dispute.").[2] The conclusion that Respondent had begun performance before the Secretary's attempted withdrawal included the factual finding that counsel for the government "insisted" that Respondent "refrains from examining the witness(es) for pretrial motions while the Prosecution and Defense Counsel for" a defendant who was not a party to the pretrial agreement, "questioned those same witnesses." Pet.Ex. A, at 26; Pet.Ex. B, at 17.[3] Indeed, the government, "objected to respondents' 'participat[ion] in any of the contested litigation based on the [pretrial agreements], reminding the respondents of their obligation under the [pretrial agreements]. Accordingly, respondents' counsel did not ask any questions of the witness." Pet.Ex. B, at 17 (internal citations omitted), and Respondents counsel noted, without objection from the government that performance had begun.

Respondent also "signed lengthy confessional stipulations of fact," "as was required." Pet.Ex. A, at 26; Pet.Ex D, at 2, para. 6 ██████████████

██████████████████████████████████████

██████████████████████████████████████

---

[2] *Available at* https://perma.cc/2YDY-GPY4.

[3] *Available at* https://perma.cc/E9HP-6GBV

███████████████████████████████████████████████

█████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████     Pet.Ex.A, at 26, fn. 113; Pet.Ex.D, at

12-13, fn. 1-2.

Consistent with Col McCall's factual findings, the CMCR unanimously held

that "Respondents clearly began performance of a promise contained in the

[pretrial agreements]—not to make or participate in motions—and Rule for

Military Commissions 705(d)(4)(B) precluded the convening authority's

withdrawal unless one of the circumstances in Rule 705(d)(4)(B) applied."

Pet.Ex.B, at 17-18; *see* Pet.Ex.A, at 26. Col McCall and the CMCR also found that

none of those conditions applied. Pet.Ex.B, at 18; Pet.Ex.A, at 28.

Two separate tribunals have therefore rejected the "no performance"

argument the government presses here, finding instead that Respondent began

performing under several of the material terms of his pretrial agreement before the

Secretary's belated intervention. Mandamus is wholly inappropriate when the question before the court is as fact-bound as the decisions below. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 30 (1943). Far from "binding precedent" in the government's favor, all the authority is against it. In *Al-Nashiri*, this Court treated the bare existence of disagreement between a plurality and dissenters on the Justices of the Supreme Court as sufficient to demonstrate that the answer to a legal question was not clearly and indisputably in the petitioner's favor. *Al-Nashiri*, 835 F.3d at 137. Here, where the question is just as fact-bound and the authority is unanimously against the position the government is advancing, the government has no likelihood of success in obtaining a writ of mandamus.

### 2.    The government's arguments, if not foreclosed by circuit precedent, present open questions that cannot be resolved on mandamus.

Not only must the government demonstrate that the pretrial agreements in this case were not yet binding under the RMC, but it must also demonstrate that the Secretary had the clear and indisputable authority to assume the powers of the Convening Authority *ad hoc*. Nothing in the statute or the regulations authorizes the Secretary to take the action that he took in this case. To the contrary, as Col McCall noted in his decision, both the RMC and the Regulation for Trial by Military Commission ("RTMC") only permit the Secretary to circumscribe a Convening Authority's authority to enter into pretrial agreements at the time the

14

designation as Convening Authority is made. Pet.Ex.A, at 14-15. Otherwise, whether to enter into a pretrial agreement "is *within the sole discretion* of the Convening Authority who referred the case to trial." *Ibid*. (quoting RTMC 12-1) (original emphasis).

The government does not even cite RTMC 12-1, let alone explain how it is reconcilable with the arguments it presses in its petition. That alone is sufficient to defeat any claim that the government has a clear and indisputable right to relief. "As long as the regulations remain operative, the [Secretary] denies himself the right to sidestep the [Convening Authority] or dictate its decision in any manner." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954); *United States v. Nixon*, 418 U.S. 683, 696 (1974) ("it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done so.").

Against the plain language of the Secretary's own regulations, the government presents this Court with complex arguments respecting the Secretary of Defense's inherent powers as the Head of a Department, the structure of the United States military, and implicit balance of power within the military justice system. The answers to these questions are not dictated by the clear terms of federal statutes or this Court's precedents. Instead, the government relies upon the emanations and penumbra of "powerful interlocking authorities [that] give the

15

Secretary of Defense supervisory authority to replace [the Convening Authority] for [pretrial agreements] without taking all convening authority responsibilities from her." Pet. 12 (quoting Pet.Ex.B, at 7). Indeed, while the CMCR was ultimately persuaded by these "powerful interlocking authorities," it candidly acknowledged that the government was unable to "cite any authority explicitly authorizing" the Secretary to take the action he took in this case. Pet.Ex.B, at 6.

To the extent there is any precedent squarely on point, this Court has twice held that the Secretary lacks the authority to countermand the Convening Authority's final decisions. In *Bahlul*, the petitioner challenged the Convening Authority's power to make final dispositive decisions in military commission cases on the ground that the Convening Authority was an inferior officer appointed by the Secretary of Defense. This Court rejected that challenge, whilst nevertheless recognizing that "several of the Convening Authority's consequential powers," including the powers at issue here, "are effectively unreviewable." *Bahlul*, 967 F.3d at 872. In 2023, this Court reaffirmed that holding, despite the petitioner's "plausible" arguments that intervening authority from the Supreme Court cast the constitutionality of the Convening Authority's final decision-making power into doubt. *Bahlul v. United States*, 77 F.4th 918, 928 (D.C. Cir. 2023).

In both cases, the Convening Authority's power to enter a final and binding pre-trial agreement *in this very case* was squarely before this court. It was a central

argument of the petitioners' briefing. It was noted at oral argument and in public commentary. *See*, *e.g.*, Robert Loeb, *D.C. Circuit Hears Oral Argument in Bahlul v. United States*, Lawfare Blog, March 23, 2023.[4] And it formed the basis of an amicus brief filed by the Chief Defense Counsel for Military Commissions, who warned "a plea agreement entered into by, or final action taken by an improperly appointed [Convening Authority] may yet be dismissed on appeal resulting in a potential re-trial." *Bahlul v. United States*, Case No. 22-1097, Amicus Brief of the Chief Defense Counsel, at 8 (D.C. Cir., Sept. 15, 2023).

Finally, the government's finely wrought arguments about the supervisory relationship between the Secretary of Defense and the Convening Authority present, at best, open questions. That alone is sufficient to foreclose mandamus, because "[w]hat matters for [the government's] petition is that they are just that— open. Legal aporias are the antithesis of the 'clear and indisputable' right needed for mandamus relief." *In re al-Nashiri*, 791 F.3d 71, 85–86 (D.C. Cir. 2015); *NetCoalition v. SEC*, 715 F.3d 342, 354 (D.C. Cir. 2013) (right to mandamus not clear and indisputable in absence of " bind[ing]" precedent); *Republic of Venezuela v. Philip Morris*, 287 F.3d 192, 198 (D.C. Cir. 2002) (petitioners did "not come close" to showing clear and indisputable right because they "identif[ied] no precedent of this court or of the Supreme Court" on point).

---

[4] *Available at* https://perma.cc/E9HP-6GBV

###### 3.    There can be no clear and indisputable right to relief, when this Court's jurisdiction is in substantial doubt.

The government is also unlikely to succeed on the merits because this Court does not have jurisdiction to grant the relief it requests. By definition, a petitioner does not have a likelihood of success on the merits sufficient to warrant a stay, or a clear and indisputable entitlement to mandamus, if there is "substantial doubt" over whether the court has jurisdiction to decide those merits in the first place. *Southern Ry. v. Brotherhood of Locomotive Firemen*, 384 F.2d 323, 326 (D.C. Cir.1967) (per curiam); *see also New York v. DHS*, 974 F.3d 210, 214 (2d Cir. 2020); *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (Williams, J.) ("The affirmative burden of showing a likelihood of success on the merits ... necessarily includes a likelihood of the court's reaching the merits."); *Food & Water Watch v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *In re Asemani*, 455 F.3d 296, 299 (D.C. Cir. 2006) ("Before considering whether mandamus relief is appropriate, however, we must be certain of our jurisdiction.").

Mandamus is not "an independent grant of appellate jurisdiction." *Clinton v. Goldsmith,* 526 U.S. 529, 535 (1999). To be entitled to supervisory mandamus, and especially to be entitled to a stay pending the resolution of its mandamus petition, the government must point to a clear and indisputable grant of future appellate jurisdiction that it can invoke, which this Court can, in turn, issue extraordinary

18

relief to "protect." *al-Nashiri*, 791 F.3d at 75–76; *Roche*, 319 U.S. at 25; *The Bath Cnty. v. Amy*, 13 Wall. 244, 249 (1871) ("the writ cannot be used to confer a jurisdiction which the Circuit Court would not have without it."); *In re Stoller*, 230 F.3d 1375 (Fed. Cir. 1999) ("if a decision ... is not appealable to us, we also lack mandamus jurisdiction to review it.").

Nothing in the MCA explicitly grants the government the right to invoke this Court's jurisdiction. And the government, for its part, offers no authority supporting its entitlement to invoke this Court's jurisdiction. The closest it comes follows its candid acknowledgment that nothing in the MCA permits "the government to take an appeal at the end of this case," after which it suggests obliquely that Congress granted it the right to file a petition for review in this Court under 10 U.S.C. § 950g, so long as, "a defendant has either appealed to the USCMCR or waived such review." Pet. 10, Mot. 9.

Section 950g says no such thing. It says only that this Court has "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission" and that such review is triggered by a timely petition for review. 10 U.S.C. § 950g(a), (c). Nowhere does § 950g give the government the authority to file petitions for review in this Court or anywhere else.[5]

---

[5] Manual for Military Commission, Rule for Military Commission 1205(b) interprets § 950g as providing the government a right to file a petition for review to this Court from the CMCR. This Court has squarely held, however, that this

That silence cannot be read to imply a clear basis for the government's entitlement to invoke the jurisdiction of this Court for three equally sufficient reasons. *First*, and foremost, government appeals in criminal cases "are something unusual, exceptional, not favored." *Carroll v. United States*, 354 U.S. 394, 400 (1957). "It has long been established," therefore, "that the United States cannot appeal in a criminal case without express congressional authorization." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977). Such grants of jurisdiction are construed narrowly, and statutory implication or ambiguity are insufficient to "overcome the common-law rule that the State could not sue out a writ of error in a criminal case unless the legislature had expressly granted it that right." *United States v. Wilson*, 420 U.S. 332, 336 (1975); *see also United States v. Sanges*, 144 U.S. 310, 313 (1892) ("A writ of error will lie for the defendant, but not against him. This is a rule of such vital importance to the security of the citizen that it cannot be impaired but by express words").

*Second*, the MCA expressly grants the government limited appellate rights to the CMCR, not to this Court. 10 U.S.C. § 950d. As the Supreme Court has frequently stated, the "exceptional right of appeal given to the Government … is strictly limited to the instances specified." *United States v. Sisson*, 399 U.S. 267,

---

Court's statutory jurisdiction under the MCA is narrowly delimited and "no rule, regulation, or notice given by the Executive Branch could expand those limits." *Khadr v. United States*, 529 F.3d 1112, 1116-1117 (D.C. Cir. 2008).

290–91 (1970). This narrow grant also contrasts with the Uniform Code of Military Justice, on which the MCA is modeled, and which is replete with express provisions setting forth circumstances under which the government can invoke the jurisdiction of various military tribunals and federal courts. As this Court held nearly two decades ago, that contrast is dispositive because it reflects Congress' judgment to "not specifically provide for the application of any jurisdictional provisions from the UCMJ to appeals of military commission decisions, but instead required a final judgment, approved by the convening authority, and appealed through the administrative process." *Khadr*, 529 F.3d at 1116.

*Third*, interpreting § 950g to implicitly grant the government the right to file petitions for review in this Court would require this Court to resolve a host of open, complex constitutional questions respecting the Article III courts' authority to resolve what are, at bottom, intra-branch disputes. Those problems are starkly presented here where the Secretary seeks an extraordinary writ from this Court to compel action by subordinates he personally appointed.

"Article III courts do not traditionally hear direct appeals from Article II executive agencies" and a petition for review from an Executive Branch tribunal to a federal court is not "an 'appeal' akin to that taken from the district court to the court of appeals," or from one level of Executive adjudication to another. *Garland v. Ming Dai*, 593 U.S. 357, 367 (2021). Where Congress has given the Executive

Branch the power to seek Article III review of its own internal decisions, it has done so expressly, and the Supreme Court has only upheld such authority in the public rights context. *See generally* Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 566 (2007). By contrast, Congress has not explicitly granted the Executive Branch the right to petition Article III courts for review of its own tribunals' decisions. The Supreme Court has therefore held that "silence regarding the Secretary's ability to take an appeal is significant when laid beside [these] other provisions of law." *Director, Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 129 (1995); *see also Hayburn's Case*, 2 Dall. 409 (1792) (the Attorney General may not seek mandamus against a decision of the Secretary of War).

"In short, statutory silence does not equate to a clear statement." *Al-Nashiri*, 791 F.3d at 77. To be sure, Congress *might* have the authority to give the Executive Branch the right to petition this Court for review in military commission cases. But it has not explicitly done so. Whether § 950g implicitly does so, therefore, is also an open question. And, as this Court has repeatedly held, "open questions are the antithesis of the clear and indisputable right needed for mandamus relief." *Al-Nashiri*, 835 F.3d at 137 (cleaned up).

**B. The government has adequate alternatives to mandamus.**

The government's need for – and therefore entitlement to – mandamus rests upon its assertion that it has no right to interlocutory appeal and no right to post-judgment appeal, save for its claimed entitlement to file a petition for review in this Court if the CMCR decides a post-trial appeal, or if Respondents waive their right to review in the CMCR. Pet. 10; Mot. 9-10. As an initial matter, this fact weighs against, not for, the government's entitlement to mandamus. Mandamus cannot be used as a substitute for appellate jurisdiction that Congress has not given to the courts. "Nor is the case against permitting the writ to be used as substitute for interlocutory appeal made less compelling by the fact that the Government has no later right to appeal." *Will v. United States*, 389 U.S. 90, 97 (1962).

The Supreme Court has "never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal." *Will*, 389 U.S. at 97. And the courts of appeal have consistently rejected government efforts to substitute mandamus for appellate rights that Congress did not expressly confer upon it, particularly insofar as "the lack of appellate jurisdiction here is not a mere procedural contingency fortuitously precluding review; on the contrary, the government's right of appeal in this context has been carefully circumscribed by Congress to safeguard important interests."

*United States v. McVeigh*, 106 F.3d 325, 333 (10th Cir. 1997); *see also United States v. Weinstein*, 511 F.2d 622, 626 (2d Cir.1975).

For the reasons described in section I.A.3 *supra*, the government misconstrues the scope of this Court's jurisdiction under § 950g. But assuming arguendo that the government's construction of § 950g is correct, it will have the right to petition for review in this Court if Respondent enters his plea as scheduled this Friday and is duly sentenced.

Post-trial appeals in military commission cases are automatic, and review in the CMCR must be waived within ten days after the Convening Authority enters the final "action" (i.e. the final judgment). *Khadr v. United States*, 67 F.4th 413, 420 (D.C. Cir. 2023); *see also id*. at 425-426 (Wilkins, J., dissenting). █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Under any scenario, therefore, this Court will have an opportunity to review whatever entitlement it has to invalidate the pretrial agreement in this case. Should

the government file a petition for review in this Court and if this Court determines that it has jurisdiction, the government will be able to make whatever arguments it wishes about the Secretary's authority to countermand the pretrial agreement. If this Court ultimately determines that it lacks jurisdiction, this Court will have lacked jurisdiction to grant mandamus today as well. Denying mandamus does not foreclose review, it simply postpones it until after "the system has completed its work." *Al-Nashiri*, 835 F.3d at 124.

The only harm the government faces, therefore, is "the inconvenience of requiring [it] to undergo a trial in advance of an appellate determination of the challenge now made to the validity of the [pretrial agreement]." *Roche*, 319 U.S. at 30. But this Court, and the Supreme Court, have held that treating such burdens as sufficient for extraordinary relief "violates the bedrock principle of mandamus jurisprudence that the burdens of litigation are normally not a sufficient basis for issuing the writ." *al-Nashiri*, 791 F.3d at 80. This Court has adhered to this principle in capital military commission cases, *ibid.*, and in cases against former high-level Executive Branch officials that prosecutors sought to have voluntarily dismissed. *Flynn*, 973 F.3d at 79.

**C. The interests of justice strongly disfavor delaying this case any further.**

The government's petition is also inappropriate because the problems it asks this Court to resolve are entirely of its own making. Plea negotiations have been going on for years and were widely reported in the press. The Secretary became aware of these negotiations at the very least at that time and, at a minimum, when the White House was consulted respecting certain terms being negotiated.

At no point did the Secretary intervene. Instead, he "slept upon his rights," a delay that was indisputably ... prejudicial to [Respondent]." *Cheney*, 542 U.S. at 379 (quoting *Chapman v. County of Douglas*, 107 U.S. 348, 355 (1883). Because mandamus is rooted in equity, laches may preempt the grant of even an otherwise meritorious mandamus petition. *United States ex rel. Arant v. Lane*, 249 U.S. 367, 371 (1919); *Nicholas v. United States*, 257 U.S. 71, 75 (1921). In its best light, it is the Secretary's own negligent oversight that has brought this case to this Court at this late date. Here, as in those cases, the Secretary "having failed to take prompt action to assert his rights, sound public policy requires a denial of the writ." *Caswell v. Morgenthau*, 98 F.2d 296, 298 (D.C. Cir. 1938).

## II.    THE BALANCE OF HARMS STRONGLY DISFAVORS A STAY.

The most significant fact to belie the government's claims of irreparable harm is that at no point, in the two months since Col McCall's ruling on the issue

26

now before the Court, did the government seek a stay. It did not seek a stay when it filed its mandamus petition in the CMCR, two weeks after that decision was entered. And it did not even seek a stay from the CMCR after its decision was handed down on December 30, 2024. Instead, it waited until the eve of the entry of Respondents' pleas to both demand extraordinary relief from this Court and to couple that demand with an emergency plea for more delay in a case that has been pending for the better part of two decades.

The government nevertheless contends that an emergency stay is necessary because "[o]nce the military commission accepts the respondents' guilty pleas, there is likely no way to return to the status quo ante." Mot. 20. The word "likely" bears tremendous weight in that sentence. As noted in section I.B *supra*, the government will retain whatever rights it has to seek review in this Court to challenge the validity of the plea agreement under which Respondents will have pled. Should it prevail, the invalidation of the plea agreement will return the parties to the status quo ante. *See Jordan v. Epps*, 756 F.3d 395 (5th Cir. 2014); *cf. Sattazahn v. Pennsylvania*, 537 U.S. 101, 113 (2003). To the extent that the government fears it is unlikely to prevail in those efforts, it is for the same reason that the government is unlikely to prevail on the merits of the petition now before this Court.

Finally, in contending that Respondents will suffer *no* harm if a stay is entered, the government simply ignores two decades of its own intentional, strategic delay which sole purpose has been to deny Respondents, in particular, due process and to guarantee the imposition of death. That delay alone is harm, and that harm will only be magnified if this Court enters a stay, where the government asserts such a doubtful entitlement to ultimate relief. *See Doggett v. United States*, 505 U.S. 647, 654; 656 (1992).

It is a matter of public record that Respondents were held incommunicado, without access to counsel, and tortured by the United States until being transferred to Guantanamo in September 2006. After the FBI took uncounseled statements from them in January 2007, the government proceeded to charge the Respondents capitally before a military commission, on nearly identical charges to the ones they face today. Those charges were withdrawn, however, because Respondents repeatedly sought to plead guilty, but were not permitted to do so because under the law at the time, they could not be sentenced to death after a guilty plea. *See* 10 U.S.C. § 949m(b)(1)(C) (Supp. 2008); House Subcommittee Hearing, "Justice for America," Serial No. 112–29, Apr. 5, 2011.[6]

Capital charges were brought again one year later, but only after Congress amended 10 U.S.C. § 949m to permit the imposition of death upon a plea of guilty.

---

[6] *Available at* https://perma.cc/Q3M9-K2QV

The legislative history indicates Congress took that action in direct response to Respondents' expressed desire to plead guilty. Rep. Trey Gowdy, "Trey Gowdy Introduces First Piece of Legislation," May 13, 2011.[7]

The decade following Respondents' second arraignment was a procession of delays caused by government malfeasance and misfeasance. Carol Rosenberg, *Why is the 9/11 Case Taking So Long?*, N.Y. Times, April 17, 2020. That includes a nearly two-year abatement after the FBI attempted to recruit defense team members as confidential informants. *United States v. Mohammed*, AE 292JJJJJ, Order, December 23, 2015.[8] It also includes the delay caused in 2018 when the former Secretary of Defense scuttled ongoing plea negotiations by firing the then-Convening Authority. *See* Charlie Savage, *Fired Pentagon Official Was Exploring Plea Deals for 9/11 Suspects at Guantánamo*, N.Y. Times, Feb. 10, 2018.

By the time plea negotiations began again in 2022, Respondents had been in United States custody for 21 years. For over 16 years, they have faced the threat of a death sentence. In that time, they have been advised three times, at least, by counsel, that they could enter a plea of guilty, and to obtain some finality in their case, only for the government to intervene at the last minute by deliberate changes in the Rules or personnel of the military commission. While Respondents do not

---

[7] *Available at* https://perma.cc/4GGG-PTWX

[8] *Available at* https://perma.cc/288W-5BTQ

seek sympathy, it is simply false that they will suffer no harm from yet another false start and yet more delay. *Cf. United States v. Harper*, 729 F.2d 1216, 1223 (9th Cir. 1984) ("Enduring a trial that entails the possibility of a death penalty imposes a hardship 'different in kind' from enduring the discomfiture of any other trial. The emotional stress and strain of a trial in a capital case are extreme in character and *sui generis*.").

### III.    A STAY IS NOT IN THE PUBLIC INTEREST.

The government's plea for this Court's eleventh-hour intervention is profoundly contrary to the interest of justice. The victims, the defendants, and American people deserve finality in a case that has hung open for a quarter century. They deserve their long delayed day in court.

The government simply misrepresents the facts when it seeks to persuade this Court that if Respondents plead guilty, "the government and the public will lose the opportunity for a public trial." Mot. 21. As an initial matter, Respondents can plead guilty at any time under the MCA, and if they do so, there will equally be no trial on the merits. But whether they do so pursuant to pretrial agreements, or on their own initiative, the government and the public will have the same entitlement to a public trial.

Under the MCA, *every* sentence must be imposed by a military jury (i.e. the "members"). Unlike the federal system, where sentences are computed based on

guidelines, the members will have discretion to impose any sentence short of death. As counsel for the government represented to the military commission just this morning:

> [W]e envision a several-month presentation with all of this evidence to establish the historical record. That was always our intention. … There's now hundreds of people that are now interested and on the list of those who our Victim/Witness Assistance Program reaches out to on a daily basis for updates that we're going to now talk to and determine whether or not they do want to give any victim impact testimony, whether that's in a video form, whether that's in written form.

*United States v. Mohammed*, et al., Unofficial/Unauthenticated Record of Trial, at 51684-51685 (January 8, 2025).[9] The only thing that is truly at stake, therefore, is whether Respondents will face the prospect of the death penalty.

The remote and wholly speculative nature of that possibility is why counsel for the government told the victims, when the pretrial agreement was finalized, that "it is our collective, reasoned, and good-faith judgment that this resolution is the best path to finality and justice in this case." Rugh, Letter to the Families of the September 11, 2001 Victims. It is also why victims, members of the public, and lawmakers alike have come out in favor of it. *See*, *e.g.*, Ted Olsen, *The 9/11 Plea Deals Should Go Forward, Washington Post*, August 14, 2024; Natalie Orpett, *The 9/11 Plea Deals were the Only Way Out*, Lawfare, August 12, 2024; Carol

---

[9] *Available at* https://perma.cc/8CM6-C6GX

Rosenberg, *Durbin Urges Settlement for Accused 9/11 Plotters*, N.Y. Times, December 4, 2024.

To be sure, there are victims and members of the public who would rather hold out for what history indicates will be additional decades before any finality is achieved in this case in the hope that a death sentence might be imposed. *See*, *e.g.*, Sen. Tom Cotton, "Cotton, McConnell, Lawler Reintroduce Bill to Stop Joe Biden from Releasing 9/11 Terrorists," January 8, 2025.[10] But disagreement over what is in the interest of justice demonstrates only one thing clearly: It is not in the interest of justice for this Court to take a side. And it is not in the interests of justice to delay finality any longer. *See* Carol Rosenberg, *Twists and Turns in Sept. 11 Plea Process Are Agonizing, Families Say*, N.Y. Times, November 22, 2024 ("No matter whether they prefer a trial or swift resolution, relatives of victims of the attacks consider the on-again, off-again plea deal to be cruel.").

---

[10] *Available at* https://perma.cc/ZD4W-V64Z

## CONCLUSION

Respondent respectfully asks this Court to deny the government's motion for a stay. The government has no likelihood of success on the merits and the balance of equities strongly disfavors last minute intervention by this Court to further delay the resolution of this case.

Respectfully submitted,

Walter B. Ruiz
Suzanne M. Lachelier
Sean M. Gleason
Maj. Kerry A. Mawn, JA, USAF
Maj. Patrick C. Tipton, JA, USAF
Military Commission Defense
Organization
1620 Defense Pentagon
Washington, DC 20301-1620

*Counsel for Respondent,*
*Mustafa Al Hawsawi*

/s/    Michel Paradis
Michel Paradis
Gary Sowards
Denny LeBoeuf
Delphine Lourtau
Nicholas McCue
Gabriela McQuade
Melanie Partow
Maj. Michael Leahy, USAF
Maj. Elspeth Theis, USAF
LT William Xu, JAGC, USN
Military Commission Defense
Organization
1620 Defense Pentagon
Washington, DC 20301-1620
michel.d.paradis.civ@mail.mil
1.703.695.4672

*Counsel for Respondent,*
*Khalid Sheikh Mohammed*

## CERTIFICATE OF COMPLIANCE WITH RULE 27

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This petition complies with the type-volume limitations sought by motion this same day because:

[X] this petition contains 7,414 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this petition uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style; *or*

[ ] this petition has been prepared in a monospaced typeface using _____ with _____.

Dated: January 8, 2025

Respectfully submitted,

/s/ Michel Paradis
*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2025, a redacted copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of this Court's electronic filing system. Parties may access this filing through the Court's system. A copy under seal was directly emailed to counsel for the government at the Office of the Solicitor General's dropbox.

Dated: January 8, 2025

Respectfully submitted,


/s/ Michel Paradis
*Counsel for Respondent*