[ORAL ARGUMENT NOT SCHEDULED]
No. 25-1009

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

In re UNITED STATES, Petitioner

_____

ON PETITION FOR A WRIT OF MANDAMUS AND PROHIBITION

_____

PETITIONER'S REPLY IN SUPPORT OF EMERGENCY MOTION
FOR A STAY PENDING A RULING ON THE PETITION FOR A WRIT OF
MANDAMUS AND PROHIBITION AND FOR AN ADMINISTRATIVE STAY
PENDING DISPOSITION OF THE STAY MOTION

MATTHEW G. OLSEN
Assistant Attorney General
  for National Security

BRIAN H. FLETCHER
Principal Deputy Solicitor General
U.S. Department of Justice
Washington, D.C. 20530

**Table of Contents**

Page

Introduction .................................................................................................. 1

   I.   The Government Is Likely to Succeed on the Merits ................................... 3

       A. This Court Has Jurisdiction ................................................................. 3

       B. The Government Lacks an Adequate Alternative Avenue for Relief ....... 4

       C. The Government Has a Clear and Indisputable Right to Relief ............... 5

       D. Issuance of the Writ Is Appropriate Under the Circumstances ................ 9

  II.   The Balance of Harms and the Public Interest Strongly Favor a Stay ......... 11

Conclusion .................................................................................................. 12

Certificate of Compliance ............................................................................ 13

Certificate of Service ................................................................................... 14

# INTRODUCTION

Absent a stay, the military commission is poised to enforce respondents' pretrial agreements despite the Secretary of Defense's withdrawal. The agreements would prevent a full public trial of the alleged mastermind of the September 11 attacks and two of his alleged co-conspirators and preclude the imposition of capital sentences for crimes including the murder of nearly 3,000 people. The Secretary—who has ultimate responsibility for and authority over the military commissions system—determined that those agreements would not be an appropriate resolution of these exceptionally important prosecutions. He therefore withdrew from the agreements just two days after they were entered, consistent with a rule expressly authorizing withdrawal "at any time before the accused begins performance of promises contained in the agreement." Rule for Military Commissions (R.M.C.) 705(d)(4)(B).

The USCMCR denied relief solely because it held that respondents had begun to perform before the Secretary withdrew. Our motion explained why that holding was clearly and indisputably wrong, and respondents fail to rehabilitate it. Indeed, Bin 'Attash does not even try to defend the USCMCR's reasoning. And although Mohammad and Hawsawi repeat the USCMCR's terse analysis of performance, they fail to grapple with the plain text of the agreements and the rule.

1

Respondents' other legal arguments likewise lack merit. As the USCMCR concluded, the Secretary clearly had authority to withdraw Convening Authority Escallier's delegated authority over pretrial agreements and to reserve that authority for himself as superior convening authority. This Court has jurisdiction over the government's mandamus petition, the government has no other adequate avenue for relief, and mandamus is appropriate under the circumstances.

Departing from the law, respondents argue at length that the withdrawn agreements would have provided for a better resolution of these prosecutions than continued litigation. That is a policy question on which reasonable minds can (and do) differ. But Congress charged the Secretary—not respondents or the courts—with responsibility for resolving it. The lower courts countermanded the Secretary's considered judgment based on a plain misapplication of Rule 705(d)(4)(B). That clear and consequential legal error in this extraordinarily important case warrants the extraordinary remedy of mandamus. And this Court should stay the commission's proceedings to the extent necessary to preserve its ability to grant mandamus relief.[1]

---

[1] The government clarifies that it does not seek a stay of all proceedings before the commission; instead, it seeks to stay only proceedings to enforce the withdrawn plea agreements and accept respondents' pleas. *Cf.* Mot. 2. That limited stay would not affect the proceedings involving Ali Abdul Aziz Ali. Mr. Ali's motion to intervene to oppose a broader stay is therefore unnecessary.

## I. The Government Is Likely to Succeed on the Merits

This Court has jurisdiction to grant the government's petition for a writ of mandamus, and the government has satisfied all three requirements for that relief: It lacks any adequate alternative means of review; it has a clear and indisputable right to relief; and issuance of the writ is appropriate under the circumstances.

### A. This Court Has Jurisdiction

This Court has "jurisdiction to determine the validity of a final judgment rendered by a military commission" following review by the USCMCR. 10 U.S.C. § 950g(a). The All Writs Act authorizes federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). The Court has thus repeatedly held that it has jurisdiction to issue a writ of mandamus to a military commission. *See, e.g.*, *In re al-Nashiri*, 791 F.3d 71, 75-76 (D.C. Cir. 2015).

Respondents resist that straightforward conclusion by asserting (Mohammad Opp. 18-22) that this Court cannot grant mandamus relief to the government because the government cannot appeal to this Court under Section 950g. That is doubly wrong. Section 950g does not limit the parties who can seek this Court's review, and it expressly provides for review of a conviction "affirmed *or set aside as incorrect in law* by the [USCMCR]"—making clear that the

3

government can seek review of adverse USCMCR decisions. 10 U.S.C. § 950g(d) (emphasis added); *see* R.M.C. 1205(b) ("The government may petition for review of the decision of the [USCMCR]."). And in any event, respondents err in presuming that mandamus can be sought only by a party that could appeal after final judgment. To the contrary, "once there has been a proceeding of *some* kind that *might* lead to an appeal"—a condition clearly satisfied here—this Court has jurisdiction to grant mandamus "however prospective or potential" an appeal might be. A*l-Nashiri*, 791 F.3d at 76 (citation and alterations omitted).

**B. The Government Lacks an Adequate Alternative Avenue for Relief**

Our motion explained (at 9-10) that the government lacks an adequate alternative avenue for relief because the military commission's order scheduling entry of respondents' pleas is not subject to either interlocutory or final-judgment appeal. Respondents do not dispute that an interlocutory appeal is unavailable. But they assert (Mohammad Opp. 24) that the government should allow the pleas to be entered, wait for the commission to enter a final decision, and then try to appeal to this Court after respondents waive review by the USCMCR. But respondents cite no precedent for a government appeal in such circumstances. *Cf.* 10 U.S.C. § 950f(c) (USCMCR review is limited to matters "raised by the accused"). They also do not address the serious practical and legal difficulties of

4

attempting to unwind pleas at that late stage—including the double-jeopardy issues. *See* Mot. 20-21. In any event, this Court has recognized that the first *Cheney* condition does not require a petitioner to show it has *no* post-judgment appellate rights; instead, a petitioner must show that it lacks an "adequate" alternative means of securing relief. *In re Mohammad*, 866 F.3d 473, 475 (D.C. Cir. 2017) (citation omitted). At a minimum, any post-judgment review potentially available to the government would not be an adequate means of remedying the harms that would result if the commission accepted pleas based on the withdrawn agreements. *Cf. In re Al-Nashiri*, 921 F.3d 224, 238 (D.C. Cir. 2019).

**C. The Government Has a Clear and Indisputable Right to Relief**

Respondents fail to muster any persuasive defense of the USCMCR's holding that they had performed promises in their plea agreements before the Secretary withdrew. And respondents' assertion that the Secretary lacked authority to replace Convening Authority Escallier as the convening authority for pretrial agreements—an assertion the USCMCR emphatically rejected—rests on a misunderstanding of the Secretary's actions.

1. Bin 'Attash does not address the merits at all, instead asserting (Opp. 1) that the government "cannot possibly" establish a clear and indisputable right to relief when "four out of four judges to have considered the matter" have disagreed

5

with its position. We recognize that the "clear and indisputable" standard is a high bar—but it is objective, not subjective. Reviewing courts must determine whether it is met based on their assessment of the law, not by counting the votes of other judges. For example, in *Hollingsworth v. Perry*, 558 U.S. 183 (2010), the Supreme Court found that standard likely satisfied even though four lower court judges (and four Justices) disagreed. *See id.* at 188, 190.

Relatedly, Bin 'Attash asserts (Opp. 3-4) that the military courts are entitled to deference on matters of military law. The views of experienced military judges are of course entitled to respectful consideration, but Congress has vested this Court with the authority and responsibility to review the decisions of the commissions and the USCMCR. And this case turns not on any specialized question of military law, but rather on the plain meaning of the straightforward text of Rule 705(d)(4)(B) and the relevant provisions of the agreements.

2. Echoing the USCMCR, Mohammad and Hawsawi briefly assert (Opp. 11-13) that they began "performance of promises contained" in their agreements within the meaning of Rule 705(d)(4)(B) when they signed stipulations and refrained from questioning witnesses at a hearing. Neither argument has merit.

First, respondents signed the stipulations at the same time as their plea offers, *before* Convening Authority Escallier accepted the offers. The stipulations

6

thus cannot have constituted the performance of any "promise[]," a term that by definition refers to *future* action. Mot. 15-16. Respondents ignore that point, which is dispositive. And respondents' contrary view would deprive Rule 705(d)(4)(B) of practical effect: We are informed by the Department of Defense that in the military justice system, it is overwhelmingly common for a stipulation of fact to be signed before or contemporaneously with the convening authority's acceptance of a pretrial agreement. If respondents were correct that signing such a stipulation constitutes performance, Rule 705(d)(4)(B)'s express authorization of withdrawals "at any time" before performance would have little effect.

Second, respondents assert (Mohammad Opp. 12) that they performed a promise when they refrained from questioning witnesses at an August 1 hearing. But respondents do not attempt to reconcile that assertion with the plain text of the relevant provision of the agreements, which contained no such promise. *See* Mot. 17-18. Instead, they assert that the prosecution took the position at the hearing that the agreements barred them from questioning witnesses. But even if that were true, the prosecutor's statements during a hearing could not overcome the unambiguous terms of the agreements. In any event, respondents overread the exchange on which they rely: The parties and the commission were discussing the future course of proceedings and whether respondents' case should be severed

7

from that of a co-accused who was proceeding to trial. *See* Unofficial/ Unauthenticated Military Commission Transcript at 49,317-49,318 (Aug. 1, 2024). The prosecution stated that "with the waiver of all motions from three of the four accused, they can't actively continue to participate in the litigation based on the pretrial agreement." *Id.* That general statement about future proceedings should not be understood as a concession that refraining from questioning witnesses that day would constitute performance of a promise within the meaning of Rule 705(d)(4)(B).[2]

3. Respondents assert (Mohammad Opp. 14-17) that the Secretary lacked power to reserve for himself authority relating to pretrial agreements while otherwise maintaining his delegation to Convening Authority Escallier. The USCMCR correctly rejected that argument, explaining that the applicable statutes, rules, and precedent make clear that the Secretary may reserve authority over aspects of a proceeding—including pretrial agreements. *See* Exhibit B to the Petition for Mandamus and Prohibition 13-15, 18.

---

[2] Respondents also briefly suggest (Mohammad Opp. 13) that they performed by negotiating so-called "red-boxed letterhead memoranda." But as our motion explained (at 14-15), those negotiations were *part of* the pretrial agreement; they were not promises contained in the agreement.

Respondents' contrary argument rests on a misunderstanding of the Secretary's actions. They cite (Mohammad Opp. 14-16) a provision of the Regulation for Trial by Military Commission specifying that the convening authority has the "sole discretion" to decide whether to approve a pretrial agreement, R.T.M.C. ¶ 12-1, and decisions of this Court recognizing that a convening authority's decision to enter into a pretrial agreement is not directly reviewable. But the Secretary did not purport to control Convening Authority Escallier's exercise of her authority, or to directly review her decision. Instead, he withdrew her previously delegated authority over pretrial agreements and then—in a subsequent and independent exercise of his own authority—withdrew from the agreements she had entered. That step was expressly authorized by Rule 705(d)(4)(B), which presupposes that it is permissible for a convening authority to "withdraw" from a pretrial agreement that had already been entered.

**D. Issuance of the Writ Is Appropriate Under the Circumstances**

Respondents provide no sound reason to doubt that issuance of the writ is appropriate under the extraordinary circumstances of this case. They do not and could not dispute the importance of this prosecution. And neither their criticisms of the government's litigation decisions nor their disagreement with the

9

Secretary's considered judgment about the appropriate path forward for these prosecutions provides a valid reason to deny relief.

First, respondents note that the commission has scheduled hearings for tomorrow and seek to portray the government's petition and motion as a request for "eleventh-hour intervention." Mohammad Opp. 30. But the government has diligently pursued its rights: It sought relief from the USCMCR promptly after the commission issued its decision; sought relief from this Court eight days after the USCMCR acted (a period that included New Years Day and government closures); and has sought continuances from the commission in an effort to provide more time for review. Given the actions of the lower courts, respondents do not explain how the government could have avoided the need to seek emergency relief.[3]

Second, Bin 'Attash asserts (Opp. 4-5) that mandamus relief is not warranted because the Secretary could have reserved the authority to enter pretrial agreements at the outset or withdrawn it before the agreements at issue here were

---

[3] Bin 'Attash errs in asserting (Opp. 1 n.2) that the government should have sought relief from this Court "before the [USCMCR] issued its ruling." Mandamus relief is available only when a party has "no other adequate means to attain the relief he desires." *United States v. Fokker Services B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (citation omitted). The government thus could not have sought relief while its request was still pending before the USCMCR.

entered.  But by its terms, R.M.C. 705(d)(4)(B) allows a convening authority—including the Secretary—to "withdraw" from a pretrial agreement that has already been entered.  And if ever there was an occasion where a superior convening authority could choose to exercise that authority, it was here:  The Secretary, as the officer charged by Congress with ultimate responsibility for the military commissions system, concluded that these pretrial agreements were not the appropriate disposition of the most significant cases in that system—the charges against the alleged plotters of the September 11 attacks.

Respondents disagree with that decision, and with other aspects of the government's handling of these cases.  They also argue vigorously that the pretrial agreements would have provided the best resolution of these important and long-running prosecutions.  But those are arguments about the wisdom of the Secretary's policy choices—not reasons for this Court to withhold mandamus relief in the face of a clear legal error in a case of this significance.

## II. The Balance of Harms and the Public Interest Strongly Favor a Stay

If this Court concludes that the government is likely entitled to a writ of mandamus, it should enter a stay to preserve its ability to grant that relief.  Absent a stay, the commission is poised to accept respondents' pleas—a development that would likely make it impossible to unwind the pleas later, and thereby prevent the

11

Court from granting meaningful relief even if it would ultimately conclude that the government is entitled to a writ of mandamus. In contrast, respondents would suffer minimal prejudice from a relatively brief stay to allow this Court to resolve the government's mandamus petition. *See* Mot. 20-21. In contending otherwise (*e.g.*, Mohammad Opp. 26-32), respondents recycle their arguments against mandamus and presume that the government is not entitled to the relief it seeks. But respondents identify no sound reason to deny a stay if, as shown above, the government is likely to prevail on its underlying petition.

## CONCLUSION

This Court should stay the military commission proceedings to enforce the withdrawn plea agreements and accept respondents' pleas pending resolution of the government's petition for a writ of mandamus and prohibition.

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General
  for National Security

 */s/ Brian H Fletcher*
BRIAN H. FLETCHER
Principal Deputy Solicitor General
U.S. Department of Justice
Washington, D.C. 20530

CERTIFICATE OF COMPLIANCE WITH VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the volume limitation of Fed. R. App. P. 27(d)(2) because it contains 2,550 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style.

DATED: January 9, 2025

                                          */s/ Brian H. Fletcher*
                                          Brian H. Fletcher

CERTIFICATE OF SERVICE

      I certify that, on January 9, 2025, I electronically filed this Reply with the Clerk of the Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                           */s/ Brian H Fletcher*
                                           Brian H. Fletcher