**ORAL ARGUMENT SCHEDULED JANUARY 28, 2025**

**No. 25-1009**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

In re UNITED STATES, Petitioner.

_____

**REPLY IN SUPPORT OF PETITION FOR
A WRIT OF MANDAMUS AND PROHIBITION**

_____

BRETT A. SHUMATE
  Acting Assistant Attorney
  General, Civil Division

MARK R. FREEMAN
MELISSA N. PATTERSON
  Attorneys, Appellate Staff
  Civil Division, Room 7259
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-1201

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................... 1

ARGUMENT ..................................................................................... 3

    A.    The Government Lacks An Adequate Alternative
        Avenue For Relief ............................................................... 3

    B.    The Government Has A Clear And Indisputable
        Right To Relief ................................................................... 6

        1.    The Secretary Withdrew Before Respondents
                Began Performing Any Promise In The
                Agreements ............................................................. 7

        2.    The Secretary Had Authority To Withdraw
                From The Agreements ............................................ 15

    C.    Issuance Of The Writ Is Appropriate Under The
        Circumstances ................................................................. 18

CONCLUSION ................................................................................ 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*Al Baluchi, In re,*
   952 F.3d 363 (D.C. Cir. 2020) ................................................................ 5

*Al-Nashiri, In re,*
   921 F.3d 224 (D.C. Cir. 2019) ................................................................ 3

*Mohammad, In re,*
   866 F.3d 473 (D.C. Cir. 2017) ................................................................ 3

*Sundel v. United States,*
   985 F.3d 1029 (D.C. Cir. 2021) .............................................................. 5

*United States, In re,*
   872 F.2d 472 (D.C. Cir. 1989) .............................................................. 15

*United States v. Dean,*
   67 M.J. 224 (C.A.A.F. 2009) ...................................................... 10, 11, 15

*United States v. McIntosh,*
   580 F.3d 1222 (11th Cir. 2009) .............................................................. 6

**Statutes:**

10 U.S.C. § 948h ................................................................................ 17

10 U.S.C. § 949h(b) ............................................................................. 6

10 U.S.C. § 950b(c)(3)(A) ...................................................................... 6

10 U.S.C. § 950c(b)(3) .......................................................................... 6

10 U.S.C. § 950d (2009) ........................................................................ 4

10 U.S.C. § 950d(a) .............................................................................. 4

10 U.S.C. § 950d(a)(1) .......................................................................... 4

10 U.S.C. § 950d(d) (2006) .................................................................... 4

10 U.S.C. § 950f(c) .............................................................................. 5

10 U.S.C. § 950g(a) ................................................................ 4

**Other Authorities:**

*Restatement (Second) of Contracts*:
  § 1 cmt. d ...................................................................... 9
  § 2 ................................................................................ 10

Rule for Military Commissions:
  R.M.C. 103(a)(10) .........................................................17
  R.M.C. 401(a)..............................................................17
  R.M.C. 705(a) ..............................................................17
  R.M.C. 705(d)(3) ..........................................................16
  R.M.C. 705(d)(4)(A) ......................................................9
  R.M.C. 705(d)(4)(B) ................................. 1, 2, 7, 8, 10, 14, 15, 16, 19

# GLOSSARY OF ABBREVIATIONS

USCMCR – United States Court of Military Commission Review

R.M.C. – Rules for Military Commissions

**INTRODUCTION**

The pretrial agreements at issue here would prevent a full public trial of the alleged mastermind of the September 11 attacks and two alleged co-conspirators and preclude capital sentences for the murder of nearly 3,000 people.  The Secretary of Defense—who has ultimate responsibility for and authority over the military-commissions system—concluded that those agreements would not appropriately resolve these exceptionally important prosecutions.  He therefore withdrew from the agreements just two days after they were entered, consistent with a rule authorizing withdrawal "at any time before the accused begins performance of promises contained in the agreement."  Rule for Military Commissions (R.M.C.) 705(d)(4)(B).

The U.S. Court of Military Commission Review (USCMCR) denied relief solely because it held that respondents began to perform before the Secretary withdrew.  That holding was clearly and indisputably wrong, and respondents fail to rehabilitate it.  They principally rely on their entry into factual stipulations and certain other negotiated terms, but those stipulations and terms were offered as—and became—part of the pretrial agreements themselves; they were not the performance of any forward-looking promise.  Respondents also assert that they performed by declining to question one

witness the day after the agreements were entered.  But that argument cannot be reconciled with the agreements' plain text.

Respondents' other legal arguments likewise lack merit.  As the USCMCR concluded, the Secretary clearly had authority to withdraw Convening Authority Escallier's delegated authority over pretrial agreements and to reserve that authority for himself as superior convening authority—thus entitling him to exercise the withdrawal authority R.M.C. 705(d)(4)(B) expressly confers on a convening authority.  The government has no other adequate avenue for relief, and mandamus is appropriate because the lower courts' decisions have improperly curtailed the Secretary's authority over these exceptionally consequential prosecutions.

Departing from the law, respondents argue at length that the withdrawn agreements provide a better resolution than continued litigation. That is a policy question on which reasonable minds can (and do) differ.  But Congress charged the Secretary—not respondents or the courts—with responsibility for resolving it.  The lower courts countermanded the Secretary's considered judgment by misapplying R.M.C. 705(d)(4)(B).  That clear and consequential error in this extraordinarily significant case warrants the extraordinary remedy of mandamus.

## ARGUMENT

### A. The Government Lacks An Adequate Alternative Avenue For Relief.

This Court has recognized that a petitioner need not show it has *no* appellate rights that might obviate the need for mandamus; instead, the question is whether the petitioner has an "adequate" alternative means of securing relief. *In re Mohammad*, 866 F.3d 473, 475 (D.C. Cir. 2017). Respondents' speculations regarding appellate review potentially available to the government would not adequately forestall or remedy the harms from the commission's acceptance of pleas based on withdrawn agreements. *Cf. In re Al-Nashiri*, 921 F.3d 224, 238 (D.C. Cir. 2019).

As our petition explained (at 9-10), the military commission's order scheduling entry of respondents' pleas is not subject to either interlocutory or final-judgment appeal. Respondents offer conflicting responses: Bin 'Attash asserts (Opp'n 22-25) that an interlocutory appeal "likely" would have been available, whereas Mohammad and Hawsawi assert (Opp'n 8) that the government instead must await a "final military commission judgement[]" and seek to appeal then. Neither of those conflicting proposals offers an adequate alternative avenue for relief.

3

First, the United States could not have pursued an interlocutory appeal in this Court; the government may seek such review only in the USCMCR. *See* 10 U.S.C. § 950g(a) (limiting this Court's review to "a final judgment").[1] And in the USCMCR, interlocutory review is limited to four circumstances not applicable here. *Id.* § 950d(a); *see* Pet. 10. Tellingly, Bin 'Attash identifies no text in Section 950d(a) that covers orders invalidating the withdrawal of plea agreements, and he stops short of asserting that an interlocutory appeal actually would be available.[2] Rather, he predicts (Opp'n 23) the government "likely" could obtain such relief. But precisely because "it is far from clear that" the government "could even seek the relief [respondents] imagine[]," the government lacks "'other *adequate* means' to

---

[1] Congress eliminated the United States' ability to appeal the USCMCR's interlocutory-appeal decisions to this Court. *Compare* 10 U.S.C. § 950d(d) (2006) (permitting government appeals to this Court from any "adverse ruling on an appeal" to the USCMCR), *with* 10 U.S.C. § 950d (2009) (omitting such language).

[2] Bin 'Attash asserts (Opp'n 23-25) the government could have invoked Section 950d(a)(1), which permits interlocutory review of an order "terminat[ing] proceedings of the military commission with respect to a charge or specification." But the military commission's order scheduled entry of pleas; it did not "terminate[]" any proceedings. 10 U.S.C. § 950d(a)(1).

attain the relief [it] seeks." *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020).

For similar reasons, Bin 'Attash's reliance (Opp'n 23-24) on policy rationales behind a differently worded jurisdictional statute governing civilian proceedings underscores that the government lacks adequate relief here. This Court has emphasized that such jurisdictional statutes and their "practical construction" do not control when Congress chose different text for military commissions. *Sundel v. United States*, 985 F.3d 1029, 1032 (D.C. Cir. 2021) (distinguishing "other jurisdictional statutes" from "the military commission context, [where] Congress took a narrower approach and allowed appeals only from judgments" (citation omitted)).

Second, Mohammad and Hawsawi assert (Opp'n 8-10) that the government should allow the pleas' entry, wait for the commission's final decision, and then try to appeal to this Court after respondents waive USCMCR review. But respondents cite no precedent for such a government appeal. *Cf.* 10 U.S.C. § 950f(c) (limiting USCMCR review to matters "raised by the accused"). Nor do respondents meaningfully address the difficulties of attempting to unwind pleas at that late stage. Mohammad and Hawsawi insist (Opp'n 8) the government could seek final-judgment appeal "within a

5

relatively short time" after they submit "waiver[s] of CMCR review," but those waivers are due *after* respondents plead guilty, allocute, receive sentences, and the convening authority takes action on the sentences, *see* 10 U.S.C. §§ 950c(b)(3), 950b(c)(3)(A).  And even were the government to prevail after final judgment, respondents would presumably assert prejudice in facing trial on the same charges to which they had publicly admitted guilt.[3]

**B.    The Government Has A Clear And Indisputable Right To Relief.**

The USCMCR's holding that respondents had performed promises in their plea agreements before the Secretary withdrew is untenable, and respondents offer no persuasive defense.  And respondents' assertion that the Secretary lacked authority to replace Convening Authority Escallier as the convening authority for pretrial agreements rests on a misunderstanding of the Secretary's actions and the relevant legal principles.  Indeed, the USCMCR emphatically rejected that assertion.  Pet. Ex. B. at 13-15, 18.

---

[3] The Double Jeopardy Clause could present additional obstacles.  *See* Stay Mot. 20-21.  Respondents (Mohammad Opp'n 9-10) cite cases and a statutory provision, 10 U.S.C. § 949h(b), addressing when jeopardy attaches *at trial*, but "a different rule applies when" defendants choose "not to proceed to trial," and courts have held that jeopardy "'normally attaches when the court unconditionally accepts a guilty plea,'" *United States v. McIntosh*, 580 F.3d 1222, 1227 (11th Cir. 2009).

### 1. The Secretary Withdrew Before Respondents Began Performing Any Promise In The Agreements.

R.M.C. 705(d)(4)(B) provides that "[t]he convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement." That provision recognizes the convening authority's wide discretion to withdraw so long as the accused has not yet begun performing on the agreement. That discretion is limited only once an accused's performance begins, because only then has the accused relied on an agreement, potentially in ways that may not be undone even if the agreement itself is nullified. Here, respondents assert they began performing promises in the agreement by signing factual stipulations, by waiving objections to what the parties call "Letterhead Memoranda," and by refraining from questioning a witness. Each of those arguments lacks merit, and respondents' other attempts to insulate the lower courts' holdings from review are likewise unpersuasive.

a. *Stipulations.* As our petition explained (at 16-18), signing the factual stipulations was not the "performance" of any "promise[] contained in the agreement[s]" because a "promise" is a forward-looking commitment to take some future action. Here, respondents did not promise to sign the

7

stipulations in the future, *i.e.*, after acceptance of the agreement and as part of their performance under it.  Instead, respondents signed the stipulations as part of the *proposed* pretrial agreements, *before* those agreements were ever presented to or accepted by Convening Authority Escallier.

The agreements themselves recognize this order of operations.  Each agreement specifies that the accused "agrees to enter into the Stipulation of Fact included as Attachment A to this Pretrial Agreement" and defines the "provisions that represent the entire agreement" to include the stipulation.  Pet. Ex. D ¶¶ 6, 63 (Mohammad); *see id.* ¶ 62 ("[T]he Convening Authority's acceptance of this Offer, *including Attachments A – C*, will transform this Offer into an Agreement binding upon [the accused] and the Government.") (emphasis added); *see also* Pet. Ex. E ¶¶ 6, 56-57 (Bin 'Attash); Pet. Ex. F ¶¶ 6, 59-60 (Hawsawi).

Respondents are therefore mistaken in arguing that, by signing the stipulations *before* Convening Authority Escallier accepted the offers and transformed them into agreements, respondents "beg[an] performance of promises contained in the agreement[s]."  R.M.C. 705(d)(4)(B).  The agreements did not exist when respondents signed the stipulations.  Nor, in any event, does it make sense to conceptualize the stipulations as performed

8

"promises" in any contractual sense.  Under the agreements, respondents can withdraw at any time prior to the military judge's acceptance of their pleas, and if they do, the stipulations cannot be used to establish respondents' guilt.  *See* Pet. Ex. D ¶¶ 44, 47; *see also* Pet. Ex. E ¶¶ 42, 44; Pet. Ex. F ¶¶ 43, 45; R.M.C. 705(d)(4)(A).  Indeed, because the stipulations are part of the agreements themselves, they will have no legal effect at all if the Court grants this petition and effectuates the Secretary's withdrawal from those agreements.

Respondents observe (Mohammad Opp'n 14) that the stipulations were "material term[s]" of the agreements; that the prosecution would not have entered into the agreements without the stipulations; and that they signed the stipulations with the expectation that Convening Authority Escallier would accept them.  That is all beside the point.  "In many situations other acts in addition to the making of a promise are essential" to the formation of a contract, and such formation "is not completed until those acts take place." *Restatement (Second) of Contracts* § 1 cmt. d.  "[A]n act may be done as the *consideration* for a contract"—for example, the payment of money, or, here, the execution of an agreement not to dispute particular facts.  *Id.* (emphasis added).  That such actions may be material to contract formation does not

9

transform them into "promise[s]," which are "manifestation[s] of intention to act or refrain from acting in a specified way" *in the future. Id.* § 2. When it refers to "begin[ning] performance of promises contained in the agreement," R.M.C. 705(d)(4)(B) clearly uses the term "promise" in this sense.

Respondents' contrary reading would effectively nullify the Rule's express grant of authority to the Convening Authority to withdraw "at any time" before performance begins. In every pretrial agreement, the accused agrees to "material term[s]" (Mohammad Opp'n 14), often including factual stipulations. *See* Stay Reply 7. If the mere agreement to such terms constituted performance of a promise under R.M.C. 705(d)(4)(B), the Rule's authorization of withdrawals before performance would have no practical effect; an accused's performance would always begin the moment he signs the agreement.

Respondents wrongly assert (Mohammad Opp'n 13-14; Bin 'Attash Opp'n 13-17) that *United States v. Dean*, 67 M.J. 224 (C.A.A.F. 2009), compels the conclusion they began performing by signing the stipulations. In *Dean*, the convening authority did not attempt to withdraw until nearly a month after the agreement was entered, during which time the accused "filed an amended witness list which complied with two separate promises he

10

made." *Id.* at 228; *see id.* at 226.  Respondents rely on *Dean*'s statement that the accused also began performance by electing trial by military judge alone before entering into the agreement and by signing a factual stipulation that accompanied his offer to enter into the agreement.  *See id.* at 228.  But those statements were not necessary to the court's decision, and the court made no attempt to explain how an accused "could, as a matter of military or contract law, begin performing on a contract that had not yet been signed by the convening authority and that had not entered into force." *Id.* at 231 (Baker, J., dissenting).  Respondents do not cite any decision, from any court, explaining how an accused can start performing a promise in a pretrial agreement by entering into a stipulation made as part of the pre-agreement offer to the prosecution and incorporated into the agreement itself.

      b.    *Letterhead Memoranda.*  Mohammad and Hawsawi assert (Opp'n 15-17) that they performed by negotiating "an acceptable version of their respective [Letterhead Memoranda] which can be offered against them in presentencing proceedings."  Pet. Ex. A at 26.  Respondents assert (Mohammad Opp'n 16) that in so doing, they "waived" a "substantial and colorable claim" that these memoranda are inadmissible.  But as our petition explained (at 15-16), that argument suffers from the same fundamental flaw

11

as respondents' argument regarding the stipulations: The agreements about the Letterhead Memoranda, including the waiver of objections to their admission, were part of respondents' offer to the Convening Authority, which became aspects of the pretrial agreements themselves—not the performance of any promise contained in those agreements. Like the stipulations, these Letterhead Memoranda were expressly incorporated into the respondents' offer and the resulting agreements. *See* Pet. Ex. D ¶¶ 12(ii), 12(ix), 63 & nn. 2-3 (Mohammad); Pet. Ex. E ¶¶ 12(b), 57 & n.2 (Bin 'Attash); Pet. Ex. F ¶¶ 12(ii), 60 & n.2 (Hawsawi). And like the stipulations, respondents' waiver of their objections to these memoranda will thus have no effect if the Secretary's withdrawal from the agreements is effectuated.

     c.    *Participation in the August 1 hearing.* Respondents maintain (Mohammad Opp'n 17-20; Bin 'Attash Opp'n 18-20) that they performed a promise by refraining from questioning a witness at a single hearing on August 1, 2024, the day after Convening Authority Escallier accepted the pretrial agreements. But as our petition explained (at 18-19), respondents nowhere promised to refrain from questioning witnesses. Instead, the relevant provision of the agreements states that "*[u]pon entry and acceptance of the Accused's guilty plea* pursuant to this agreement, the

12

Accused knowingly, voluntarily, and expressly waives all waivable motions."
Pet. Ex. D. ¶ 23 (Mohammad) (emphasis added); Pet. Ex. E ¶ 22 (Bin
'Attash) (similar); Pet. Ex. F. ¶ 23 (Hawsawi) (similar).  The agreements also
provide that "[t]he Accused further agrees not to make any future motions,
except ones relating to procedural or scheduling matters, and to move to
withdraw all pending motions."  *Id.*; *see* Pet. Ex. E ¶ 22 (Bin 'Attash)
(similar); Pet. Ex. F. ¶ 23 (Hawsawi) (similar).  Even assuming those
promises were effective before respondents pleaded guilty, respondents did
not perform them.  They never moved to withdraw their pending motions,
and they do not identify any "future motions" that they abstained from filing
in the two days before the Secretary's action.[4]

Respondents make little effort to ground their contrary argument in
the agreements' text.  Instead, they assert (*e.g.*, Mohammad Opp'n 18) that
the prosecution opined at the August 1 hearing that the agreements barred
them from questioning the witness.  Even if true, the prosecutor's

---

[4] Mohammad and Hawsawi briefly assert (Opp'n 17-18) that they
performed a promise when they refrained from filing motions in response to
incidents "which would ordinarily have been the subject [of] motions
practice."  But the cited incidents occurred in September 2024, more than six
weeks after the Secretary withdrew.  JA185; *see* JA187-192.  They are thus
irrelevant to respondents' performance before the withdrawal.

statements during a hearing could not overcome the agreements' actual language.  Regardless, respondents overread the exchange on which they rely.  The parties had just notified the commission of the agreements and were discussing the proceedings over the coming months as a co-accused proceeded to trial.  *See* JA143-144.  The prosecutor stated that respondents should remain parties to the case, but noted that "with the waiver of all motions from three of the four accused, they can't actively continue to participate in any of the contested litigation based on the pretrial agreement."  JA144-145.

That general statement about future proceedings is in no way a concession that refraining from questioning a single witness that day constituted performance of a promise under R.M.C. 705(d)(4)(B).  Furthermore, the commission specifically acknowledged that some intervening event might prevent it from accepting respondents' pleas and made clear that respondents would then be allowed to fully participate:  "[I]f for some reason I'm not able to accept a guilty plea from one of the accused and we've gone on with witness testimony, I'm going to give that team a chance to question that witness if they can demonstrate that they actually have additional matters to present."  JA146.  Respondents thus neither

14

performed any contractual promise by abstaining from questioning the witness on August 1 nor suffered any prejudice as a result.

d. *Remaining arguments.* Mohammad and Hawsawi assert (Opp'n 11) that the commission's holding regarding performance "was a finding of fact that is not reviewable via mandamus." But the issues here are legal, not factual. As Bin 'Attash acknowledges (Opp'n 1), "[t]he basic facts are undisputed" and consist almost entirely of the parties' filings and statements before the commission. Rather than any question of historical fact, the dispute instead concerns the meaning of R.M.C. 705(d)(4)(B) and the relevant agreement provisions. And both "[i]nterpretation of a pretrial agreement" and "interpretation of provisions of the [rules]" are "questions of law" reviewed "de novo." *Dean*, 67 M.J. at 227. Even a decision respondents rely on recognizes mandamus may be "appropriate to review [the] construction and application" of a rule of procedure. *In re United States*, 872 F.2d 472, 479 (D.C. Cir. 1989).

## 2. The Secretary Had Authority To Withdraw From The Agreements.

Respondents assert (Mohammad Opp'n 20-24; Bin 'Attash Opp'n 5-11) that the Secretary of Defense could not reserve authority relating to pretrial agreements while otherwise maintaining his delegation to Convening

15

Authority Escallier.  The USCMCR correctly rejected that argument, explaining that the applicable statutes, rules, and precedent make clear that the Secretary may reserve authority over aspects of a proceeding—including pretrial agreements.  *See* Pet. Ex. B at 13-15, 18.

Respondents' contrary arguments rest on a misunderstanding of the Secretary's actions.  They emphasize (Bin 'Attash Opp'n 5-6) R.M.C. 705(d)(3)'s statement that "[t]he decision whether to accept or reject an offer is within the sole discretion of the convening authority," and they imply (Mohammad Opp'n 21) that the Secretary improperly sought to "override" Convening Authority Escallier's exercise of that discretion, or otherwise improperly influence her.  But the Secretary did not purport to direct Convening Authority Escallier's exercise of her discretion, to directly review her action, or to retroactively deny effect to her decision.  Instead, he withdrew her previously delegated authority over pretrial agreements and then—in a subsequent and independent exercise of his own authority— withdrew from agreements she had entered.  That step was expressly authorized by R.M.C. 705(d)(4)(B), which presupposes that a convening authority may "withdraw" from an existing pretrial agreement.

16

Congress vested the authority to convene military commissions in the Secretary or his designee.  10 U.S.C. § 948h.  Consistent with that legislative choice, the Rules for Military Commissions specify that "the Secretary of Defense" may act as a "[c]onvening authority."  R.M.C. 103(a)(10); Pet. 11-12.  Respondents thus do not appear to deny that the Secretary could have retained the authority to act as the convening authority for these cases himself, either in the first instance or by withdrawing it from Convening Authority Escallier.  Instead, respondents appear to maintain that the Secretary could not reserve to himself authority over pretrial agreements alone.  But as the USCMCR explained, the Secretary is not only authorized to act as a convening authority, but also to "withhold the authority of a subordinate to dispose of charges in individual cases," R.M.C. 401(a), and to prescribe "limitations" on subordinate convening authorities' power to "enter into a pretrial agreement," R.M.C. 705(a).  *See* Pet. Ex. B at 13-15.  Thus, the Secretary clearly had "authority to act as convening authority to approve or disapprove [pretrial agreements] without taking all of the responsibilities of the convening authority."  *Id.* at 13.[5]

---

[5] The proposed intervenor focuses on "protections against command influence."  *E.g.*, Al Baluchi Opp'n 8-12.  But this Court need not and should

*Continued on next page.*

### C.    Issuance Of The Writ Is Appropriate Under The Circumstances.

Respondents provide no sound reason to doubt that an extraordinary writ is appropriate under these extraordinary circumstances.  They do not and could not dispute these prosecutions' importance.  And although they disagree with the Secretary's handling of these cases and his judgment about the appropriate path forward, those disagreements are not a valid basis for withholding relief.

First, respondents assert (Mohammad Opp'n 25-29; Bin 'Attash Opp'n 27-30) that the Secretary should have reserved the authority to enter pretrial agreements to himself from the outset or withdrawn it before the agreements were entered.  A Pentagon representative publicly explained that plea negotiations were underway for "many years," and it was unclear "what type of agreement" might result, which parties might be involved, or even "if there was ever going to be" an agreement.  JA24.  As respondents' arguments in this Court illustrate, any earlier intervention by the Secretary would undoubtedly have given rise to legal challenges.

---

not address such issues, which the Commission has yet to resolve.  Pet. Ex. A at 21.

18

The Secretary thus did not intervene in plea negotiations. But after Convening Authority Escallier entered into agreements that would prevent a full public trial and foreclose the possibility of capital sentences for the alleged 9/11 plotters—including Mr. Mohammad, the attacks' alleged mastermind—the Secretary concluded that those agreements were not an appropriate disposition of these exceptionally important cases. By its terms, R.M.C. 705(d)(4)(B) allows a convening authority—including the Secretary— to "withdraw" from a pretrial agreement that has already been entered. And if ever there was an occasion where a Secretary could reasonably exercise that authority, it was here. Failing to effectuate the Secretary's determination would jeopardize his ability to discharge the paramount duties of his office.

Second, respondents maintain (Mohammad Opp'n 30-34; Bin 'Attash Opp'n 30-32) that the pretrial agreements would have provided the best resolution of these prosecutions and that withdrawal will cause more delay. Those are arguments about the wisdom of the Secretary's policy choices— not reasons for this Court to withhold mandamus relief. Congress vested ultimate responsibility in the Secretary of Defense to administer the military-commission system and to seek justice for the victims of 9/11 and

19

their families—as well as the American people—through a fair trial for the respondents.  The United States respectfully requests that this Court issue the writ and give effect to that official's solemn judgment about how best to achieve that end.

## CONCLUSION

The petition for a writ of mandamus should be granted.

Respectfully submitted,

BRETT A. SHUMATE
  Acting Assistant Attorney
    General, Civil Division

MARK R. FREEMAN
*/s/ Melissa N. Patterson*
MELISSA N. PATTERSON
  Attorneys, Appellate Staff
  Civil Division, Room 7259
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530

  (202) 514-1201

JANUARY 2025

20

## CERTIFICATE OF COMPLIANCE

I certify that this reply complies with the word limit set in this Court's January 9, 2025, order and the typeface/typestyle requirements of Federal Rule of Appellate Procedure 21(d) because it contains 3,847 words (excluding exempted matter) according to the count of Microsoft Word, and has been prepared in proportional CenturyExpd BT 14-point font.

*/s/ Melissa N. Patterson*
Melissa N. Patterson

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2025, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.


*/s/ Melissa N. Patterson*
Melissa N. Patterson