**ORAL ARGUMENT SCHEDULED FOR JANUARY 28, 2025**

No. 25-1009

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

*In re UNITED STATES*, Petitioner

---

ON PETITION FOR A WRIT OF MANDAMUS AND PROHIBITITION

---

***AMICUS* BRIEF ON BEHALF OF SEPTEMBER ELEVENTH FAMILIES FOR PEACEFUL TOMORROWS AND FIFTY-THREE INDIVIDUAL 9/11 VICTIM FAMILY MEMBERS AS *AMICI CURIAE* IN SUPPORT OF RESPONDENTS URGING DENIAL OF A WRIT OF MANDAMUS**

---

Nicholas J. Lewin
Benjamin W. Perotin
KRIEGER LEWIN LLP
350 5th Avenue, Suite 7710
New York, NY 10118
Nick.Lewin@kriegerlewin.com
Ben.Perotin@kriegerlewin.com
(212) 390-9550
*Counsel for* Amici Curiae *Peaceful Tomorrows and Individual* Amici

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), *amici curiae* submit this certificate as to the parties, rulings, and related cases.

A. <u>Parties</u>

Except for the following, all parties, intervenors, and *amici* appearing in this court are listed in the Petitioner's Notice Regarding Public Copies of Mandamus Petition and Stay Motion, No. 25-1009 (Jan. 18, 2025) ("Notice") at page ii:  (1) *amicus curiae* September 11th Families for Peaceful Tomorrows and individual *amici*, which file this *amicus* brief in support of Respondents; (2) putative Media Coalition intervenors; (3) *amicus curiae* Center for Victims of Torture, which filed an *amicus* brief in support of Respondents.

B. <u>Rulings</u>.

The rulings under review can be found in the Notice at ii.

C. <u>Related Cases</u>.

A complete list of related matters can be found in the Notice at iii.

# TABLE OF CONTENTS

Certificate As to Parties, Rulings, And Related Cases....................................................i

Table of Contents ............................................................................................ ii

Table of Authorities......................................................................................... iii

Disclosure Statement........................................................................................vi

Certificate Regarding Separate Briefing ............................................................. vii

Statement Of Authorship and Financial Contributions ......................................... viii

Statement Of Identity, Interest, And Authority to File .......................................... viii

Summary of Argument......................................................................................1

Argument.......................................................................................................3

    I.     The Secretary of Defense's Unlawful Unwinding of the PTAs Is Strongly Against the Public Interest in Finality and Would Be Fundamentally Unjust. ............................................................................5

    II.    Contrary to Petitioner's Suggestion, The American People Would Not Be Deprived of Hearing the Merits of the Case....................................12

    III.   This Court's Approach to Analogous Situations Indicate That Mandamus Would Be Inappropriate.........................................................15

Conclusion ...................................................................................................16

Certificate of Compliance ................................................................................18

Certificate of Service .....................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Barker v. Wingo*, 407 U.S. 514 (1972) .................................................5

*Calderon v. Thompson*, 523 U.S. 538 (1998) ......................................5

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) ....................3

*Hill v. Lockhart*, 474 U.S. 52 (1985) ..................................................15

*In re al-Nashiri*, 791 F.3d 71 (D.C. Cir. 2015) ................................15

*In re Austrian & German Holocaust Litig.*, 250 F.3d 156 (2d Cir. 2001) ...........4

*In re Flynn*, 973 F.3d 74, 78 (D.C. Cir. 2020) ...................................4

*In re Nat'l Nurses United*, 47 F.4th 746 (D.C. Cir. 2022) ..................3

*In re United States*, 197 F.3d 310 (8th Cir. 1999) .............................4

*In re United States*, 32 F.4th 584 (6th Cir. 2022) ..............................5

*Lee v. United States*, 582 U.S. 357 (2017) ..........................................5

*Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917 (D.C. Cir. 1980) ...............4

*Payne v. Tennessee*, 501 U.S. 808 (1991) ...........................................5

*Rhoades v. Reinke*, 830 F. Supp. 2d 1046 (D. Idaho 2011) ................6

*Shinn v. Ramirez*, 596 U.S. 366 (2022) ...............................................5

*United States ex rel. Greathouse v. Dern*, 289 U.S. 352 (1933) .........4

*United States v. Abrams*, 2016 WL 107945 (D. Nev. Jan. 8, 2016) ...................6

*United States v. Blake*, 89 F. Supp. 2d 328 (E.D.N.Y. 2000) ...........15

*United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999) ........................................ 6

*United States v. Horne*, 987 F.2d 833 (D.C. Cir. 1993) .................................... 15

*United States v. Kimberly*, 2009 WL 1067312 (E.D. Ky. Apr. 21, 2009) ......... 16

*United States v. Pena*, 742 F.3d 508 (1st Cir. 2014) ........................................ 5

*United States v. Rose*, 891 F.3d 82 (2d Cir. 2018) ............................................ 16

*United States v. Santiago-Rivera*, 805 F.3d 396 (1st Cir. 2015) ...................... 16

*United States v. Timmreck*, 441 U.S. 780 (1979) .............................................. 15

*United States v. Wilkins*, 2022 WL 2643557 (D.D.C. July 8, 2022) ................ 16

*United States v. Wilson*, 350 F. Supp. 2d 910 (D. Utah 2005) .......................... 6

## Statutes
18 U.S.C. § 3771(a)(7) ........................................................................................ 6

## Other Authorities
146 Cong. Rec. S3003 (Apr. 27, 2000) .............................................................. 11

Blanche Bong Cook, *Stepping Into the Gap: Violent Crime Victims, the Right to Closure, and a Discursive Shift Away from Zero Sum Resolutions*, 101 Ky. L.J. 671 (2012) ................................................................................................ 6

Erin Ann O'Hara, *Victim Participation in the Criminal Process*, 13 J.L. & Pol'y 229 (2005) .............................................................................. 14

Paul G. Cassell, *In Defense of Victim Impact Statements*, 6 Ohio St. J. Crim. L. (2009) ............................................................................................................ 14

Ruling on Def. Mots. to Schedule Entry of Pleas, Guantanamo Mil. Comm'ns Trial Judiciary (Nov. 6, 2024) ........................................................................ 7

*United States v. Mohammed*, Unofficial/Unauthenticated Tr.
   (Jan. 8, 2025) ................................................................................ 12, 14

## <u>DISCLOSURE STATEMENT</u>

Pursuant to D.C. Circuit Rule 26.1, *amicus curiae* Peaceful Tomorrows makes the following disclosures:

1.    Peaceful Tomorrows was founded in 2002 by family members of individuals killed in the attacks on September 11, 2001.  As family members of the victims, Peaceful Tomorrows' members and other individual *amici* will be directly impacted by the Court's decision in this matter for the reasons described in the accompanying Statement Of Identity, Interest, And Authority To File.

2.    Peaceful Tomorrows is fiscally sponsored by Tides Center, a 501(c)(3) non-profit organization.  Tides Center is a non-stock corporation; therefore, no publicly held corporation owns 10% or more of its stock.

Dated:     January 24, 2024
New York, New York

Nicholas J. Lewin
*Counsel for* Amici Curiae *Peaceful Tomorrows and Individual* Amici

## <u>CERTIFICATE REGARDING SEPARATE BRIEFING</u>

Pursuant to D.C. Circuit Rule 29(d), counsel for *amici curiae* certifies that a separate brief is necessary to provide the perspective of family members of people murdered in the attacks of September 11, 2001.  *Amici* are not aware of any other *amici* that intend to file a brief that addresses the victims' perspective on the petition.  And to the extent there are any other *amici* that we are unaware of, the accelerated briefing scheduling in this matter has made effective coordination impracticable.


Dated:     January 24, 2025
           New York, New York

_____
Nicholas J. Lewin
*Counsel for* Amici Curiae *Peaceful Tomorrows and Individual* Amici

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* state that its counsel authored the brief in whole. No party or their counsel contributed money with the intention of funding the preparation or submission of this brief. No party or their counsel provided financial support to fund the preparation or submission of this brief. No other individual or organization contributed financial support intended to fund the preparation or submission of this brief.

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

*Amici* include Peaceful Tomorrows, officers and members of Peaceful Tomorrows, and individual family members of people killed in the attacks of September 11th who are not affiliated with Peaceful Tomorrows.

Peaceful Tomorrows is an organization founded by family members of people killed in the attacks on September 11, 2001. Over the past 23 years, the organization and its more than 250 members have advocated for the rule of law, nonviolent actions in pursuit of justice, and breaking the vicious cycles of violence caused by war and terrorism. Peaceful Tomorrows was nominated for the Nobel Peace Prize in 2003 and 2004. Peaceful Tomorrows is an active participant in advocating for victims' families, providing them with support and a platform to express their needs and concerns throughout the legal proceedings against the defendants. Peaceful Tomorrows has been involved in the September 11th

Military Commission proceedings specifically.  Peaceful Tomorrows is the only September 11th victim family organization recognized by the Pentagon as a non-governmental organization observer, has consistently sent representatives to watch the proceedings in the Guantanamo Bay Military Commissions, and provides its members with regular information regarding the proceedings including how to view proceedings at designated CCTV sites in the continental United States.

Peaceful Tomorrows Officers and Members

Elizabeth Miller is the daughter of Douglas C. Miller, a firefighter who died in the World Trade Center on September 11th.  Ms. Miller is the Project Director of Peaceful Tomorrows.

Colleen Kelly is the sister of William Kelly Jr, who died in the World Trade Center on September 11th.  Ms. Kelly is a co-chair of Peaceful Tomorrows' Rule of Law Committee.

Terry Rockefeller is the sister of Laura Rockefeller, who died in the World Trade Center on September 11th.  Ms. Rockefeller is a co-chair of Peaceful Tomorrows' Rule of Law Committee.

V. Blake Allison is the husband of Anna S. W. Allison, who died on American Airlines flight 11 on September 11th.

Barry Amundson is the brother of S. P. C. Craig Amundson of the U.S. Army, who died at the Pentagon on September 11th.

Kelly Campbell is the sister-in-law of S. P. C. Craig Amundson, of the U.S. Army, who died at the Pentagon on September 11th.

Don Charlebois is the brother of David Charlebois, First Officer on Flight 77 who died at the Pentagon on September 11th.

Terry Anne Greene is the sister of Donald F. Greene, who died on United Airlines Flight 93 on September 11th.

Logan Harris is the niece of Laura Rockefeller, who died in the World Trade Center on September 11th.

Hannah Harris is the niece of Laura Rockefeller, who died in the World Trade Center on September 11th.

Dianne L. Hudder is the sister of William Russell Peterson, who died in the World Trade Center on September 11th.

Zachary Jones, nephew of William Kelly Jr., who died in the World Trade Center on September 11th.

Andrea N. LeBlanc is the wife of Robert G. LeBlanc, who died on United Airlines Flight 175 on September 11th.

John Leinung is the step-father of Paul J. Battaglia, who died in the World Trade Center on September 11th.

Elaine Z. Leinung is the mother of Paul J. Battaglia, who died in the World Trade Center on September 11th.

Valerie Lucznikowska is the aunt of Adam P. Arias, who died in the World Trade Center on September 11th.

Mary Ann Moran is the sister of Kathleen Moran, who died in the World Trade Center on September 11th.

Jessica Murphy is the daughter of Brian J. Murphy, who died in the World Trade Center on September 11th.

Jessica Murrow is the wife of Stephen Adams, who died in the World Trade Center on September 11th.

Phyllis Rodriguez is the mother of Gregory E. Rodriguez, who died in the World Trade Center on September 11th.

Julia Rodriguez is the sister of Gregory E. Rodriguez, who died in the World Trade Center on September 11th.

Aidan McKillion Salamone is the son of John Patrick Salamone, who died in the World Trade Center on September 11th.

Cynthia Salter is the sister of Catherine Patricia Salter, who died in the World Trade Center on September 11th.

Chanel Shum is the daughter of See Wong Shum, who died in the World Trade Center on September 11th.

Bill Tammeus is the uncle of Karleton D. B. Fyfe, who died in the World Trade Center on September 11th.

Bruce Wallace is the uncle of Mitchel Wallace, who died in the World Trade Center on September 11th.

Adele Welty is the mother of F. F. Timothy Welty, who was a first responder in FDNY Squad 288 and died on September 11th.

Nissa Youngren is the daughter of Robert G. LeBlanc, who died on United Airlines Flight 175 on September 11th.


Individual Victim Family Member *Amici* Not Affiliated with Peaceful Tomorrows

Maureen Basnicki is the wife of Kenneth W. Basnicki, who died in the World Trade Center on September 11th.

Rachel Becker is the daughter of F. F. Douglas C. Miller, a firefighter who died in the World Trade Center on September 11th.

Michelle Beilke is the daughter of retired M. S. G. Max J. Beilke who died at the Pentagon on September 11th.

Grace Donegan is the niece of William Kelly, Jr., who died in the World Trade Center on September 11th.

Maureen Donegan is the sister of William Kelly, Jr., who died in the World Trade Center on September 11th.

Michael Donegan is the brother-in-law of William Kelly, Jr., who died in the World Trade Center on September 11th.

Kenneth B. Fairben is the father of Keith G. Fairben, a first responder who died in the World Trade Center on September 11th.

Deborah Garcia is the wife of David Garcia, who died in the World Trade Center on September 11th.

Dylan Garcia is the son of David Garcia, who died in the World Trade Center on September 11th.

Stephan J. Gerhardt is the brother of Ralph Gerhardt, who died in the World Trade Center on September 11th.

Kathleen Hamilton is the sister of William Kelly, Jr., who died in the World Trade Center on September 11th.

J. William Harris is the brother-in-law of Laura Rockefeller, who died in the World Trade Center on September 11th.

Meigan Keane is the sister of William Kelly, Jr., who died in the World Trade Center on September 11th.

Michael Keane is the brother-in-law of William Kelly, Jr., who died in the World Trade Center on September 11th.

William Kelly Sr. is the father of William Kelly Jr., who died in the World Trade Center on September 11th.

Terry McGovern is the daughter of Ann Walsh McGovern, who died in the World Trade Center on September 11th.

Laurie Miller is the wife of F. F. Douglas C. Miller, a firefighter who died in the World Trade Center on September 11th.

Katherine Miller is the daughter of F. F. Douglas C. Miller, a firefighter who died in the World Trade Center on September 11th.

Glenn Morgan is the son of Richard Morgan, who was a first responder and died on September 11th.

Darra D. Mulderry is the brother of Stephen Mulderry, who died in the World Trade Center on September 11th.

Nicholas Ruth is the son-in-law of Robert G. LeBlanc, who died on United Airlines Flight 175 on September 11th.

Robert Silas Ruth is the grandson of Robert G. LeBlanc, who died on United Airlines Flight 175 on September 11th.

Sasha LeBlanc Hyde Ruth is the granddaughter of Robert G. LeBlanc, who died on United Airlines Flight 175 on September 11th.

Joel Shapiro is the husband of Sareve Dukat, who died in the World Trade Center on September 11th.

*Amicus* Peaceful Tomorrows and the individual *amici* have powerful and abiding interests in this case. They have critical insight into the prolonged nature of the legal process and the profound emotional toll it has had on the families of victims. If the pre-trial agreements ("PTAs") are rescinded, the resulting delay in

the legal process and postponement of resolution will have a continued negative extensive impact on *amici*.  Victims' families have long awaited resolution to the ongoing case against those accused of planning and supporting the attacks on September 11th.  Further delays caused by the potential rescission of the PTAs would prolong the suffering of the families who have waited years for justice and accountability.  Accordingly, *amici* believe that their perspective will assist the Court in resolving this case.

*Amici* file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure upon the accompanying Motion for Leave to File *Amicus* Brief.

## SUMMARY OF ARGUMENT

When this Court hears oral argument, it will have been 8,540 days—or more than twenty-three years and four months—since *amici*'s loved ones were murdered in what the Petitioner correctly calls "the most egregious criminal act on American soil in modern history."  Pet'r's Br. at 1.  Finally, on July 31, 2024, almost twenty-three years after the attacks of September 11th, the Office of the Chief Prosecutor and the Director of the Office of Military Commissions Victim Witness Assistance Program informed victims' families, including *amici*, that the Convening Authority and prosecution had entered into PTAs with defendants, each of whom is charged with playing a critical role in planning and carrying out those murders.  For many, no legal resolution can or will ever heal the wounds of the attacks of September 11th.  Not remotely.  But *amici* believe that the PTAs are a crucial step forward both to hold the defendants responsible for their involvement in the attacks of September 11th, and to promote and support the ongoing process of finding healing, legal finality, and some semblance of closure for the family members of the murdered victims.

The Secretary of Defense's (the "Secretary") decision to usurp control of proceedings from the Convening Authority and his purported withdrawal from the PTAs upended this finality.  It has left *amici* feeling whipsawed by the staggering about-face.  Now, after both the Military Commission Trial Judge and the Court of

Military Commission Review have rejected the Secretary's attempt to rescind the PTAs, the Secretary seeks, through the filing of this petition for a writ of mandamus, to unwind years of negotiations between prosecutors and defense counsel, and to impose on the American public and the family members of the victims indefinite further delays.

As Respondents explain, mandamus is inappropriate because the decisions of the Military Courts were not clearly erroneous, the Petitioner has not shown that it lacks adequate means to attain relief otherwise, and the Petitioner has not shown that it has a clear and indisputable right to the issuance of the writ.

*Amici* write separately because the Petitioner conclusorily claims that a writ of mandamus resulting in the withdrawal of the PTAs is in the best interest of the families of victims of the attacks of September 11th.[3]  *Amici*, who are victim family members ("VFMs") themselves, disagree in the strongest possible terms.

First, a grant of the petition would be contrary to our justice system's core values of finality, certainty, and closure, and would only result in this matter being relegated to further legal purgatory.  Second, through the extensive sentencing

---

[3] In a public comment, the Secretary doubled down on this characterization, stating: "I have long believed that the families of the victims, our service members, and the American public deserve the opportunity to see . . . trials carried out." Ellen Knickmeyer, *Defense Chief Defends Decision to Throw Out Plea Deal for 9/11 Defendants*, Associated Press (Aug. 6, 2024), https://apnews.com/article/911-plea-deal-austin-guantanamo-4f43d5391ab5c02cde2cbddf5376c699.

2

proceedings provided by the Military Commission, the PTAs robustly provide the type of public confrontation with the defendants and fact presentation for the historical record that Petitioner claims to support: the process contemplated by the PTAs would involve months of evidentiary presentation, victim statements, and testimony that would hopefully provide *amici*, other VFMs, and the public with important, if belated, legal finality in this long-running and deeply painful saga. Third, while there is no precise precedent or perfect analogy for this prosecution or the relief requested in the petition, if the Court looks to existing areas of civilian criminal jurisprudence, this Court's prior decisions counsel in favor of denying the petition.

## ARGUMENT

A writ of mandamus is a "drastic remedy reserved for extraordinary circumstances." *In re Nat'l Nurses United*, 47 F.4th 746, 752–53 (D.C. Cir. 2022) (citations omitted). Courts only utilize this unique remedy in "exceptional circumstances amounting to a judicial usurpation of power" or a "clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (citations and quotation marks omitted). The writ should issue only if: "(1) 'the party seeking issuance of the writ [has] no other adequate means to attain the relief he desires'; (2) 'the petitioner [satisfies] the burden of showing that his right to issuance of the writ is clear and indisputable'; and (3) 'the issuing court, in the

exercise of its discretion, [is] satisfied that the writ is appropriate under the circumstances.'" *In re Flynn*, 973 F.3d 74, 78 (D.C. Cir. 2020) (en banc) (per curiam) (quoting *Cheney*, 542 U.S. at 380–81). As Respondents have explained, the petition fails at each of these hurdles.

While the petition fails to meet these stringent requirements, it should also be rejected as contrary to the public interest, and particularly crime victims' interests in finality and closure. "[T]he exercise of discretion to issue a writ of mandamus also must be guided by the court's perception of the public interest." *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 924 (D.C. Cir. 1980); *see also United States ex rel. Greathouse v. Dern*, 289 U.S. 352, 359 (1933) (explaining that courts should consider "equitable principles" when determining whether to issue writs of mandamus). Accordingly, courts regularly consider issues of public policy and social good when evaluating petitions for writs of mandamus. *See, e.g.*, *Nat'l Wildlife Fed'n*, 626 F.2d at 924; *In re Austrian & German Holocaust Litig.*, 250 F.3d 156, 163 (2d Cir. 2001) (per curiam) (granting petitions for a writ of mandamus because of, *inter alia*, the "strong public interest in expeditiously deciding the issues presented"); *In re United States*, 197 F.3d 310, 316 (8th Cir. 1999) (similar). Moreover, given that this is a case of "unique national importance," Pet'r's Br. at 20, this court should be particularly attuned to the interests of VFMs such as the *amici* and the public policy issues at stake.

I.    **The Secretary of Defense's Unlawful Unwinding of the PTAs Is Strongly Against the Public Interest in Finality and Would Be Fundamentally Unjust.**

Our justice system is premised on the bedrock principle that victims, society, and defendants should be provided with certainty, finality, and closure.  *See Lee v. United States*, 582 U.S. 357, 368 (2017) (explaining that there is a "strong societal interest in finality").  In particular, "[f]inality is essential to both the retributive and the deterrent functions of criminal law."  *Calderon v. Thompson*, 523 U.S. 538, 555 (1998); *see also Shinn v. Ramirez*, 596 U.S. 366, 376–77 (2022) (quoting *Calderon*, 523 U.S. at 556); *In re United States*, 32 F.4th 584, 591 (6th Cir. 2022) (noting that there is a "strong, legitimate, and well-established government interest" in finality in the criminal justice system); *United States v. Pena*, 742 F.3d 508, 520 (1st Cir. 2014) (explaining that there is a "public interest in certainty and finality" that is "particularly strong as to guilty pleas in our legal system" (citation omitted)).

Crucially for *amici*, it is "[o]nly with real finality [that] the victims of crime [can] move forward knowing the moral judgment will be carried out."  *Calderon*, 523 U.S. at 556 (citing *Payne v. Tennessee*, 501 U.S. 808 (1991)).  The need for justice to be administered in a timely fashion is one of the reasons why "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."  *Barker v. Wingo*, 407 U.S. 514, 519

5

(1972); *see also United States v. Hall*, 181 F.3d 1057, 1061–62 (9th Cir. 1999) (explaining that the public has a "strong interest in the timely administration of justice" separate from the defendant's own right to a speedy trial).

Indeed, the victim's "right to proceedings free from unreasonable delay" is enshrined in the Crime Victims' Rights Act.  18 U.S.C. § 3771(a)(7).  This is because "unreasonably long periods of delay" may infringe on "a victim's need for closure."  Blanche Bong Cook, *Stepping Into the Gap: Violent Crime Victims, the Right to Closure, and a Discursive Shift Away from Zero Sum Resolutions*, 101 Ky. L.J. 671, 711 (2012).  And courts have explicitly considered the ongoing pain and trauma suffered by the victims when setting their trial schedules.  *See United States v. Abrams*, 2016 WL 107945, at *2 (D. Nev. Jan. 8, 2016) (denying sixty-day continuance because of, *inter alia*, "the impact of delay on the victims involved in the trial"); *Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1071 (D. Idaho 2011) (holding that "[c]ontinued delay compounds" the negative impact on "the families and communities of the victims"); *United States v. Wilson*, 350 F. Supp. 2d 910, 931 (D. Utah 2005) (denying continuance of sentencing because criminal defendant had "caused considerable trauma and anxiety to his victims" and these victims had a right to see the matter concluded without delay).

Proceedings like those that VFMs have endured here insult the principle of timely proceedings and a speedy trial.  Indeed, the Petitioner's characterization of

6

these prosecutions as "long-running" is, frankly, a gross understatement.  When this Court hears oral argument regarding the petition, it will have been over twenty-three years since *amici* lost their loved ones on September 11, 2001.  Over twenty years have elapsed since the defendants were first captured.  *See* Carol Rosenberg, *Trial Guide: The Sept. 11 Case at Guantánamo Bay*, N.Y. Times (Nov. 8, 2024), https://www.nytimes.com/article/september-11-trial-guantanamo-bay.html.  Nearly fifteen years have passed since Secretary of Defense Robert Gates first designated a Convening Authority for this matter.  Ruling on Def. Mots. to Schedule Entry of Pleas at 4, Guantanamo Mil. Comm'ns Trial Judiciary (Nov. 6, 2024).  It has been nearly thirteen years since the capital charges against the defendants at issue here were referred to the Commission.  *Id.*  And negotiations for pre-trial agreements have been ongoing, albeit intermittently, for at least seven years.  *See, e.g.*, J.A. at 124–25.  Myriad Convening Authorities, judges, and attorneys have come and gone over the intervening years.  And these years have been filled with repeated stops and starts, scandals, and delays.[4]  But the one

---

[4] *See, e.g.*, Matt Apuzzo, *Covert Inquiry By F.B.I. Rattles 9/11 Tribunals*, N.Y. Times (Apr. 18, 2014), https://www.nytimes.com/2014/04/19/us/politics/covert-inquiry-by-fbi-rattles-9-11-tribunals.html (detailing several of the delays and scandals, including the government's "acknowledg[ment] that microphones were hidden inside what looked like smoke detectors in the rooms where detainees met with their lawyers," "[a] botched computer update [that] gave prosecutors and defense lawyers access to the other side's confidential work," and the FBI's recruitment of a member of the defense team as a confidential informant); Carol

constant is the pain and confusion *amici* feel at the continued lack of finality and certainty in the now decades' long pursuit of some semblance of justice and accountability for the murders of their loved ones. *Amici* are not aware of any criminal adjudication in the nearly 250-year history of the Republic that has been subject to the extensive delays painfully present here.[5]

Of course, in the face of a tragedy like September 11, 2001, nothing can likely provide true closure. But on July 31, 2024, *amici* and other VFMs were told by prosecutors that the government had agreed to the PTAs as a result of prosecutors' "collective, reasoned, and good-faith judgment that this resolution is the best path to finality and justice in this case." J.A. at 203. *Amici* agree with this

---

Rosenberg, *The 9/11 Trial: Why Is It Taking So Long?*, N.Y. Times (Apr. 17, 2020), https://www.nytimes.com/2020/04/17/us/politics/911-trial-guantanamo.html (further cataloging the delays).

[5] Indeed, recent cases in Article III courts against al Qaeda leaders and operators— each of which proceeded from arraignment to final appeal in less than five years— provide a relevant (if imperfect) point of temporal comparison. *See* Nick Lewin, *20 Years After the Attacks, the Accused of 9/11 Must Finally be Tried — In Civilian Courts*, Wash. Post (Sept. 9, 2021), https://www.washingtonpost.com/opinions/2021/09/09/20-years-after-attacks-accused-911-must-finally-be-tried-civilian-courts/ (noting that arraignment to final appeal for Suleiman Abu Ghaith, Osama bin Laden's son-in-law and senior al Qaeda leader, took 4 years, 7 months, and 11 days; for Khalid al-Fawwaz, an original al Qaeda member and close associate of bin Laden, it took 4 years, 10 months, and 18 days; and for Ahmed Ghailani, bin Laden's bodyguard and participant in the 1998 attacks against the U.S. embassies in Kenya and Tanzania, it took 4 years, 6 months, and 21 days).

assessment.  Finally, there was a clear path forward for evidence to be presented for the historical record, for victims' voices to be heard, and for these defendants to be convicted and sentenced.[6]

Now, the Secretary of Defense's unilateral and improper decision to seize control from the Convening Authority after the ink on the PTAs was barely dry deprives VFMs of this long-sought finality.  Tellingly, while Petitioner invokes the idea of a trial, the petition makes no mention of the practical next steps for the prosecution if the petition is granted.  That is because if this Court grants the writ of mandamus, this matter would be thrust back into the same purgatory and uncertainty it has inhabited for decades.  The troubled history of this matter has demonstrated that, absent the PTAs, it is unclear if the government will ever be able to prosecute the defendants or adduce the full panoply of evidence of guilt— let alone secure convictions and death sentences that would stand on appeal.

---

[6] While *amici* cannot and do not speak for all VFMs, they are not the only VFMs who felt this sense of relief.  For example, former Solicitor General and VFM Theodore Olson stated that upon hearing the news of the plea, "all I felt was relief," and that this was the only path to "begin to close this painful chapter in our nation's history."  Theodore B. Olson, *I Lost My Wife on 9/11.  But I Believe the Plea Deals Should Go Forward*, Wash. Post (Aug. 14, 2024), https://www.washingtonpost.com/opinions/2024/08/14/9-11-plea-deals-theodore-olson-austin/; *see also* Chanel Shum, *My Father Died on 9/11.  Here's Why I Support Plea Deals for the Plotters*, Peaceful Tomorrows, (Nov. 18, 2024), https://www.peacefultomorrows.org/post/opinion-by-chanel-shum-in-washington-post-my-father-died-on-9-11-here-s-why-i-support-plea-deals-f.

Unfortunately for *amici*, this is not an abstract issue.  Continued proceedings would come with very real costs.  The constant delays have done nothing but cause continued pain and frustration for the VFMs, who have called the ongoing uncertainty "mental warfare," nauseating, and tortuous.  Carol Rosenberg, *Twists and Turns in Sept. 11 Plea Process Are Agonizing, Families Say*, N.Y. Times (Nov. 22, 2024), https://www.nytimes.com/2024/11/22/us/politics/sept-11-plea-process-families.html.[7]  And many VFMs will never have the chance for closure or finality, given that hundreds, if not thousands, of VFMs have passed away over the last two decades.[8]  The defendants too, are aging rapidly in a facility that

---

[7] *See also* Deborah Garcia, *Thursdays Briefings: Part 2 – The Press*, WorldTradeWidow.com (Jan. 9, 2025), https://worldtradewidow.com/2025/01/15/thursdays-briefings-part-2-the-press/ (*amicus* Deborah Garcia describing the reaction to the D.C. Circuit's grant of a stay as a "wave of disappointment, anger, and tears").

[8] To provide one example:  *Amicus* Terry Rockefeller's sister, Laura Rockefeller, died in the North Tower of the World Trade Center.  Neither of Ms. Rockefeller's parents lived to see justice for their daughter.  Ms. Rockefeller's father passed away in 2003.  Her mother passed away in 2013.  Unfortunately, Ms. Rockefeller's story is one of many.  *See also* Elizabeth L. Miller et al., *9/11 Children Letter to Biden on Supporting Plea Deals*, Peaceful Tomorrows (Oct. 5, 2023), https://www.peacefultomorrows.org/post/9-11-children-letter-to-biden-on-supporting-plea-deals (explaining that the children and grandchildren of 9/11 victims are "increasingly afraid that the burden [of bringing the defendants to justice] could pass to our children" given the continued delays).

reportedly possesses limited medical care resources.[9]  The reality is that there exists a very real possibility that amici and other VFMs will see the defendants ruled unfit to stand trial, or that defendants may die before entry of a final and unappealable judgment of conviction—in other words, that these men will die innocent, at least in the eyes of the law.[10]

As then-Senator Biden stated, "[crime victims] have to be able to know that they had some hand in the idea that the person who did bad things to them was pursued, and they got their day in court . . . .  Part of the catharsis in healing is to be able to go through the process and believe you are getting fair and decent treatment."  146 Cong. Rec. S3003 (Apr. 27, 2000) (statement of Sen. Biden). Here, former President Biden's Defense Secretary took an unprecedented step that has the effect of doing precisely the opposite.

---

[9] Carol Rosenberg, *The 9/11 Defendants Were Captured Two Decades Ago.  Why Hasn't a Trial Started?*, N.Y. Times (Oct. 21, 2024), https://www.nytimes.com/2024/10/21/us/politics/9-11-defendants-trial.html (describing the health care situation at Guantanamo Bay as a "constant concern").

[10] Already one defendant has been deemed unfit to stand trial.  *See* Carol Rosenberg, *Man Accused in 9/11 Plot Is Not Fit to Face Trial, Board Says*, N.Y. Times (Aug. 25, 2023), https://www.nytimes.com/2023/08/25/us/politics/september-11-guantanamo-shibh.html.

In light of the foregoing, a writ of mandamus in this matter is antithetical to these goals that our justice system holds dear. Put differently, justice further delayed is justice painfully denied.

## II. Contrary to Petitioner's Suggestion, The American People Would Not Be Deprived of Hearing the Merits of the Case.

Petitioner repeatedly claims that the PTAs would "deprive the government and the American people of a public trial as to the respondents' guilt," and thus the balance of public interests supports issuing the writ. Pet'r's Br. at 1; 19–20.

Petitioner's statement is (at best) highly misleading. The PTAs involved lengthy stipulations of fact providing answers and explanations of the what, the when, the where, the how, and the why of the attacks. *See* Resp't bin 'Atash Resp. at 17 (Jan. 17, 2025) ("bin 'Atash Br.") ("By entering into the stipulation, Mr. bin 'Atash has provided the Government the precise narrative of how, why, and by whom the death-eligible crimes were committed[.]"). These stipulations begin to provide the answers that *amici* and the public have long sought. Beyond this, the planned sentencing hearing would involve a "*several-month* presentation with all this evidence to establish the historical record." *United States v. Mohammed*, Unofficial/Unauthenticated Tr. at 51684–85 (Jan. 8, 2025) ("Jan. 8 Tr.") (emphasis added). The PTAs "guarantee[] that [the prosecution] could present all of the evidence that [the prosecution] thought was necessary to establish a historical record of the accused's involvement in what happened on September 11th." *Id.* at

51683; *see also* bin 'Atash Br. at 2 (explaining that defendant "signed a highly incriminating stipulation admitting to all elements of the charged offenses—including elements for which the Government has no evidence other than coerced statements"). Indeed, this presentation would likely be even more fulsome than any contested trial. As part of the PTAs, the defendants agreed to the admission of wide swaths of previously contested evidence, including the FBI Letterhead Memoranda. *See* Pet'r's Notice Regarding Public Copies of Mandamus Pet. and Stay Mot. at 97–101 (Ex. D), 118–21 (Ex. E), 138–42 (Ex. F), No. 25-1009 (Jan. 18, 2025); *see also* Resp'ts' Al Hawsawi and Mohammed Br. in Opp'n at 16 (Jan. 17, 2025) (describing certain waived objections). It is no hyperbole to say that the sentencing hearings contemplated here may well provide a *more comprehensive* factual record than a contested trial.

And importantly for *amici*, this comprehensive sentencing hearing would involve the continued active participation by VFMs. Prosecutors informed *amici* and other VFMs that as part of the PTAs, the defendants "agreed to a process to respond to questions submitted by VFMs regarding their roles and reasons for conducting the September 11th attacks, should [VFMs] have any unanswered questions about the attacks you would like answered." J.A. at 203. VFMs may have the opportunity to "testify about the impact the September 11th attacks have had on you or your loved ones, and to provide a victim impact statement that will

13

be considered by the military jury in determining a sentence." *Id.* at 204.  As counsel for Mr. Mohammed stated, the PTAs "envision giving maximum opportunity to any victim witness, individuals, family members, or survivors who are interested in being heard, irrespective of how they feel about Mr. Mohammad . . . we think after all this time, the one thing folks who want to be heard deserve is a chance to be heard."  Jan. 8 Tr. at 51686.

While participating in this manner may well be extremely painful and intimidating, *amici* were grateful for the anticipated opportunity to present their stories and have their questions about the planning, coordination, and execution of the attacks answered.  And while every VFM is different, and thus no general characterization can or would ever fairly apply to all people affected by the attacks, studies show that, in general, victim participation in this manner "seem[s] to contribute significantly to victim satisfaction in the resolution of the cases."  Erin Ann O'Hara, *Victim Participation in the Criminal Process*, 13 J.L. & Pol'y 229, 241 (2005); *see also* Paul G. Cassell, *In Defense of Victim Impact Statements*, 6 Ohio St. J. Crim. L. 611, 621–22 (2009) (providing examples of the healing nature of victim participation in trial); Mary Lay Schuster & Amy Propen, *2006 WATCH Victim Impact Study Statement* 6, Advocs. for Hum. Rts. (Nov. 1, 2006), https://www.theadvocatesforhumanrights.org/Res/WATCH-VIS_Final_.pdf ("Judges and advocates were generally in agreement that [victim statements] can

14

be a powerful 'part of the healing process' for the victim."). And courts have recognized that allowing victim participation may provide "catharsis for victims" and help counteract the feeling that they have been "depersonalized and forgotten by the legal process." *United States v. Blake*, 89 F. Supp. 2d 328, 351 (E.D.N.Y. 2000). If the writ is granted, it is unclear when, if ever, *amici* and other surviving VFMs would have these opportunities.

### III.    This Court's Approach to Analogous Situations Indicate That Mandamus Would Be Inappropriate.

*Amici* are aware of no precedent for the actions of the Secretary at issue in this matter. Nor does Petitioner cite any such precedent. This alone should be sufficient to convince this Court that its intervention would be inappropriate. *In re al-Nashiri*, 791 F.3d 71, 85–86 (D.C. Cir. 2015) (denying petition for mandamus where matter implicated various matters of first impression).

But to the extent this Court looks to potential guidance from the civilian criminal justice system, a close point of comparison is the withdrawal of a guilty plea by a criminal defendant. This Court correctly views such a withdrawal as "inherently in derogation of the public interest in finality and the orderly administration of justice." *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("Every inroad on the concept of finality undermines confidence in the integrity of our procedures[.]" (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979))). Accordingly,

15

courts impose a stringent standard when evaluating such withdrawals, because they "undermine[] confidence in the integrity of our judicial procedures . . . and impair[] the orderly administration of justice." *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018) (quotation and citation omitted).

One significant consideration relating to a defendant's withdrawal of guilty pleas is a judicial cognizance of the "mental and emotional toll that victims and witnesses would have to endure." *United States v. Wilkins*, 2022 WL 2643557, at *8 (D.D.C. July 8, 2022) (collecting cases); *see also United States v. Santiago-Rivera*, 805 F.3d 396, 398 (1st Cir. 2015) (recognizing "the burden that [] victims would face were they forced to relive the trauma inflicted upon them so long after they believed this case had ended"); *United States v. Kimberly*, 2009 WL 1067312, at *5 (E.D. Ky. Apr. 21, 2009) (considering the "emotional toll" on the victim in denial of motion to withdraw guilty plea). While the procedural posture here is certainly different, the harm to *amici* of allowing the Secretary to rescind the PTAs would be the same. And this Court should view his attempt to do so with similar hostility.

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny the petition for a writ of mandamus and prohibition.

Dated:  January 24, 2025
        New York, New York

Respectfully submitted,

_____

Nicholas J. Lewin
Benjamin W. Perotin
KRIEGER LEWIN LLP
350 5th Avenue
Suite 7710
New York, NY 10118
Nick.Lewin@kriegerlewin.com
Ben.Perotin@kriegerlewin.com
(212) 390-9550
*Counsel for* Amici Curiae *Peaceful Tomorrows and Individual* Amici

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 3,355 words, as computed by Microsoft Word, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point.

Dated:      January 24, 2025
            New York, New York

_____
Nicholas J. Lewin
*Counsel for* Amici Curiae *Peaceful Tomorrows and Individual* Amici

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on January 24, 2024.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:     January 24, 2024
           New York, New York

Nicholas J. Lewin
*Counsel for* Amici Curiae *Peaceful Tomorrows and Individual* Amici