UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

**IN RE UNITED STATES,**

Petitioner

On petition for a writ of mandamus from a decision of the
Court of Military Commission Review

**UNOPPOSED MOTION FOR INVITATION TO PARTICIPATE AS
*AMICUS CURIAE* BY MILITARY COMMISSIONS DEFENSE
ORGANIZATION IN SUPPORT OF RESPONDENT'S PETITION FOR
REHEARING EN BANC**

CAPT Warren A. Record, JAGC, USN
Acting Chief Defense Counsel
Rita J. Radostitz
Resource Counsel
**Military Commissions Defense
Organization**
1620 Defense Pentagon
Washington DC 20301-1620
Rita.J.Radostitz.civ@mail.mil
703-571-7023

Pursuant to Federal Rule of Appellate Procedure 29(b)(2) and D.C. Circuit Rule 40(f), the Acting Chief Defense Counsel[1] for the Military Commissions Defense Organization (MCDO), requests an invitation to participate as amicus curiae in support of Respondents' Petitions for Rehearing En Banc, Doc. # #2136750 (bin 'Atash) and Doc. #2136861 (Mohammad and al Hawsawi). No party opposes this request for an invitation, and the participation of amicus curiae will not result in the recusal of a member of the en banc court.

The amicus' interest in this matter arises from the organization's mission to protect fairness, independence, and the rule of law in the military justice system, as well as to ensure that there is consistency in the application of the law to issues affecting all defendants charged in the military commissions.

The Acting Chief Defense Counsel is the supervisor of the Military Commissions Defense Organization, the organization within the Department of Defense established to provide and facilitate legal representation to individuals charged under the Military Commissions Act, 10 U.S.C. §948 et.seq.; *see also* Regulation for Trial by Military Commissions (RTMC), Chapter 9 (Defense Counsel). The office of the Chief Defense Counsel (CDC), was created by Congress in the Military Commissions Act of 2006 (Pub. L. No. 111-84, 120

---

[1] CAPT Warren A. Record, USN was designated as Acting Chief Defense Counsel as of 1 April 2025. No permanent Chief Defense Counsel has been named as of the filing date.

Stat. 2600 (2006), as amended by the Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2574 (2009) ("MCA") (10 U.S.C. § 948k(d)(2)). The CDC is charged by regulation with "supervis[ing] all defense activities and the efforts of detailed defense counsel" and "facilitat[ing] the proper representation of all accused referred to a trial before a military commission." RTMC ¶ 9-1(a)(2).

These duties include supervision of the accused's representation "before the United States Court of Military Commission Review, the United States Court of Appeals for the District of Columbia Circuit, and the Supreme Court." 10 U.S.C. § 950h(c). The CDC does not represent individual clients; his interests here are institutional. RTMC ¶ 9-1(a)(4). By virtue of his duties to supervise and facilitate the activities of defense counsel, the ACDC has a substantial interest in ensuring that all military commission cases proceed with reasonable certainty under the law.

Because the decision of the divided panel of this Court conflicts with several circuit and Supreme Court precedent, which may interfere with the proper functioning of the military justice system, the ACDC seeks an invitation to file an amicus brief to support the issues raised by Mr. Mohammad and Mr. al Hawsawi as well as Mr. bin 'Atash. The issues raised are exceptionally important to the protection of the independence of the military justice system.

Amicus' proposed brief as *amicus curiae* in support of Respondents' petitions for rehearing *en banc* is attached to this motion.


Dated: October 1, 2025                    Respectfully submitted,

                                          /s/ *Rita Radostitz*
                                             Attorney for amicus curiae
                                             Military Commissions Defense
                                             Organization

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1):

   [ X ] this document contains 484 words, or

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14pt Times New Roman; or

   [   ] this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

Dated: 1 October 2025        */s/ Rita J. Radostitz*_____
                        *Counsel for Amicus Curiae MCDO*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2025, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, thereby serving all persons required to be served.

*/s/ Rita J. Radostitz*
Rita J. Radostitz
Counsel for Amicus Curiae MCDO

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**IN RE UNITED STATES,**

Petitioner

On petition for a writ of mandamus from a decision of the

Court of Military Commission Review

BRIEF OF AMICUS CURIAE BY THE MILITARY COMMISSIONS DEFENSE ORGANIZATION IN SUPPORT OF RESPONDENTS' PETITIONS FOR REHEARING EN BANC

CAPT Warren A. Record, JAGC, USN
Acting Chief Defense Counsel
Rita J. Radostitz
Resource Counsel
**Military Commissions Defense Organization**
1620 Defense Pentagon
Washington DC 20301-1620
Rita.J.Radostitz.civ@mail.mil
703-571-7023

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. 2

INTEREST OF AMICUS CURIAE..................................................... 5

INTRODUCTION.........................................................................7

ARGUMENT .............................................................................. 9

    I.     THE MAJORITY'S DECISION HARMS THE SYSTEM OF
          MILITARY JUSTICE BY IGNORING SUPREME COURT
          PRECEDENT REQUIRING DEFERENCE TO MILITARY
          COURTS............................................................................9

    II.    THE MAJORITY'S OPINION RAISES EXCEPTIONALLY
          IMPORTANT QUESTIONS THAT WARRANT EN BANC
          REVIEW. ..........................................................................15

CONCLUSION ........................................................................ 16

CERTIFICATE OF COMPLIANCE ................................................. 17

RULE 26.1 DISCLOSURE STATEMENT.......................................... 18

CERTIFICATE OF SERVICE ........................................................ 19

# TABLE OF AUTHORITIES

*Authorities upon which amicus curiae principally relies are marked with an* *

## CASES

*Doe v. Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007)...................................... 7

*\*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006).................................................... 11, 13

*In re Asemani*, 455 F.3d 296 (D.C. Cir. 2006)............................................ 7

*\*In re al Baluchi*, 952 F.3d 363 (D.C. Cir. 2020)........................................... 7

*In re Al-Nashiri*, 791 F3d 71, 76 (D.C. Cir 2015)............................................ 11, 15

*In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016) ............................................ 9, 11

*In re Mohammad*, No. 24-001 (U.S.C.M.C.R. Dec. 30, 2024) .............................. 10

*\*In re United States*, 143 F. 4th 411 (D.C. Cir. 2025) .............................. 8, 9, 11, 14

*Middendorf v. Henry*, 425 U.S. 25 (1976)........................................................ 9

*Montclair v. Ramsdell*, 107 U.S. 147 (1882) ........................................ 12

*\*Schlesinger v. Councilman*, 420 U.S. 738 (1975) ................................................ 7

*Solorio v. United States*, 483 U.S. 435 (1987) ........................................ 9

*\*United States v. Dean*, 67 M.J. 224 (C.A.A.F. 2009) ................................... 8,11,14

*United States v. Finch*, 79 M.J. 389 (C.A.A.F. 2020) ........................................... 14

*United States v. Kadhr*, 753 F. Supp2d 1178 (U.S.C.M.C.R. 2008)...................... 14

*United States v. Robinson*, No. ARMY 20170536, (A. Ct. Crim. App. 2019)….. 14

*Walters v. Sec'y of Def.*, 725 F.2d 107 (D.C. Cir. 1983) ........................................... 9

*Williams v. Taylor*, 529 U.S. 362 (2000) ............................................................... 13

**STATUTES**

Military Commissions Act of 2006, Pub. L. No. 111-84, 120 Stat. 2600 (2006)…12

Military Commissions Act of 2009, Pub. L. No. 111-84, 123 Stat. 2574 (2009)5, 11

10 U.S.C. §948a(a) ............................................................................................... 12

10 USC §948b(a) ....................................................... ..................................... 11, 12

10U.S.C.§948b(c) ............................................................................................12 - 14

10U.S.C.§949a(a) ............................................................................................12 - 14

10 U.S.C. § 950d..................................................... ...........................................15

10 U.S.C. § 950h(c) ............................................................................................... 5

Uniform Code of Military Justice, 10 U.S.C. § 801 et. seq............................. 12, 13

**OTHER AUTHORITIES**

Manual for Courts-Martial, United States (2019 ed.) ............................................ 12

Manual for Military Commissions (2019 ed.) ....................................................... 13

Rules for Courts-Martial 705.............................................. ........................ 10

Rules for Military Commission 705.......................................................................... 10

Regulations for Trial by Military Commission, Chapter 9....................................... 5

## INTERESTS OF THE AMICUS CURIAE

The amicus curiae's interest in this matter arises from the organization's mission to protect the fairness, independence, and the rule of law in the military justice system.

The Acting Chief Defense Counsel[1] (ACDC herein) is the supervisor of the Military Commissions Defense Organization (MCDO), the organization within the Department of Defense established to provide and facilitate legal representation to individuals charged under the Military Commissions Act (MCA); *see also* Regulation for Trial by Military Commissions (RTMC), Chapter 9 (Defense Counsel). The ACDC is charged by regulation with "supervis[ing] all defense activities and the efforts of detailed defense counsel" and "facilitat[ing] the proper representation of all accused referred to a trial before a military commission." RTMC ¶ 9-1(a)(2).

These duties include supervision of the accused's representation "before the United States Court of Military Commission Review, the United States Court of Appeals for the District of Columbia Circuit, and the Supreme Court." 10 U.S.C. § 950h(c). The ACDC does not represent individual clients; his interests here are institutional. RTMC ¶ 9-1(a)(4). By virtue of his duties

---

[1] CAPT Warren A. Record, USN was designated as Acting Chief Defense Counsel as of 1 April 2025. No permanent Chief Defense Counsel has been named as of the filing date.

to supervise and facilitate the activities of defense counsel, the ACDC has a substantial interest in ensuring that all military commission cases proceed with reasonable certainty under the law.

# INTRODUCTION

More than 50 years ago, the Supreme Court recognized "the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." *Schlesinger v. Councilman*, 420 U.S. 738, 753 (1975). The majority decision ignored this required deference, granted to the government the extraordinary relief of mandamus without determining first that it had jurisdiction (*see e.g. In re Asemani*, 455 F.3d 296, 299 (D.C. Cir. 2006) ("Before considering whether mandamus relief is appropriate, . . . we must be certain of our jurisdiction."); or that Petitioner had shown entitlement to relief that is "clearly mandated by statutory authority or case law." *In re al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020).

As the issue raised by the government in the Petition (whether the Secretary of Defense was authorized to withdraw from fully executed pre-trial agreements signed by his duly appointed convening authority) is a case of first impression in this Circuit, mandamus should not have been granted. *Id., citing Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 355 (D.C. Cir. 2007) ("a petitioner's right to relief is 'clear and indisputable' where he or she can point to 'cases in which a federal court has held that' relief is warranted 'in a matter involving like issues and comparable circumstances."),. As importantly, at issue is a question that was resolved almost two decades ago by the highest military court in the country, the Court of Appeals for the Armed Forces (C.A.A.F.) and has been relied upon in the military justice system.

In *United States v. Dean*, 67 M.J. 224, 225 (C.A.A.F. 2009), the C.A.A.F. determined that the signing of a stipulation of facts constituted the beginning of performance of a pre-trial agreement such that the Rules for Courts-Martial (RCM) 705 precluded the convening authority from withdrawing from the agreement. That rule is identical to the Rule for Military Commissions (RMC) 705 that was the basis for the lower court decisions in this case.

By ignoring the directly-on-point holding of the C.A.A.F. in *United States v. Dean*, the majority's decision "disturbs principles of comity and separation of powers that inform how civilian courts ought to act on issues particular to the military context." *In re United States*, 143 F. 4th at 453 (Wilkins, J., dissenting).

Respondents' petitions for rehearing en banc should be granted to restore the proper deference to military courts determinations of military rules.

# ARGUMENT

## I. THE MAJORITY'S DECISION HARMS THE SYSTEM OF MILITARY JUSTICE BY IGNORING SUPREME COURT PRECEDENT REQUIRING DEFERENCE TO MILITARY COURTS.

The majority opinion not only ignores settled Supreme Court law requiring deference to military precedent in this context, but fails to acknowledge the potential harm that may come when an Article III court, with no expertise in military practice, wades into a dispute that is firmly controlled by the Rules for Military Commissions (RMC) and has been addressed and resolved by multiple military courts. Doing so "doubly disrespects the work of two military courts." *In re United States*, 143 F. 4th at 453 (Wilkins, J., dissenting).

### A. The majority decision ignores clearly established precedent requiring Article III courts to give deference to determinations of military law by military courts.

In *Middendorf v. Henry*, 425 U.S. 25, 43 (1976) the Supreme Court opined: "Dealing with areas of law peculiar to the military branches, the Court of Military Appeals' [the precursor to the C.A.A.F.] judgments are normally entitled to great deference." This principle was expounded upon in *Solorio v. United States*, 483 U.S. 435, 448 (1987), in which the Court acknowledged that "the notion that civil courts are 'ill equipped' to establish policies regarding matters of military concern is substantiated by experience." *See also Walters v. Sec'y of Def.*, 725 F.2d 107, 109 n.3 (D.C. Cir. 1983) (same). This Court has held, in another case arising from the

military commissions, that such deference applies even in areas that "implicate military expertise to a lesser degree." *In re Al-Nashiri*, 835 F.3d 110, 127 (D.C. Cir. 2016). Because the panel decision ignores this well-established precedent of the Supreme Court, and cases from this Court, en banc reconsideration is appropriate.

### B. The majority decision misinterprets the interaction between the Military Commissions Act (MCA) and the Uniform Code of Military Justice (UCMJ).

The issue raised by Petitioner involved the application of Rule for Military Commission (R.M.C.) 705(d)(4)(B) regarding when the government, through the Convening Authority, can withdraw from a pre-trial agreement (PTA), the military equivalent of a plea agreement. When drafted, R.M.C. 705(d)(4)(B) was identical to Rule for Courts Martial (R.C.M.) 705(d)(4)(B). The primary issue in dispute is whether, at the time then Secretary of Defense Austin sought to withdraw from the PTA that had been signed by the Convening Authority, the Respondents had "[begun] performance of promises contained in the agreement." R.M.C. 705(d)(4)(B). The military trial judge determined that they had. All three judges of the Court of Military Commission Review (CMCR) determined that they had.[2] But the majority of the panel, ignoring all military interpretation of the Rule, used contract law "divorced from the criminal and military justice context" to come to a different conclusion. *In re United States*, 143 F. 4th at 452 (Wilkins, J., dissenting).

---

[2] *In re Mohammad*, No. 24-001 (U.S.C.M.C.R. Dec. 30, 2024).

Critically, the majority dismissed the C.A.A.F holding in *United States v. Dean*, under the mistaken assertion that the language of 10 U.S.C. § 948a(c) relieved the panel of its obligation to give deference to military judges and rulings when interpreting the MCA. *In re United States*, 143 F.4[th] at 435, n. 10. This is a misapplication of Supreme Court precedent and an error in statutory analysis.

In *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), the Supreme Court "concluded that the President's commissions did not comply with procedural protections set out in the Uniform Code of Military Justice (UCMJ) and the Geneva Conventions." *In re Nashiri*, 791 F.3d 71, 73 (D.C. Cir. 2015). This led to "an extended dialogue among the President, the Congress, and the Supreme Court," resulting in the passage of the Military Commissions Act of 2006 (2006 MCA). *Al-Nashiri,* 835 F3d 110, 114-115 (D.C. Cir 2016). The 2006 MCA was revised by Congress in 2009, and the current version was enacted (2009 MCA).

In the 2009 MCA, Congress struck a balance between the character of the military commissions and the requirements of the UCMJ and Common Article 3 of the Geneva Conventions by acknowledging in 10 U.S.C. § 948b(a) that the purpose of the MCA is to establish: "procedures governing the use of military commissions to try alien unprivileged enemy belligerents for violations of the law of war and other offenses triable by military commission." The next paragraph states (in relevant part):

The procedures for military commissions set forth in this chapter [10 USCS §§ 948a et seq.] are based upon the procedures for trial by general courts-martial under . . . 10 U.S.C. §§ 801 et seq. [the UCMJ] does not, by its terms, apply to trial by military commission *except as specifically provided therein or in this chapter* [10 U.S.C. §§ 948a et seq.] . . . The judicial construction and application of chapter 47 of this title [10 U.S.C. §§ 801 et seq.], while instructive, is therefore not *of its own force* binding on military commissions established under this chapter [10 U.S.C. §§ 948a et seq.]."

10 U.S.C. § 948b(c) (emphasis added, cleaned up).

The majority decision relies on the last sentence of that paragraph while ignoring the previous sentence, which states that the UCMJ *does* apply *"as specifically provided therein or in this chapter* [10 U.S.C. §§ 948a et seq.]"

What the majority's interpretation ignores is the language of another section of the MCA, 10 U.S.C. § 949a(a): "Except as otherwise provided in this chapter [10 U.S.C. §§ 948a et seq.] or chapter 47 of this title [10 U.S.C. §§ 801 et seq.], *the procedures* and rules of evidence applicable in trials by general courts-martial of the United States *shall apply* in trials by military commission under this chapter." (emphasis added). Congress' intent, with the inclusion of these two sections, is clearly an acknowledgement that the purpose and construction of the UCMJ does not apply to the military commissions,[3] but the "procedures and rules of evidence"

---

[3] The Preamble to the Manual for Courts Martial (M.C.M.) states that the purpose of the UCMJ is "to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military

do. This interpretation is wholly consistent with prior Supreme Court precedent on the requirements for a constitutionally valid military commission and the treaty obligations contained in Common Article 3 of the Geneva Conventions. *See Hamdan*, 548 U.S. at 634-35.

As is noted in the preamble to the Manual for Military Commissions, the rules and regulations were designed to "provide procedural and evidentiary rules that not only comport with chapter 47A of title 10, United States Code [the UCMJ], and ensure protection of classified information, but extend to the accused all the judicial guarantees which are recognized as indispensable [sic] by civilized peoples as required by Common Article 3 of the Geneva Conventions of 1949." (Preamble to M.M.C.)

It is a cardinal principle of statutory construction that the court must "give effect, if possible, to every clause and word of a statute." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1882); *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (describing this rule as a "cardinal principle of statutory construction"). Thus, as the MCA was being written in the context of the holding *Hamdan v. Rumsfeld,* Congress clearly intended that the "procedures and rules of evidence" – the RCM – should apply unless specifically "provided otherwise." (compare 10 U.S.C. § 948b(c) with 10 U.S.C. §

---

establishment, and thereby to strengthen the national security of the United States." Manual for Courts-Martial, United States, pt. I, ¶ 3 (2019 ed.).

949a(a)). Because the majority opinion ignores this "cardinal principle of statutory construction" rehearing en banc should be granted.

### C. The majority opinion disrespects the holding of the highest military court's ruling directly on point, on an issue that is unique to military practice.

In relegating the C.A.A.F. decision in *United States v. Dean* to a footnote and dismissing it as "unpersuasive" despite the Petitioner's acknowledgment that the practice approved by the C.A.A.F. in *Dean* is "overwhelmingly common" in courts martial practice (*see* Petitioner's Reply at 7), the panel decision confuses the limiting language of 10 U.S..C. § 948b(c) with the requirement of deference to military interpretations of military rules.

While the majority is "unpersuaded," *United States v. Dean* was, in fact, correctly decided (*see In re United States*, 143 F. 4th at 455-456 (Wilkins, J., dissenting)). Military courts, and the judge and litigants in the military commissions, have relied on its holding over the two decades since it was decided. *See, e.g., United States v. Robinson*, No. ARMY 20170536, (A. Ct. Crim. App. Dec. 9, 2019*); United States v. Finch*, 79 M.J. 389, 395 (C.A.A.F. 2020) (when the language of a rule "is identical to the corresponding federal rule" federal court interpretation of the rule is instructive, and followed by the C.A.A.F); United States v. Khadr, 753 F.Supp.2d 1178, 1182 (U.S.C.M.C.R. 2008) (holding that "decisions of the service courts of criminal appeals in construing provisions of the U.C.M.J. are … persuasive" when

they deal "with application of ... provisions that are very similar, if not identical, to those at issue in the instant case."); *see also* Petitioner's Reply Brief at 7.

The panel's dismissive approach to a holding of the C.A.A.F. sows unnecessary uncertainty for military judges and litigants, especially when this Court is the ultimate reviewing court for military commissions cases. Litigants and military judges should be able to rely on clearly established military court resolution of military law questions. Because the majority's opinion disrupts that reliance, en banc review should be granted.

## II. THE MAJORITY'S OPINION RAISES EXCEPTIONALLY IMPORTANT QUESTIONS THAT WARRANT EN BANC REVIEW.

As explained in Respondents' petitions, the issues raised are exceptionally important to the protection of the independence of military justice and en banc review is therefore appropriate. The majority's ruling undermines military justice standards and disrespects the traditional deference given to the decisions of the highest military court in the country. Further, the majority's lowering of the standard for mandamus review, coupled with its failure to determine its jurisdiction when it acknowledges that the government has no statutory right to review,[4] are

---

[4] As this Court noted in *In re al Nashiri*, 791 F3d 71, 76 (D.C. Cir 2015), "when it comes to jurisdiction, the Congress giveth and the Congress taketh away." But the opposite is also true – if Congress wanted to provide interlocutory review to the Government in this situation, it could have done so. The fact that it has not is controlling. *See* 10 U.S.C. § 950d.

exceptionally important questions warranting en banc consideration. For these reasons, en banc review should be granted.

## CONCLUSION

Because the panel majority opinion is in conflict with precedent from the Supreme Court, other cases in this Circuit, and the highest military court in the United States, and because the questions raised in the petitions for rehearing en banc raise exceptionally important questions, en banc review should be granted.

Dated: October 1, 2025          Respectfully submitted,

                                      */s/ Rita J. Radostitz*

                                      Attorney for amicus curiae the Military Commissions Defense Organization

**Certificate of Compliance**

Rule 32 (g) Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitations of Rule 29(b)(4) because:

X this brief contains 2446 words, excluding the parts of the brief exempted by
Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
and the type style requirements of Fed. R. App. P. 32(a)(6) because:

X this brief has been prepared in a proportionally spaced typeface using Microsoft
Word in 14-point font size and Times New Roman type style.

Dated: October 1, 2025

Respectfully submitted,
*/s/ Rita J. Radostitz*
Counsel for Amicus Curiae

**RULE 26.1 DISCLOSURE STATEMENT**

This Brief was not authored by a party's counsel in whole or in part; neither a party nor a party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person, other than the amicus curiae or his counsel, contributed money that was intended to fund preparing or submitting the brief. The amicus organization is not owned by a publicly held corporation. The interests of the amicus is noted above.

<u>/s/ *Rita J. Radostitz*</u>
Attorney for Amicus Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2025, I electronically filed the

foregoing document with the Clerk of Court for the United States Court of

Appeals for the District of Columbia Circuit by using the appellate CM/ECF

system, thereby serving all persons required to be served.

*/s/ Rita J. Radostitz*

Rita J. Radostitz
Counsel for Amicus Curiae MCDO