**[ARGUED JANUARY 28, 2025]**

**No. 25-1009**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

In re UNITED STATES,

Petitioner.

———————————

**PETITIONER'S OPPOSITION TO RESPONDENTS'
MOTION FOR A STAY OF MILITARY-COMMISSION
PROCEEDINGS**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney
  General*

MARK R. FREEMAN
MELISSA N. PATTERSON
SOPHIA SHAMS
  *Attorneys, Appellate Staff
  Civil Division, Room 7213
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-2495*

# GLOSSARY

| | |
|---|---|
| Mot. Ex. | Exhibit attached to Respondents' Motion for a Stay of Military-Commission Proceedings |
| Pet. Ex. | Exhibit attached to the United States' Petition for a Writ of Mandamus and Prohibition |
| R.M.C. | Rules for Military Commissions |
| USCMCR | United States Court of Miliary Commission Review |

**INTRODUCTION**

Respondents seek a stay of the ongoing military-commission proceedings against the alleged perpetrators of the September 11 attacks— proceedings that have already been pending for 13 years. Respondents' request is based entirely on the possibility of future prosecutorial actions the United States has already unequivocally conceded it could not take; any litigation respondents engage in before the military commission while the pretrial agreements are not in effect could not be the basis for the government to later invalidate those agreements, in the unlikely event that they are ever reinstated. Thus, a stay is wholly unnecessary to protect respondents from the illusory harms they raise.

On the other hand, the harm to the government and the public from the requested stay of military-commission proceedings is certain and serious. Respondents' request for an order of uncertain duration prohibiting the military commission from making any progress toward respondents' trial would introduce needless further delay in these long-pending prosecutions of paramount national importance. Such delays are at odds with the strong government and public interest in beginning respondents' trial as soon as possible and risk harming the prosecution as more witnesses and

government officials become unavailable.  This Court should deny respondents' motion for a stay.

## STATEMENT

### I.    Factual Background

**A.**  On September 11, 2001, the United States suffered the deadliest terrorist attacks in our nation's history.  The attacks left 2,976 people dead; injured numerous civilians, military personnel, and first responders; and destroyed tens of billions of dollars' worth of property.

Respondents Khalid Shaikh Mohammad, Walid Bin 'Attash, and Mustafa al Hawsawi are charged with perpetrating the September 11 attacks.  Those charges detail allegations regarding respondents' extensive roles as the counselors, commanders, aiders, abettors, and conspirators of the terrorist attacks.  Respondents are each charged under the Military Commissions Act of 2009, 10 U.S.C. § 948a *et seq.*, with eight law-of-war crimes: (I) conspiracy; (II) attacking civilians; (III) attacking civilian objects; (IV) murder in violation of the law of war; (V) destruction of property in violation of the law of war; (VI) hijacking or hazarding a vessel or aircraft; (VII) terrorism; and an additional charge, intentionally causing serious bodily injury.  *See* Referred Charge Sheets (available at

https://perma.cc/N6WD-E5XJ). Pursuant to the Military Commissions Act, the current military commission was convened in 2012 to try the charges against respondents. *See* 10 U.S.C. § 948h; Ruling on Defense Motions to Schedule Entry of Pleas 4 (Mil. Comm'n Nov. 6, 2024) (Pet. Ex. A).

**B.** Respondents are each represented by "learned" counsel, as well as detailed military defense counsel and civilian defense counsel. *See* 10 U.S.C. § 949a(b)(2)(C)(ii); Rules for Military Commission (R.M.C.) 506(b); Mot. 19 (listing seven counsel for Respondent Bin 'Attash and four counsel for Respondent Hawsawi). Counsel have zealously defended respondents, filing hundreds of pretrial motions, including those resulting in cancelled hearings and delays.[1] Counsel for respondents in this case refused for nearly three years to sign the Memoranda of Understanding required by the military commission to access classified information, thus delaying the production of classified discovery. *See* AE013KKKK (Mil. Comm'n Sept. 17, 2015) (ordering that defense counsel for Bin 'Attash "will sign the [Memorandum of Understanding] without change or show cause as to why they should not be removed from the case," after "over three years of litigation" regarding a

---

[1] *See, e.g.*, AE035C (Mil. Comm'n May 29, 2012); AE035G (Mil. Comm'n July 16, 2012); AE155D (Mil. Comm'n Apr. 17, 2013) (Pohl, J.); AE479L (Mil. Comm'n Jan. 27, 2017).

protective order for classified information); AE013IIII (Mil. Comm'n Sept. 17, 2015) (same regarding counsel for Mohammad); AE013VVVV (Mil. Comm'n Sept. 14, 2015) (noting that defense counsel for Hawsawi signed the Memorandum of Understanding pursuant to the military judge's order with "reservations"). Other unforeseen events, such as the COVID-19 pandemic, have prolonged these proceedings. *See, e.g.*, AE788 (16th Sup) (Mil. Comm'n Apr. 19, 2021) (extending a 390-day extension by another 60 days).

C. On August 21, 2023, Brigadier General Susan Escallier, exercising the authority the Secretary of Defense bestowed on her by designating her the Convening Authority under 10 U.S.C. § 948h, reauthorized the Chief Prosecutor for Military Commissions to negotiate with respondents in an effort to agree on proposed pretrial agreements. Pet. Ex. A at 4-6.

On July 29, 2024, Respondents Mohammad and Bin 'Attash signed Offers for Pretrial Agreements, Pet. Ex. A at 4-6, in which they offered, *inter alia*, to plead guilty to all the charges against them, in exchange for, *inter alia*, the removal of the possibility of death sentences. *Id.* at 6. Respondent Hawsawi signed a similar Offer for Pretrial Agreement the following day. *Id.* at 7. On July 31, 2024, Convening Authority Escallier signed all three offers. *Id.*

Two days later, on August 2, 2024, then-Secretary of Defense Lloyd Austin issued a memorandum to Convening Authority Escallier stating:

> I have determined that, in light of the significance of the decision to enter into pre-trial agreements with the accused in the above referenced case, responsibility for such a decision should rest with me as the superior convening authority under the Military Commissions Act of 2009. Effective immediately, I hereby withdraw your authority in the above-referenced case to enter into a pre-trial agreement and reserve such authority to myself.

> Effective immediately, in the exercise of my authority, I hereby withdraw from the three pre-trial agreements that you signed on July 31, 2024 in the above-referenced case.

Pet. Ex. A at 9.

**D.** Despite Secretary Austin's decision to withdraw from the pretrial agreements, respondents filed motions asking the military commission to schedule dates for them to enter pleas in accordance with those agreements, arguing that the Secretary's withdrawal was invalid. Pet. Ex. A at 2-3. The military commission agreed with respondents, refusing to give effect to Secretary Austin's decision and agreeing to schedule a hearing for respondents to enter their pleas in accordance with the pretrial agreements. *Id.* at 29.

## II.    Extraordinary-Writ Proceedings

The government sought a writ of mandamus and prohibition in the United States Court of Miliary Commission Review (USCMCR) to effectuate

Secretary Austin's withdrawal from the pretrial agreements; that court declined to issue the writ on the sole ground that in the two days it took Secretary Austin to withdraw, respondents had begun performing a promise contained in their pretrial agreements. *In re Mohammad*, 762 F. Supp. 3d 1183 (U.S.C.M.C.R. 2024).

The government then sought extraordinary relief from this Court and filed an emergency request for a stay of military-commission proceedings to prevent irreparable harm stemming from the military judge's imminent acceptance of respondents' pleas, scheduled to begin on January 10, 2025. Pet. Ex. C at 4. This Court granted an administrative stay on January 9, 2025. Order (Jan. 9, 2025). After hearing argument and concluding that the United States "has satisfied the stringent requirements for a stay pending disposition of the petition for a writ of mandamus," the Court granted such a stay. Order (Feb. 7, 2025).

On July 11, 2025, the Court held that "[w]hile mandamus and prohibition are extraordinary forms of relief, they are warranted in this case." *In re United States*, 143 F.4th 411, 419 (D.C. Cir. 2025). The Court explained that "[t]he Secretary of Defense indisputably had legal authority to withdraw from the [pretrial] agreements; the plain and unambiguous text

6

of the pretrial agreements shows that no performance of promises had
begun; the government has no adequate alternative remedy to vindicate its
interests; and the equities make issuance of the writs appropriate." *Id.*
Accordingly, the Court "grant[ed] the writs, vacate[d] the military judge's
order of November 6, 2024, preventing the Secretary of Defense's
withdrawal from the pretrial agreements, and prohibit[ed] the military judge
from conducting hearings in which Respondents would enter guilty pleas or
take any other action pursuant to the withdrawn pretrial agreements." *Id.* at
442. The Court provided that "[t]he stay pending disposition of the petition
will be dissolved in 21 days, when the order accompanying this opinion
becomes effective." *Id.* (citing D.C. Cir. Rule 41(a)(3)).  Judge Wilkins
dissented.

Respondents did not seek to delay the effective date of the writs, which
thus went into effect August 1, 2025.  Respondents did, however, obtain a 30-
day extension of the time in which to file their petitions for rehearing en banc
and thus did not file them until September 24, 2025.  Order (July 30, 2025).

## III.  Post-Writ Military-Commission Proceedings

Since August 1, 2025, the prosecution has complied with the
Commission's rulings and orders, attempting to move the case to trial.  *See,*

7

*e.g.*, AE983B (Mil. Comm'n Aug. 28, 2025) (complying with the Commission's AE983 order and noticing proposed voir dire questions for the new military judge). The military commission currently has ten upcoming sessions scheduled in 2025 and 2026 to address pretrial matters.[2] Respondents, however, have not substantively participated in the pretrial proceedings the military commission resumed once this Court's writs issued. *See, e.g.*, AE631AAAA (Mil. Comm'n Aug. 12, 2025) (informing the commission that "Mr. bin 'Atash remains unable to file any substantive reply to" a prosecution filing "because doing so would constitute a violation of his [pretrial agreement]"); AE705U (Mil. Comm'n Aug. 1, 2025) (Hawsawi's motion seeking to suspend briefing on his own prior motion because filing a reply "would jeopardize the viability of a [pretrial agreement] that Mr. al Hawsawi believes to be legally binding").

Respondents asked the military judge to suspend pretrial proceedings until litigation regarding those agreements "has been finally adjudicated," including any proceedings before the Supreme Court. Motion Exhibit (Mot.

---

[2] In 2025, pretrial proceedings are scheduled for December 8-19. *See* AE953 (Fourteenth Amend) (Mil. Comm'n Sept. 2, 2025). In 2026, pretrial proceedings are scheduled for January 5-23, March 23-27, May 4-29, June 22-26, July 13-31, August 17-28, September 28-October 2, October 19-November 13, and December 7-18. *See* AE984 (Mil. Comm'n Aug. 18, 2025).

Ex.) B at 1 (AE982 (Mil. Comm'n Aug. 6, 2025)).  According to respondents,

requiring them to participate in contested hearings would "expose the

accused to the loss of their plea bargains" based on their view that they

"must continue to comply with their obligations under [the pretrial

agreements], including the obligation to refrain from filing motions and

engaging in contested litigation," or else give the government a basis to

withdraw from the agreements in the future.  *Id.* at 2-3.

In response, the United States explained that "the Accused would not

and could not be in violation of the terms of agreements that no longer exist."

AE982A at 4 (Mil. Comm'n Aug. 18, 2025).[3]  To allay respondents' asserted

"concern about 'violating' agreements that are currently without effect," the

United States further stated:  "The Prosecution has been specifically

authorized by the Secretary of Defense; Brigadier General (Ret.) Susan

Escallier; the Department of Justice, including the National Security

Division, the Civil Division, and the Office of the Solicitor General; and the

Chief Prosecutor to represent that the United States will be bound by its

representation that any Defense motions or other contested litigation

---

[3] Available on the public military-commission docket at
https://www.mc.mil/Cases/MC-Cases.

occurring between 1 August 2025—the date the stay was dissolved and the D.C. Circuit ruling became effective—and any potential appellate court decision to resurrect the [pretrial agreements] would not constitute grounds for the United States to withdraw from those agreements." *Id.* at 6.

The military judge denied respondents' motion to stay proceedings. Mot. Ex. A. Although he declined to rely on the United States' arguments and specific representation that it could not use respondents' litigation now to later invalidate the pretrial agreements (if ever resurrected), he explained that respondents had the burden of persuasion and proof, and that "[t]here is no evidence of record to show that a denial of this motion would result in a miscarriage of justice for any Party." *Id.* at 5, 9.

## ARGUMENT

This Court should deny respondents Bin 'Atash and Hawsawi's request to stay military-commission proceedings "while this Court reviews their petitions for rehearing en banc." Mot. 1. To receive a stay, respondents must show that the Court is likely to grant their petitions for rehearing en banc, that they will suffer irreparable harm absent a stay, and that a stay will not harm the interests of the government and public, which merge here. *See Nken v. Holder*, 556 U.S. 418, 426, 435 (2009). These requirements are

"stringent," Order (Feb. 7, 2025), and respondents cannot satisfy any, let alone all, of them.

Respondents' asserted harm is illusory: the pretrial agreements are not in effect; respondents are now under no obligation to refrain from contested litigation in the military commission; and should the pretrial agreements ever be reinstated, the government could not use such contested litigation as a basis to invalidate those agreements. The government has already clearly and enforceably conceded as much and has no objection to this Court recognizing the binding nature of that concession. On the other side of the ledger, the public interest in resolution of these long-pending prosecutions of immense national significance strongly weighs against an order barring the military commission from making progress toward respondents' trial while this Court considers the en banc petitions. Finally, respondents cannot establish a likelihood of success on those petitions; the panel majority properly recognized the Secretary of Defense's authority to decide whether plea agreements in this hugely consequential case should go forward where nothing in the plain text of those agreements or the record in this case prevented him from withdrawing.

## I.    Respondents Will Suffer No Harm Absent A Stay.

Respondents base their claim of irreparable injury absent a stay on the premise that they face the "impossible choice" of either complying with the pretrial agreements by "declining to litigate before the military commission" and thereby "forfeiting their rights in a capital case," or "engaging in contested pre-trial litigation that would give the government a new and independent ground to withdraw from the agreements." Mot. 11.

This concern is wholly unfounded. The pretrial agreements are not in effect and do not bind respondents. In granting the government's petition for a writ of mandamus and prohibition, this Court held that then-Secretary of Defense Austin possessed the authority to withdraw from the pretrial agreements, and that he lawfully exercised that authority before respondents began performing their promises under those agreements. *In re United States*, 143 F.4th 411, 419 (D.C. Cir. 2025). This ruling became effective on August 1, 2025, rendering effective "the Secretary of Defense's withdrawal from the pretrial agreements, and prohibit[ing] the military judge from conducting hearings in which Respondents . . . take any . . . action pursuant to the withdrawn pretrial agreements." *Id.* at 442; D.C. Cir. Rule 41(a)(3). There is no reason for respondents to be concerned about breaching pretrial

agreements that are not in effect and which this Court has said they may not act under.

Nor would respondents' "litigation at this stage . . . permit the government to claim that Respondents had breached their agreements and create a new and independent basis for the government to withdraw from them," should those agreements ever be reinstated by this Court sitting en banc or the Supreme Court. Mot. 2. In the unlikely event that the pretrial agreements are reinstated on further review, the government has unequivocally conceded that "any Defense motions or other contested litigation occurring between 1 August 2025—the date the stay was dissolved and the D.C. Circuit ruling became effective—and any potential appellate court decision to resurrect the [pretrial agreements] would not constitute grounds for the United States to withdraw from those agreements." AE982A at 6. Further, "[t]he Prosecution" clarified that it was "specifically authorized by the Secretary of Defense; Brigadier General (Ret.) Susan Escallier; the Department of Justice, including the National Security Division, the Civil Division, and the Office of the Solicitor General; and the Chief Prosecutor to represent that the United States will be bound by [this] representation." *Id.* And the United States reiterates that representation

13

here, to this Court: if this Court denies a stay and respondents engage in contested litigation before the military commission, any such litigation between August 1, 2025, and the date of any future court decision reinstating the pretrial agreements cannot serve as the basis for the United States withdrawing from those agreements.

This Court should accept the government's concession as binding and reject respondent's stay request on that basis alone. *See, e.g.*, *In re Al-Nashiri*, 47 F.4th 820, 825 (D.C. Cir. 2022) (holding a detainee's challenge moot where the government provided "'strong' and 'sufficient' assurances" through filings and oral argument "that the Government has changed its [challenged] practice"). The military judge incorrectly suggested that the government could not be bound by its representation because of the "general rule against applying estoppel against the Government." Mot. Ex. A at 8 & n.31 (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990)). But while the Supreme Court has made clear that "equitable estoppel will not lie against the Government as it lies against private litigants," and that "unauthorized" statements of "agents of the Executive" cannot trigger "estoppel against the Government in the context of payment of money from the Treasury," *Richmond*, 496 U.S. at 419, 428, it has never indicated that

14

courts are barred from holding the government to authorized positions taken earlier in the same litigation.  Were it otherwise, courts could never invoke government concessions or conclude the government had forfeited or waived arguments, as they regularly do.  *See, e.g.*, *United States v. Brown*, 125 F.4th 1186, 1206 (D.C. Cir. 2025) (noting that the "government concedes" that a disclosure of passwords was "testimonial"); *United States v. Sheffield*, 832 F.3d 296, 303 (D.C. Cir. 2016) (holding the government's "argument . . . forfeited because the government failed to raise it in district court").[4]

---

[4] Indeed, the Supreme Court has made clear that state governments are subject to the equitable doctrine of judicial estoppel, *i.e.*, the principle that a party to litigation may not "prevail[] in one phase of a case on an argument and then rely[] on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation marks omitted) (observing that the doctrine is intended "to protect the integrity of the judicial process" (quotation marks omitted)).  As the Court noted, although "ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states," judicial estoppel may nonetheless be appropriate against a state where such estoppel would not "compromise a governmental interest in enforcing the law" or prevent a government from effecting a "change in public policy." *Id.* at 755 (quotation marks omitted).  Several courts have concluded that the United States is similarly subject to judicial estoppel. *See, e.g.*, *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1147-49 (9th Cir. 2011); *see also Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 710 (D.C. Cir. 2022) (concluding that "[s]ince the IRS's positions are not inconsistent, the IRS is not judicially estopped").

## II.   Further Delaying Respondents' Trial Would Cause Certain And Serious Public Harms.

A stay, if granted, will unduly harm the government and public interests, which merge here, *see Nken*, 556 U.S. at 435, by unnecessarily prolonging proceedings of immense national concern.

**A.**  The September 11 terrorist attacks were the most devastating ever inflicted on our nation and have left a lasting impact on the American public. And yet, trial against the alleged perpetrators of these attacks has been long delayed, *see supra* pp. 3-4.  Now, respondents seek an order barring the military commission from making progress toward that trial, introducing yet further delay.  While respondents contend that they seek only a "brief" stay, Mot. 17, they ask that the stay remain in place "pending resolution of [their] petitions for rehearing en banc," Mot. 18, a process not subject to any time limit.

Prompting such unnecessary delay in the ongoing prosecution of respondents harms the public and the government.  As this Court recognized, there is a "significant public interest in the resolution of these proceedings." *In re United States*, 143 F.4th at 423.  A stay is at cross-purposes with that public interest.  Moreover, the 13 years that have passed since this military commission was convened have created substantial

16

burdens on the government's ability to prosecute these matters and vindicate the public interest. "Twenty-two victim family members who were expected to be witnesses have passed away without seeing justice served, and nearly 90 percent of the Federal Bureau of Investigation personnel identified on the Prosecution's witness list who had some role in the investigation of the September 11, 2001 attacks have retired." AE982A at 7. Further delay only increases the risk that more witnesses will become unavailable, and more government employees intimately involved in the investigation and prosecution will retire before these cases are tried.

Staying the ongoing military-commission proceedings would also unnecessarily exacerbate the backlog of matters requiring resolution by the military judge before trial can begin. There are "at least 94 pending pretrial motions awaiting judicial resolution, including 20 Defense Motions to Dismiss, and 14 Defense Motions to Suppress Evidence." AE982A at 7. These motions are fully briefed, pending before the Commission, and can be resolved either entirely based on their papers or require only limited witness testimony. *Id.* Absent a stay, the government anticipates some such matters "can be finished by the end of the calendar year." *Id.* The military judge declined to stay proceedings and cease work on such matters (even without

recognizing that the government could be held to its representations, obviating respondents' asserted harms), and this Court should decline to prohibit the military judge from making progress on such pretrial matters.

**B.** Respondents suggest that further delay is somehow warranted because of the government's decision to withdraw from the pretrial agreements and seek a writ of mandamus and prohibition and a stay from this Court. Mot. 16-17. But the fact that the Secretary of Defense exercised the authority Congress entrusted to him to determine that the interests of the American public are better served by pursuing a full trial of those accused of planning the September 11 attacks was in no way an effort to delay trial. Nor can the government be faulted for seeking, and receiving, a stay of proceedings necessary to prevent the military judge from accepting pleas pursuant to pretrial agreements from which the Secretary had validly withdrawn while this Court considered the propriety of issuing an extraordinary writ clearing the way to recommence the proceedings respondents now seek to stall.

Furthermore, respondents' suggestion (Mot. 11) that the government has attempted to obtain some advantage by delaying the resolution of their rehearing petitions lacks any basis. The government sought a stay of its

18

rehearing response deadline solely in light of the Antideficiency Act's strictures on government employees working during a lapse in appropriations, 31 U.S.C. § 1341(a), and respondents did not oppose that stay. Nor is the resumption of military-commission proceedings prior to this Court's resolution of respondents' en banc requests the government's doing. *Cf.* Mot. 11. Rather, that result flows from the ordinary application of this Court's rules, which make a writ of mandamus or prohibition "effective automatically 21 days after issuance in the absence of an order or other special direction of this court to the contrary." D.C. Cir. Rule 41(a)(3). Respondents did not seek to alter the effective date of the writs this Court issued, despite this Court making clear that those writs would go into effect and military-commission proceedings could resume as of August 1, 2025. *See In re United States*, 143 F.4th at 442; *cf. J.G.G. v. Trump*, No. 25-5124, 2025 WL 2502005, at *1 (D.C. Cir. Aug. 29, 2025) (per curiam) (staying effective date of mandamus relief "pending disposition of the petition for rehearing en banc"). On the contrary, respondents themselves prolonged the time period between resumption of military-commission proceedings and this Court's consideration of their en banc petitions by seeking a 30-day extension of time to file those petitions.

19

### III.   Respondents Cannot Show A Likelihood Of Success On The Merits Of Their Rehearing Petitions.

Respondents fail to establish that this Court is likely to grant their petitions for rehearing en banc.  As Judges Millett and Rao explained in their joint opinion for the Court, the Rules for Military Commissions (R.M.C.) expressly provide that the "convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement," and define the term "convening authority" to mean "the Secretary of Defense or any officer or official of the United States designated by the Secretary of Defense for that purpose." R.M.C. 103(a)(10); R.M.C. 705(d)(4)(B).  Both the USCMCR and this Court agreed that, pursuant to this Rule, the Secretary has a clear and indisputable authority to remove subordinate convening authorities "at will" and reserve for himself the power to enter into or withdraw from pretrial agreements. *In re United States*, 143 F.4th at 424-26; *see id.* at 422.

Furthermore, this Court correctly concluded, based on its thorough review of the pretrial agreements and the record, that the Secretary could lawfully withdraw from the pretrial agreements because respondents had not yet begun performing the promises contained within those agreements in the two days before the Secretary acted. *In re United States*, 143 F.4th at 426-

20

37.  Absent a writ, the military judge would erroneously permit "guilty pleas [to be] entered, sentences imposed, and final judgments rendered," creating consequences "significantly hamper[ing]" "the government's ability" to then try respondents (even assuming an appeal route exists for the government). *Id.* at 439.  The Court thus correctly concluded that the "government has demonstrated that it has no reliable and 'adequate' alternative avenue to obtain the relief it seeks—an opportunity to try these three Respondents and seek the death penalty." *Id.* at 437-40.

The Court explained that issuing the writs was "necessary and appropriate because of the significant national interest in the disposition of these cases, which have implications for the military chain of command under the Commissions Act and for the proper functioning of military commissions." *In re United States*, 143 F.4th at 440.  These prosecutions "implicate a national interest of the highest degree," given that "[r]espondents are the alleged mastermind and two alleged co-conspirators behind the terror attacks of September 11, 2001, which killed nearly three thousand people on American soil." *Id.*  By refusing to allow the Secretary to exercise the authority Congress entrusted to him—including the "grave" "judgment about whether Respondents should face the death penalty"—the

military judge "[f]ail[ed] to recognize" the politically accountable "Secretary's overarching responsibility for the appropriate resolution of these prosecutions." *Id.*

Respondents do not engage with the Court's extensive and well-supported reasoning, instead contending that this Court is likely to rehear this case en banc because the panel recognized that this case involves "unique and important" issues, the panel decision was not unanimous, and the panel's reasoning departs from that in a decision from the Court of Appeals for the Armed Forces. Mot. 10 (quotation marks omitted). None of these reasons establishes that a rare grant of rehearing en banc is likely here. To begin, that this "case implicates the interests of the entire nation," was a reason to *grant* extraordinary relief, not a basis to revisit it; these prosecutions should "proceed according to the Secretary's best judgment," not a subordinate official's, and certainly not according to a "military judge's legal error." *In re United States*, 143 F.4th at 440. Nor does the absence of unanimity regarding the issuance of the writs indicate that the government lacked "clear and indisputable" rights. Mot. 10. Reasonable jurists may disagree about whether the high standard for mandamus relief has been satisfied, but such disagreement does not give a single judge effective veto

22

power over the issuance of extraordinary writs a majority has concluded are warranted. *See, e.g.*, *Hollingsworth v. Perry*, 558 U.S. 183, 188, 190 (2010) (finding likelihood of success under the mandamus standard even though four Justices disagreed). And finally, respondents' reliance on a single contrary decision from the Article I Court of Appeals for the Armed Forces to establish a "circuit split" is misplaced. Mot. 10. The Court explained that this Court's decisions regarding the Uniform Code of Military Justice are only "instructive" and "do not control [this Court's] interpretation of the Commissions Act." *In re United States*, 143 F.4th at 435 n.10 (citing 10 U.S.C. § 948b(c)). And in any event, the decision in question was based on "distinguishable" facts, failed to "explain how its holding was consistent" with either the text of the applicable court-martial rule or "basic principles of contract law," and in relevant part was "not necessary to the court's disposition." *Id.* Nothing about diverging from such a decision meets the standard for en banc review. *See* Fed. R. App. P. 40(b)(2).

## CONCLUSION

For the foregoing reasons, respondents' motion to stay military-commission proceedings should be denied.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney*
  *General*

MARK R. FREEMAN
MELISSA N. PATTERSON

 */s/ Sophia Shams*
SOPHIA SHAMS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7213*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2495*
  *sophia.shams@usdoj.gov*

November 2025

24

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Opposition to the motion to intervene satisfies the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,795 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.


*/s/ Sophia Shams*
SOPHIA SHAMS

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Sophia Shams*
SOPHIA SHAMS