**[ARGUED JANUARY 28, 2025]**

No. 25-1009

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

In re UNITED STATES, Petitioner.

_____

OPPOSITION TO
PETITIONS FOR REHEARING EN BANC

_____

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney
  General*

MARK R. FREEMAN
MELISSA N. PATTERSON
SOPHIA SHAMS
  *Attorneys, Appellate Staff
  Civil Division, Room 7213
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-2495*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

GLOSSARY................................................................................................iv

INTRODUCTION.........................................................................................1

STATEMENT ..............................................................................................2

ARGUMENT ...............................................................................................9

I.    The Panel Properly Restored The Secretary's Authority Over A
Military Commission Of Immense National Importance.........................10

II.   Respondents Identify No Basis For En Banc Review............................14

CONCLUSION ..........................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Al Bahlul v. United States,*
967 F.3d 858 (D.C. Cir. 2020) ....................................................11

*Al Baluchi, In re,*
952 F.3d 363 (D.C. Cir. 2020) ................................................ 15

*al-Nashiri, In re,*
791 F.3d 71 (D.C. Cir. 2015)......................................................19

*Cheney v. U.S. Dist. Court,*
542 U.S. 367 (2004) ................................................ 10, 15

*Khadr v. United States,*
67 F.4th 413 (D.C. Cir. 2023) ................................................ 16

*Middendorf v. Henry,*
425 U.S. 25 (1976) ................................................................ 16

*Mohammad, In re,*
866 F.3d 473 (D.C. Cir. 2017) ................................................ 17

*United States, In re,*
614 F.3d 661 (7th Cir. 2010) ................................................ 19-20

*United States v. Dean,*
67 M.J. 224 (C.A.A.F. 2009) ................................................ 17

*United States v. Fokker Servs. B.V.,*
818 F.3d 733 (D.C. Cir. 2016) ................................................ 15

*United States v. Hardy,*
4 M.J. 20 (C.M.A. 1977) ................................................ 19

**Statutes:**

10 U.S.C. § 948b(b) ................................................................ 10

10 U.S.C. § 948b(c) ................................................................ 18

10 U.S.C. § 948h ........................................................... 3, 11

10 U.S.C. § 948j(a) ........................................................... 10

10 U.S.C. § 949a(a) ........................................................... 10

10 U.S.C. § 949b(a)(2)(B) ..................................................... 18

10 U.S.C. § 950g(a) ........................................................... 19

10 U.S.C. § 950t(2) ............................................................. 3

**Regulatory Material:**

Exec. Order No. 14347,
    90 Fed. Reg. 43,893 (Sept. 5, 2025) ..................................... 3

**Rules:**

R.M.C. 401(a) .................................................................. 11

R.M.C. 704(e) .................................................................. 11

R.M.C. 705 ..................................................................... 12

R.M.C. 705(a) .................................................................. 11

R.M.C. 705(d)(4)(B) .................................................. 6, 11, 12, 17

# GLOSSARY

| | |
|---|---|
| Pet. Ex. | Exhibit attached to the United States' Petition for a Writ of Mandamus and Prohibition |
| CAAF | United States Court of Appeals for the Armed Forces |
| MCA | Military Commissions Act of 2009 |
| Op. | Panel Opinion |
| R.M.C. | Rules for Military Commissions |
| USCMCR | United States Court of Miliary Commission Review |

# INTRODUCTION

Congress vested the Secretary of Defense with responsibility for military commissions to try the alleged perpetrators of the September 11 terrorist attacks. As permitted by statute, the Secretary delegated his role as the Convening Authority to a subordinate. That subordinate later signed pretrial agreements with respondents—those alleged to have helped plan and execute the attacks—rather than proceeding to trial on the multiple capital charges they face. Then-Secretary Lloyd Austin acted promptly, reclaiming his authority over pretrial agreements and withdrawing from the agreements within two days. That exercise of the Secretary's own statutory authority should have put an end to the newly minted pretrial agreements.

Instead, the military judge decided to permit respondents to plead guilty under the invalidated pretrial agreements at a coming hearing, refusing to give effect to the Secretary's withdrawal. The panel here acted to prevent the military judge's clear legal errors from overriding the Secretary's considered judgment that "the American public deserve[s] the opportunity to see military commission trials carried out." Op.49. Acknowledging "the stringent criteria for granting writs of mandamus and prohibition," the panel thoroughly explained why the government satisfied

them, making this the "rare case in which that exacting standard has been met." Op.11, 49-50. Accordingly, the panel restored the Secretary's decision that respondents should face trial, explaining that "this case implicates the interests of the entire nation, [and] the military judge's legal error must be corrected so the prosecutions may proceed according to the Secretary's best judgment." Op.46.

Nothing in the panel's restoration of the Secretary's authority warrants granting respondents' rehearing petitions. Respondents are wrong that the panel majority misunderstood or failed to apply the demanding standard to issue extraordinary relief. They are wrong that this matter involves factual disputes or any other feature triggering deferential review of military-court rulings. And they are wrong insofar as one (Bin 'Attash) claims the Secretary acted unlawfully in exercising his own authority, and the other two (Mohammad and Hawsawi) contend that this Court lacks authority to issue extraordinary writs in a case within its appellate jurisdiction. The petitions for rehearing en banc should be denied.

## STATEMENT

**1.** On September 11, 2001, the United States suffered the deadliest terrorist attacks in our nation's history. The attacks left 2,976 people dead;

injured numerous civilians, military personnel, and first responders; and destroyed tens of billions of dollars' worth of property. Respondents Khalid Shaikh Mohammad, Walid Bin 'Attash, and Mustafa al Hawsawi are charged with perpetrating the September 11 attacks; they face multiple charges that carry the death penalty. *See Referred Charge Sheets* (https://perma.cc/N6WD-E5XJ); *see, e.g.*, 10 U.S.C. § 950t(2).

Military commissions are not standing bodies; they are convened to try a particular case. Congress vested the Secretary of Defense with the authority to himself convene a military commission or to designate an officer or official to do so. *See* 10 U.S.C. § 948h.[1] Secretary of Defense Robert Gates originally appointed such an official, who in turn convened the military commission to try respondents. Pet. Ex. A at 4. On August 21, 2023, then-Secretary of Defense Austin designated as Convening Authority retired Army Brigadier General Susan Escallier. Escallier later authorized negotiation with respondents regarding pretrial agreements. *Id.* at 4-6.

---

[1] The current Secretary now holds the titles "Secretary of Defense" and "Secretary of War." Exec. Order No. 14347, § 2(a), 90 Fed. Reg. 43,893 (Sept. 5, 2025). Because the actions of a former Secretary holding only the title "Secretary of Defense" are at issue in this case, this opposition refers to the position as "Secretary of Defense."

On July 29 and 30, 2024, respondents signed Offers for Pretrial Agreements, which, *inter alia*, offered to plead guilty to all charges in exchange for the removal of the possibility of death sentences. Pet. Ex. A at 6-7. On July 31, 2024, Escallier signed all three offers. *Id.* at 7.

Two days later, on August 2, 2024, Secretary Austin issued a memorandum to Escallier stating:

> I have determined that, in light of the significance of the decision to enter into pre-trial agreements with the accused in the above-referenced case, responsibility for such a decision should rest with me as the superior convening authority under the [Military Commissions Act (MCA)]. Effective immediately, I hereby withdraw your authority in the above-referenced case to enter into a pre-trial agreement and reserve such authority to myself.

> Effective immediately, in the exercise of my authority, I hereby withdraw from the three pre-trial agreements that you signed on July 31, 2024 in the above-referenced case.

Pet. Ex. A at 9.

**2.** Respondents argued, and the military judge presiding over the commission agreed, that the Secretary's withdrawal from the pretrial agreements was invalid. Pet. Ex. A at 2-3, 29. The military judge concluded that the Secretary could not exercise the withdrawal authority provided by the Rules for Military Commissions (R.M.C.) because it "belongs to the convening authority alone and is not subject to a limitation as the Secretary

may prescribe." *Id.* at 25; *see also id.* at 21.[2]  The military judge further concluded that withdrawal was impermissible because respondents had already begun performance under the agreements.  *Id.* at 25-27.  The military judge accordingly deemed Secretary Austin's decision void and planned a hearing for respondents to enter their pleas in accordance with the pretrial agreements.  *Id.* at 28-29 & n.122.

The government sought a writ of mandamus and prohibition in the United States Court of Miliary Commission Review (USCMCR) to effectuate Secretary Austin's withdrawal from the pretrial agreements.  The USCMCR disagreed with the military judge's determination that the Secretary lacked authority to withdraw authority over pretrial agreements from Escallier, concluding instead that the Secretary's "vast authority includes the authority to act as convening authority to approve or disapprove [pretrial agreements] without taking all of the responsibilities of the convening authority."  Pet. Ex. B at 13.  But the court ultimately declined to grant the government relief on the sole ground that in the two days it took Secretary Austin to withdraw,

---

[2] The Rules for Military Commissions are available at https://perma.cc/XT4R-63CS.

respondents had begun performing a promise contained in their pretrial agreements. *Id.* at 18.

3. On the government's petition, this Court issued writs of mandamus and prohibition, barring the military judge from permitting respondents to "enter guilty pleas or take any other action pursuant to the" pretrial agreements from which the Secretary had withdrawn. Op.50. In a joint opinion by Judge Millett and Judge Rao, the Court explained that although such writs "are extraordinary forms of relief, they are warranted in this case" given the "clear and indisputable errors committed by the military judge, which implicate issues of immense national importance." Op.3, 49-50.

The Court detailed how the government "satisfied the stringent criteria for granting writs of mandamus and prohibition." Op.50. First, the Court explained why the government had a clear and indisputable right to relief. Op.12-40. The Court agreed with the USCMCR that the Secretary "possessed the authority to wholly or partially withdraw Escallier's delegated power and step into her shoes to manage the pretrial agreements with Respondents." Op.13. And the Court explained that whether respondents had "beg[un] performance of promises contained in the agreements" under R.M.C. 705(d)(4)(B) turned on "the applicable principles

of contract law" and the unambiguous agreement terms. Op.18, 21 (cleaned up). Applying established precedent, the Court reviewed these questions de novo and concluded that the government had established a "clear and indisputable right to relief" from the military judge's "straightforward error given the plain text of the pretrial agreements and the undisputed facts in this case." Op.22, 40; *see also* Op.32, 39.

Next, the Court concluded that the government "demonstrated that it has no reliable and 'adequate' alternative avenue to obtain the relief it seeks—an opportunity to try these three Respondents and seek the death penalty." Op.45. "[N]o interlocutory appeal is available" to the government in this circumstance, nor does it have a "reliable path to obtain effective relief after final judgment." Op.41-42.

Finally, the Court found mandamus relief appropriate, observing that the military judge's decision "has wide implications for the Secretary's ability to execute his legal duties" and "enormous practical consequences for the government's ability to negotiate future settlements." Op.47-48 (quotation marks omitted). The Court emphasized that this case "implicate[s] a national interest of the highest degree," involving the "entire nation" and the strong public interest in "bringing the perpetrators [of the September 11 attacks] to

justice." Op.46. The "grave" responsibility for determining "whether Respondents should face the death penalty" lies with the Secretary of Defense and "requires political accountability." Op.46. By refusing to acknowledge the Secretary's authority to "reassert[] a part of the convening authority" he had "delegated to a subordinate," the military judge "[f]ail[ed] to recognize the Secretary's overarching responsibility for the appropriate resolution of these prosecutions." Op.46. The Court explained that the judge's "legal error must be corrected so the prosecutions may proceed according to the Secretary's best judgment." Op.46.

Accordingly, in full recognition that "[m]andamus and prohibition are extraordinary forms of relief that will be granted only in exceptional circumstances," the Court concluded that "[t]his is a rare case in which that exacting standard has been met." Op.11. The Court granted the writs, thus permitting the Secretary to effectuate his "determin[ation] that the 'families and the American public deserve the opportunity to see military commission trials carried out'" for those accused of planning the September 11 attacks. Op.49-50.

Judge Wilkins concurred in part and dissented in part. Judge Wilkins agreed that the majority "rightly determine[d] that the Secretary of Defense

had authority to withdraw Escallier's ability to enter into plea agreements and that, aside from a writ of mandamus or prohibition, the government lacks an adequate and alternative means of obtaining relief." Dissent 2. But Judge Wilkins disagreed that the Secretary's withdrawal was valid based on his view that respondents had already begun performance of promises made in the agreements. *See, e.g.*, Dissent 1-2.

## ARGUMENT

The panel's decision restores to the Secretary of Defense, who is accountable to the public through the President, the ultimate responsibility to decide whether the alleged perpetrators of the September 11 attacks should face a military-commission trial on capital charges. Reasonable minds may disagree over the right way forward in these cases. The panel rightly recognized, however, that in military-commission proceedings "implicat[ing] the interests of the entire nation," the "grave" responsibility for making that decision rests with the Secretary. Op.46. Respondents identify no error in the panel's decision, much less an error warranting en banc review. The petitions for rehearing should be denied.

**I.    The Panel Properly Restored The Secretary's Authority Over A Military Commission Of Immense National Importance.**

Applying the familiar, three-part All Writs Act standard, the panel majority correctly issued writs of mandamus and prohibition to prevent a military judge from "impos[ing] an 'unwarranted impairment' of the Secretary in the performance of his duties in this critical national security context." Op.47 (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 390 (2004)).

**A.**  First, the panel correctly concluded that under the MCA and applicable rules, the Secretary had clear and indisputable authority to step in swiftly as convening authority to withdraw from the pretrial agreements. Op.12-40.

**1.**  As the panel explained, the Secretary's decision to reclaim part of his convening-authority powers and reassume responsibility over pretrial agreements was "well within his statutory authority and in accordance with his responsibility to oversee his subordinates" as the "superior convening authority." Op.13, 15.  Congress gave the Secretary "broad authority … to determine the structure and procedures for military commissions." Op.13 (citing 10 U.S.C. §§ 948b(b), 949a(a), 948j(a)).  The Secretary undoubtedly has the power to "serve as the convening authority" himself or delegate that

authority to an "'inferior officer'" subject to the Secretary's "'oversight and control,'" including removal at will. Op.13-15 (quoting *Al Bahlul v. United States*, 967 F.3d 858, 872-73 (D.C. Cir. 2020)) (citing 10 U.S.C. § 948h).

The military judge "clearly and indisputably err[ed]" in finding that the Secretary's power to exercise his convening authority was an all-or-nothing proposition. Op.16. "Nothing in the [MCA] prevents the Secretary from removing some, rather than all, of the convening authority's powers." Op.15. Indeed, the military-commission rules make plain that the Secretary "may withhold the authority of a subordinate" in various regards. R.M.C. 401(a); *see* R.M.C. 704(e), 705(a). "The Secretary's power to delegate his convening authority in part necessarily includes the power to withdraw a delegation in part," and thus "the Secretary lawfully withdrew Escallier's authority over Respondents' pretrial agreements." Op.15.

2. The panel also correctly recognized that the Secretary validly withdrew from the pretrial agreements in accordance with the military-commission rules. The military-commission rules expressly afford the convening authority the opportunity to withdraw from a pretrial agreement "at any time before the accused begins performance of promises contained in the agreement." R.M.C. 705(d)(4)(B). At no point in the two-day period

before the Secretary acted did respondents do anything to start performing promises contained in the newly signed agreements. Op.16-40.

As the panel explained, the three ways the military judge considered respondents to have begun such performance cannot be reconciled with the plain language of either R.M.C. 705(d)(4)(B) or the pretrial agreements. Op.17. Two of those ways depend on actions taken *before* the agreements even existed. Op.17, 31-40 (discussing respondents' pre-agreement stipulations of fact and negotiations). Such an atextual view of R.M.C. 705 would mean that the convening authority's opportunity to withdraw was extinguished the moment it was created, wrongly "eliminating the flexibility provided by the withdrawal regulation." Op.48. The remaining way—"refraining from examining a witness and from filing motions"—turned on "straightforward error given the plain text of the pretrial agreements and the undisputed facts in this case." Op.17, 22. Such *inaction* does not begin performance of respondents' "promise to withdraw their motions" or "waive[] all waivable motions," which are affirmative acts. Op.24, 28. It is "indisputable that Respondents did not move to withdraw their suppression motions at the hearing," nor did they do anything "to waive their existing motions." Op.27, 30. To the contrary, respondents "acquiesced in keeping

[their motions] on the docket when the trial judge said he would preserve them." Op.27.

**B.**  Next, as the panel unanimously concluded (and no party currently disputes), the government has no adequate alternative means to obtain relief from the military judge's invalidation of the Secretary's decision.  Op.40-45. "[N]othing in the text of the [MCA] authorizes interlocutory appeal" in a case like this, and even assuming the government could seek direct review, respondents "likely would claim irredeemable prejudice from being tried after admitting to the facts of their guilt on the record and under oath during both plea and sentencing hearings."  Op.42, 44.

**C.**  Finally, the panel rightly described why the circumstances overwhelmingly favor extraordinary relief to ensure that this trial of "immense national importance" proceeds according to the "best judgment" of the politically accountable Secretary, rather than being thwarted by a military judge's legal error.  Op.46, 50.  The prosecution of respondents for planning the deadliest terrorist attacks in the nation's history "implicate a national interest of the highest degree."  Op.46.  The "grave" responsibility for deciding "whether Respondents should face the death penalty" lies with the Secretary of Defense.  Op.46.  The panel majority properly refused to

allow "[t]he military judge's error" to "undermine[] political legitimacy and accountability" in this case "by placing an inferior convening authority beyond the Secretary's superintendence." Op.47. And it ensured that the judge's "erroneous interpretation of the withdrawal regulation" does not cause lasting harm beyond this case by "unduly limit[ing] the ability of future convening authorities to negotiate and withdraw from pretrial agreements." Op.47.

## II.    Respondents Identify No Basis For En Banc Review.

Respondents identify no error in the panel majority's thorough decision, let alone any error that warrants en banc review.

**A.** Respondents base their request for en banc review on their repeated contentions (Bin 'Attash 2-8, 17; Mohammad 1, 4-18) that the panel majority departed from this Court's precedent regarding the high standard for extraordinary relief. But the majority expressly and repeatedly recognized that "stringent" standard. Op.50; *see* Op.3, 11, 12, 32, 39, 40, 45, 50. Far from "[d]ilut[ing]" the mandamus standard, Bin 'Attash 2, the majority made clear at every turn its faithful application of this Court's precedent limiting extraordinary writs to cases where a party demonstrates "a clear and indisputable" right to relief, has "no other adequate means to

attain the relief he desires," and shows that "the writ is appropriate under the circumstances," Op.11 (quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (quoting *Cheney*, 542 U.S. at 380-81)). The majority explained at length its conclusion that the government satisfied that standard, including its exegesis of the "black-letter law" entrenched in Supreme Court and this Court's precedent. Op.19.

Respondents identify no departure from this Court's mandamus standard. They plainly disagree with the majority's application of that standard, but such case-specific grievances are not a basis for en banc review. Nor is rehearing warranted by respondents' insistence that this Court's mandamus standard includes a "requirement that a petitioner 'point to cases in which a federal court has held that relief is warranted in a matter involving like issues and comparable circumstances.'" Mohammad 4 (quoting *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020)). This Court has explained that pointing to similar circumstances is one—not the only—way a petitioner can meet the standard, *Al Baluchi*, 952 F.3d at 369, and it has "never required the existence of a prior opinion addressing the precise factual circumstances or statutory provision at issue in order to find clear error justifying mandamus relief," *Fokker Servs.*, 818 F.3d at 749-50.

Indeed, a contrary rule would mean that the more extraordinary and unusual an error, the less able this Court would be to use its mandamus authority to correct it.

**B.** Respondents also contend that the majority erred in declining to defer to the military judge's ruling. They argue that this case turns on factual disputes requiring deference to the judge's factual findings, *see* Mohammad 10-12—without identifying a single disputed fact. As the panel majority explained, the "relevant facts concerning Respondents' conduct" are "documented" and "not in question." Op.18 (same of facts regarding respondents' offers); *see* Op.22 n.6 (explaining that "what the dissenting opinion characterizes as factual determinations" stem from "*legal* error").

Nor was this Court obliged to defer to the military courts' application of an analogous court-martial rule. *Contra* Mohammad 7-9; Bin 'Attash 4-6. Respondents rely on *Middendorf v. Henry*, 425 U.S. 25 (1976), which observes that military-court judgments are usually entitled to deference when "[d]ealing with areas of law peculiar to the military branches." *Id.* at 43 (declining to defer where military court's view did not turn on "military necessity"). No such peculiarity exists here. *See Khadr v. United States*, 67 F.4th 413, 419 (D.C. Cir. 2023) (applying "contract principles in

interpreting a plea agreement" in a military commission).  The relevant

military-commission rule incorporates well-known contract-law terms, in the

context of plea agreements—hardly matters unique to military law.  *See*

R.M.C. 705(d)(4)(B).  Respondents thus err in suggesting that this Court was

required to defer to the Article I Court of Appeals for the Armed Forces'

(CAAF) interpretation of the same contract-based language in a court-

martial rule in *United States v. Dean*, 67 M.J. 224 (C.A.A.F. 2009); *see In re*

*Mohammad*, 866 F.3d 473, 475-77 (D.C. Cir. 2017) (per curiam) (granting

mandamus to reverse the USCMCR judge's application of military-

commission recusal rules).

    In any event, even were this an issue peculiar to the military, the panel

majority correctly declined to defer to *Dean*'s "unpersuasive" reasoning and

"distinguishable" facts.  Op.35 n.10.  *Dean*'s conclusion that an accused may

begin performance of promises in a pretrial agreement *before* that

agreement even exists cannot be squared with the "text of the withdrawal

regulation," *id.*, and would effectively close the Secretary's window to

withdraw before it even opens, *see* Op.47-48.  Congress made CAAF

decisions "'instructive,'" not controlling, and the panel had no duty to defer to

*Dean*'s counterintuitive ruling, which was not even "necessary to the court's

disposition." Op.35 n.10 (quoting 10 U.S.C. § 948b(c)) (noting the court also found performance based on an action that "occurred *after* the pretrial agreement was finalized") (emphasis added). The panel did not err, let alone commit error warranting rehearing en banc, by refusing to follow an erroneous and unnecessary rationale in a nonbinding decision.

**C.** Bin 'Attash repeats (at 8-17) his argument that the Secretary could not reassume his convening authority with respect to pretrial agreements. Every jurist to consider the military judge's conclusion to that effect has correctly rejected it, including the unanimous USCMCR and the dissent here. *See* Pet. Ex. B at 7; Dissent 2. As the panel explained, the "Secretary's power to delegate his convening authority in part necessarily includes the power to withdraw a delegation in part," and nothing in the MCA or applicable regulations provides otherwise. Op.15.

Bin 'Attash identifies no basis for revisiting that straightforward conclusion en banc. Contrary to Bin 'Attash's assertions, neither 10 U.S.C. § 949b(a)(2)(B)'s prohibition on unlawful influence over the convening authority nor any case law implementing that prohibition have any relevance where the Secretary lawfully withdrew "his previous delegation of convening authority" and exercised for himself the convening authority's discretion and

18

"authority to withdraw from the pretrial agreements," rather than "seek[ing] to govern how [Escallier] performed her delegated duties." Op.16. *Compare* Bin 'Attash 11, *with* Pet. Ex. B at 12 (concluding that *United States v. Hardy*, 4 M.J. 20 (C.M.A. 1977), "stands for the proposition that the Secretary of Defense cannot *order* … Escallier to withdraw from respondents'" agreements).[3]

**D.** Finally, Mohammad and Hawsawi contend (at 12-15) that despite this Court's appellate jurisdiction over military-commission cases, 10 U.S.C. § 950g(a), this Court lacks authority to issue extraordinary writs in this case. That is plainly incorrect. "[O]nce there has been a proceeding of some kind that might lead to an appeal,' [this Court has] jurisdiction to issue writs." Op.10 (quoting *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015)). Respondents cite no authority for their view (Mohammad 14) that courts may exercise this authority at the behest of the government only if the government may appeal from the underlying proceeding—a view standing in stark contrast to well-established mandamus principles. *See, e.g., In re*

---

[3] Bin 'Attash's wide-ranging view of unlawful influence underscores that the Secretary acted reasonably in "delay[ing] action to avoid an unlawful influence challenge, … stay[ing] his hand and allow[ing] negotiations to run their course," until he "found the resulting agreements unacceptable and contrary to the public interest." Op.49.

*United States*, 614 F.3d 661, 663 (7th Cir. 2010) (mandamus at government's request given inability to appeal due to Double Jeopardy).  Under respondents' blinkered understanding of mandamus authority, only an accused could ever seek an extraordinary writ to right grievous military-commission errors, no matter how egregious the lower tribunal mistake or how significant the harm to the government's interests.  Far from providing a reason to grant rehearing en banc, this view has no support in law or logic.

**CONCLUSION**

The petitions for rehearing en banc should be denied.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney*
   *General*

MARK R. FREEMAN
MELISSA N. PATTERSON

*/s/ Sophia Shams*
SOPHIA SHAMS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7213*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-2495*
   *sophia.shams@usdoj.gov*

DECEMBER 2025

# CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in 14-point CenturyExpd BT, a proportionally spaced font.

I further certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,847 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the count of Microsoft Word.

*/s/ Sophia Shams*

Sophia Shams

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2025, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Sophia Shams
_____
Sophia Shams