**[ARGUED JANUARY 28, 2025]**

No. 25-1009

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re UNITED STATES, Petitioner.

# UNITED STATES' RESPONSE TO RESPONDENTS' MOTION TO CLARIFY THE MANDATE

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7259*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1201*

## TABLE OF CONTENTS

GLOSSARY ........ ii

INTRODUCTION ........ 1

STATEMENT ........ 2

ARGUMENT ........ 8

I. Respondents Fail To Identify And Cannot Meet The Relevant Standard For This Court To Take Action In This Long-Concluded Case. ........ 8

II. Further Action In This Case Is Unwarranted Under Any Standard. ........ 14

CONCLUSION ........ 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ATTACHMENTS

MATERIAL UNDER SEAL DELETED

## GLOSSARY

| | |
|---|---|
| Dissent | Dissent in the Panel Opinion |
| Ex. | Exhibit attached to the Motion To Clarify The Mandate |
| Mot. | Motion To Clarify The Mandate |
| Op. | Panel Opinion |
| R.M.C. | Rules for Military Commissions |
| USCMCR | United States Court of Miliary Commission Review |

## INTRODUCTION

This case arose from a military judge's decision to schedule hearings to permit those alleged to have planned the September 11 terrorist attacks to plead guilty and avoid capital sentences under pretrial agreements from which the Secretary of Defense had withdrawn. To correct the military judge's "clear and indisputable errors," this Court issued writs of mandamus and prohibition to restore the Secretary's considered judgment that "the American public deserve[s] the opportunity to see military commission trials carried out" and to ensure that the "grave" decision whether the accused "should face the death penalty" was made with the appropriate "political accountability." Op. 46, 49 (quotation marks omitted). The Court's mandamus decision went into effect on August 1, 2025. Op. 50; D.C. Cir. Rule 41(a)(3).

A year later, two of the respondents in this case have returned to this Court, asking it to take further action in light of their dissatisfaction with ongoing military-commission proceedings. Respondents do not even attempt to meet—nor could they satisfy—the extraordinary-circumstances standard that applies to requests to reassert the Court's authority in a case that has ended, incorrectly suggesting that appellate courts have free-floating

MATERIAL UNDER SEAL DELETED

authority to clarify their opinions for mere "good cause" after relinquishing jurisdiction. In any event, under any standard, no cause exists for this Court to take further action in this case. There is no allegation that the military commission has failed to respect this Court's instructions; on the contrary, the crux of respondents' grievance is that the military judge has given *too* full effect to this Court's writs. That complaint is ill-founded—the judge has appropriately declined to permit respondents to enter guilty pleas under [redacted] the pretrial agreements from which the Secretary validly withdrew—but any disputes on that score can be litigated through the ordinary appellate process after final judgment. This Court should deny respondents' motion.

## STATEMENT

**1.** On September 11, 2001, the United States suffered the deadliest terrorist attacks in our nation's history. The attacks left 2,976 people dead; injured numerous civilians, military personnel, and first responders; and destroyed tens of billions of dollars' worth of property. Respondents Khalid Sheikh Mohammad, Mustafa Ahmed Adam al Hawsawi, and Walid Muhammad Salih Mubarak bin 'Atash have been charged alongside Ali Abdul Aziz Ali with perpetrating the September 11 attacks; they face

MATERIAL UNDER SEAL DELETED

multiple charges that carry the death penalty. *See Referred Charge Sheets* (https://perma.cc/N6WD-E5XJ); *see, e.g.*, 10 U.S.C. § 950t(2) (attacking civilians).

Pursuant to his authority under the Military Commission Act of 2009, the Secretary of Defense designated an official to convene a military commission to try all four co-conspirators. Op. 4; *see* 10 U.S.C. § 948h (vesting the Secretary with authority convene a military commission himself or to designate an officer or official to do so).[1] On August 21, 2023, the Secretary designated as Convening Authority retired Army Brigadier General Susan Escallier. Op. 4. On July 29 and 30, 2024, respondents signed Offers for Pretrial Agreements, which, *inter alia*, offered to plead guilty to all charges in exchange for the removal of the possibility of death sentences. Op. 4-5. On July 31, 2024, Escallier signed all three offers. Op. 5. Two days later, on August 2, 2024, the Secretary "withdrew Convening Authority Escallier's authority to enter into a pre-trial agreement with any of the three

[1] The current Secretary now holds the titles "Secretary of Defense" and "Secretary of War." Exec. Order No. 14347, § 2(a), 90 Fed. Reg. 43,893 (Sept. 5, 2025). Because the actions of a former Secretary holding only the title "Secretary of Defense" were at issue in this case, this response refers to the position as "Secretary of Defense."

MATERIAL UNDER SEAL DELETED

Respondents," "reserved such authority to himself," and "withdr[ew] from each of the pretrial agreements" under his own reclaimed authority. Op. 7 (alterations adopted and quotation marks omitted).

Despite the Secretary's withdrawal from the pretrial agreements, the military judge presiding over the commission scheduled hearings to allow respondents to enter their pleas under those agreements, agreeing with respondents that the Secretary's withdrawal was invalid. Op. 3, 8. The United States Court of Miliary Commission Review denied the government's request for relief, agreeing with the military judge that the Secretary could not lawfully withdraw from the agreements because respondents had begun performance of promises contained within the agreements. Op. 8-9.

**2.** The government petitioned this Court for writs of mandamus and prohibition. On July 11, 2025, this Court issued such writs. Op. 3, 49-50. The Court concluded that respondents had not begun performance of promises contained in the pretrial agreements and thus that "[t]he Secretary acted within the bounds of his legal authority" in withdrawing from the agreements; the Court accordingly "decline[d] to second-guess his judgment." Op. 49. The Court explained that although such writs "are extraordinary forms of relief, they are warranted in this case" given the

MATERIAL UNDER SEAL DELETED

"clear and indisputable errors committed by the military judge, which implicate issues of immense national importance." Op. 49-50; *see also* Op. 3. Accordingly, this Court "vacate[d] the military judge's order of November 6, 2024, preventing the Secretary of Defense's withdrawal from the pretrial agreements," and issued writs "prohibit[ing] the military judge from conducting hearings in which Respondents would enter guilty pleas or take any other action pursuant to the withdrawn agreements." Op. 50; *see* Order (July 11, 2025).

Consistent with D.C. Cir. Rule 41(a)(3), the Court provided that its order issuing the writs would become effective in 21 days, *i.e.*, August 1, 2025. Op. 50; Order (July 11, 2025). Respondents timely filed petitions for rehearing en banc and two of them sought a stay of military-commission proceedings while their petitions were under consideration. This Court declined to stay military-commission proceedings, Order (Dec. 9, 2025), and later denied respondents' en banc petitions, Order (Jan. 6, 2026).[2]

[2] Respondents have also filed petitions for certiorari, which are currently pending before the Supreme Court. *Walid bin 'Atash v. United States*, No. 25-1335 (filed May 21, 2026); *Khalid Shaikh Mohammad, et al.* v. *United States*, No. 26-13 (filed June 5, 2026).

MATERIAL UNDER SEAL DELETED

**3.** Following this Court's denial of respondents' petitions for rehearing en banc—and despite this Court's order barring the military judge from permitting respondents to enter guilty pleas pursuant to the withdrawn pretrial agreements—respondents Mohammad and al Hawsawi filed motions in the military commission asking the military judge to schedule a hearing to enter their guilty pleas pursuant to the withdrawn pretrial agreements. *See* AE 955SS (KSM)/AE 957NN (MAH) (Mil. Comm'n Feb. 26, 2026) (Attachment A).[3] They contended that an argument that they failed to brief or argue in this Court permitted the military judge to once again invalidate the Secretary's withdrawal from the agreements on the theory that respondents had begun performance. *See, e.g.*, *id.* at 2 ([redacted]). Respondents Mohammad and al Hawsawi also filed motions before the military commission requesting that [redacted]. *See* AE 955UU (KSM)/AE 957PP (MAH) (Mil. Comm'n Mar. 2, 2026) (Attachment B).

[3] Military-commission documents cited herein that are currently publicly unavailable are attached to the sealed version of this response.

MATERIAL UNDER SEAL DELETED

The military judge denied both motions. With respect to respondents' motion to schedule a hearing to enter pleas under the withdrawn agreement, the judge explained that "[g]ranting the motion would require the Commission to take a prohibited 'action pursuant to the withdrawn' [pretrial agreements] and would constitute a violation of a clear mandate from a superior court." Ex. B at 2. And with respect to respondents' request to [redacted] the military judge again looked to this Court's order, explaining that the "request relies upon giving legal effect to the withdrawn agreements to recognize a change in the nature of the proceedings," which the judge concluded was inconsistent with this Court's mandamus order. Ex. A. at 3-4.

On July 30, 2026, over a year after this Court issued its mandamus decision and more than six months after this Court denied their petition for rehearing en banc, respondents Mohammad and al Hawsawi filed this motion styled as a request for clarification of the Court's mandamus decision in light of the military judge's denial of respondents' motions.

## ARGUMENT

### I. Respondents Fail To Identify And Cannot Meet The Relevant Standard For This Court To Take Action In This Long-Concluded Case.

"[I]ssuance of the mandate formally marks the end of appellate jurisdiction." *N. Cal. Power Agency v. Nuclear Regul. Comm'n*, 393 F.3d 223, 224 (D.C. Cir. 2004) (quoting *Johnson v. Bechtel Assocs. Prof'l Corp.*, 801 F.2d 412, 415 (D.C. Cir. 1986) (per curiam)). Courts of appeals "have an inherent power to recall their mandates" and reassert the power to take action in a case after their role has concluded, but the Supreme Court has instructed that "the power can be exercised only in extraordinary circumstances," as a matter of "last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon v. Thompson*, 523 U.S. 538, 549-50 (1998). "[T]he profound interests in repose attaching to the mandate of a court of appeals" would be seriously undermined were a court to continue to exercise authority in a case after relinquishing jurisdiction short of such extraordinary circumstances. *Id.* (citation omitted).

In this action under the All Writs Act, 28 U.S.C. §1651, this Court's rules provide that a mandate does not issue but nonetheless set out the time at which its order "will become effective" on the lower tribunal subject to the

writ. D.C. Cir. R. 41(a)(3) (setting an "automatic[]" 21-day period absent an order to the contrary). In its order issued July 11, 2025, this Court left in place Rule 41's default 21-day period, making August 1, 2025, the date on which its writs went into effect, at which point the military commission was required to recognize that the Secretary validly withdrew from respondents' pretrial agreements and was prohibited from conducting hearings at which respondents take action under those withdrawn agreements. *See* Order (July 11, 2025). This Court declined to rehear this case en banc on January 6, 2026. This Court nowhere indicated it was retaining jurisdiction over this matter, and the same interests in repose that attend the issuance of a mandate attend the end of this § 1651 case.

Respondents appear to agree that the usual principles attending the issuance of a mandate apply in this case, arguing that the Court should "clarify the mandate." Through this "clarification" motion, they ask this Court to correct asserted errors in the ongoing military-commission proceedings, insisting that in July 2026, many months after this case ended, the military judge erred by denying their motions to enforce the withdrawn pretrial agreements, in whole or part, based on an overbroad reading of this Court's prior decision. *See* Mot. 2-3.

As the very cases respondents cite demonstrate, however, such requests to correct a lower tribunal are to be made through the ordinary appellate process or by showing anew that the high bar for issuing a new extraordinary writ has been met. *See In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895) ("[E]ither upon an application for a writ of mandamus or upon a new appeal it is for this court to construe its own mandate, and to act accordingly."); *City of Cleveland, Ohio v. Fed. Power Comm'n*, 561 F.2d 344, 346, 350 n.43 (D.C. Cir. 1977) (observing it was "obvious[]" that a litigant seeking an order directing compliance with an earlier mandate "seeks relief in the nature of mandamus" and concluding that courts are "armed to rectify any deviation [from their mandates] through the process of mandamus"). This Court assuredly "has mandamus jurisdiction 'to confine a lower court to the terms of an appellate tribunal's mandate,'" but this Court has made clear that "as in all mandamus cases," such relief can issue only where a litigant shows a "clear and indisputable right to relief," "no other adequate means of redress," and that the issuance of a writ requiring compliance is appropriate "under the circumstances." *In re Trade and Commerce Bank By and Through Fisher*, 890 F.3d 301, 303 (D.C. Cir. 2018) (first quoting *Will v. United States*, 389 U.S. 90, 95-96 (1967); and then citing *Cheney v. United*

*States Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). Respondents appear unwilling to wait to appeal upon final judgment. *See* Mot. 3 (suggesting immediate intervention is warranted to avoid “unnecessary litigation and uncertainty”). And they do not even try to meet the standard for this Court to exercise its All Writs Act authority once again.

The only means for this Court to reassert jurisdiction in this case—rather than entertaining a new case—would be by concluding that respondents had satisfied the standard applicable to recalling the mandate, showing that this measure of “last resort” reserved for “extraordinary circumstances” is warranted here. *Calderon*, 523 U.S. at 549-50; *see N. Cal. Power Agency*, 393 F.3d at 224 (explaining that where “[t]he mandate … issued nearly a year ago, and the time for a rehearing petition has long since expired,” “[t]o restore our jurisdiction, the mandate would have to be recalled”). Respondents’ primary argument is that this standard does not apply to requests to “clarify” a court’s opinion post-mandate, which they contend this Court may do without recall for “[g]ood cause.” Mot. 8; *see id.* at 10 (asserting that their “motion does not require[] the extraordinary power to recall a mandate”).

That is incorrect. Where this Court has clarified a mandate, it has recalled that mandate, after concluding that the standard for doing so had been satisfied. *See Dilley v. Alexander*, 627 F.2d 407, 412 (D.C. Cir. 1980) (concluding "the 'exceptional circumstances' necessary to retrieve the mandate that has left our chambers" and "sufficient grounds and power to recall our mandate and do so for the purpose of the clarification herein indicated"); *see also Greater Bos. Television Corp. v. F.C.C.*, 463 F.2d 268, 277-78 (D.C. Cir. 1972) (listing an appellate court's "continuing power to accept and pass upon a petition to clarify an outstanding mandate" as among the "[p]articular grounds for recall of mandate"). And that standard demands more than "good cause," requiring extraordinary circumstances. *See Calderon*, 523 U.S. at 550.[4] Respondents make no attempt to satisfy the recall standard. They assert briefly "that the mandate [could] be recalled for the limited purpose of clarification," but they offer no argument to justify a recall. Mot. 17.

[4] Notably, many of the cases respondents cite predate the Supreme Court's reminder in *Calderon* that the standard courts of appeals must apply in recalling a mandate is exceedingly stringent, to be used "sparing[ly]," as a "last resort," in light of "grave, unforeseen contingencies." *Calderon*, 523 U.S. at 550.

Alternatively, respondents posit, their motion could "be treated as one to enforce the mandate as construed." Mot. 17 (citing *City of Cleveland*, 561 F.2d at 346-48). But as discussed, this Court has made clear that such motions to enforce a mandate proceed through mandamus and are subject to the usual extraordinary-writ standard, which respondents similarly do not attempt to meet. *See City of Cleveland*, 561 F.2d at 345, 348 n.43; *In re Trade and Commerce Bank*, 890 F.3d at 303.

Respondents' failure to make any arguments that they satisfy either the recall or mandamus standards may stem from their manifest inability to meet those standards. They contend that the military judge has erred by refusing to give effect to the pretrial agreements from which the Secretary validly withdrew, arguing they should be allowed to plead guilty under [redacted] those now-withdrawn agreements. Mot. 2-3. The military judge correctly refused to permit respondents to proceed under the withdrawn agreements, but even were there any error, as explained below, respondents can raise such errors through the ordinary appellate channels after final judgment. *See infra* p.15-16; *Johnson*, 801 F.2d at 416 ("Surely with the normal process of appeal available, resort to the extraordinary step of recalling the mandate is

unjustifiable."); Op. 40 ("A petition for a writ of mandamus or prohibition 'may never be employed as a substitute for appeal.'" (quoting *Will*, 389 U.S. at 97)).

Given respondents' failure to identify and inability to meet the relevant standard to take further action in this case, this Court should deny the motion.

## II. Further Action In This Case Is Unwarranted Under Any Standard.

In any event, respondents' motion fails under any standard. Respondents contend that "[c]larification is necessary" to correct the military judge's orders barring them from taking various actions under the withdrawn pretrial agreements. Mot. 2. Specifically, respondents argue that under a proper understanding of this Court's writs, the military judge should have allowed them to re-raise an argument about an "alternative ground for beginning performance" they originally raised before the military judge but then failed to brief or argue as a basis on which this Court "could deny the government's petition." Dissent 9 n.1; *see* Mot. 2, 12-14; Ex. B at 2. Apparently in the alternative, they also argue that they should be allowed to enforce at least *part* of the agreements [redacted]. *See* Mot. 2, 16; Ex. A at 3. The government vigorously

MATERIAL UNDER SEAL DELETED

disagrees, and in the military commission, it explained the multiple independent bases on which these contentions fail. *See* AE 955TT (GOV)/AE 957OO (GOV) (Mil. Comm'n Feb. 27, 2026); AE 955XX (GOV)/AE 956PP (GOV)/AE 957SS (GOV) (Mil. Comm'n Mar. 12, 2026) (explaining several independent reasons the military judge could not properly enforce provisions of the withdrawn agreements) (Attachment C).

Regardless of who has the better of these points, however, there is no reason these disputes cannot be resolved through the ordinary appellate process. If respondents are correct that [redacted] they can vindicate any such right on appeal after final judgment. Congress provided for appellate review of final judgments issued by military commissions, first in the United States Court of Military Commission Review (USCMCR), *see* 10 U.S.C. §§ 950c(a), 950f, and then in this Court, *id.* § 950g(a), (b) (providing that this Court "shall have exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission" but noting that this Court "may not review a final judgment … until all other appeals … have been waived or exhausted"). And Congress has declined to afford defendants an interlocutory-appeal right in military-

MATERIAL UNDER SEAL DELETED

commission cases. *Cf. id.* § 950d (describing limited circumstances in which the United States may seek interlocutory review). Because respondents have an available remedy later, their desire to get a quick, interlocutory resolution of their current grievance with the military judge's orders, before any final judgment, is hardly a basis for eschewing the appellate-review scheme Congress established. Granting respondents' motion would effectively allow respondents to bypass both those channels and the strictures that attend this Court's ability to issue extraordinary writs absent appellate jurisdiction.

Indeed, *Sprague v. Toconic*, 307 U.S. 161 (1939)—which respondents incorrectly describe as "on all fours with this case," Mot. 11—highlights the efficacy of the ordinary appellate process in remedying the type of error respondents here assert. The Supreme Court there reviewed an appellate judgment after an appeal. *See Sprague*, 307 U.S. at 162 ("The case is here on certiorari to the Circuit Court of Appeals for the First Circuit which affirmed … a decree of the District Court for the District of Maine denying a petition" for attorney's fees.). The Court reversed because the lower courts had misconstrued the Court's mandate issued in a prior stage of the case, incorrectly viewing that mandate as foreclosing their ability to consider an

issue. *See id.* at 162-64, 167-70. Were respondents right that the military judge erred in concluding that they could not enforce all or part of the withdrawn pretrial agreements, the USCMCR, this Court, or the Supreme Court would be equally capable of remedying that error in an appeal after final judgment. *See id.*; *see also Am. Council of the Blind v. Mnuchin*, 977 F.3d 1, 5-7 (D.C. Cir. 2020) (considering on appeal the argument that district court violated this Court's mandate issued in a prior appeal of the case).

Finally, respondents do not allege any "deviat[ion] from the mandate issued by an appellate court," and their reliance on cases involving such mandate violations is misplaced. *Am. Council of the Blind*, 977 F.3d at 5 (quotation marks omitted). In *Dilley*, this Court recalled the mandate and clarified its opinion where it concluded an agency had "contravene[d] the opinion of this court" by failing to comply with the entirety of the remedy previously ordered. 627 F.2d at 413; *see id.* at 411 (explaining that the Army had wrongfully failed to afford appellants all of the "remedy envisioned by [the court's] first opinion," where the Army had reinstated appellants but refused them back pay and other benefits of service). Similarly, in *City of Cleveland*, this Court observed that it had the power to "rectify" a "deviation" from its prior mandate "through the process of mandamus,"

MATERIAL UNDER SEAL DELETED

concluding that an agency had underestimated the breadth of the Court's mandate and prior opinion, and was thus wrongfully "confin[ing] the inquiry on remand." 561 F.2d at 345-48. This Court's actions in those cases were to ensure the implementation of its prior orders in the face of a failure to adhere to those orders' full scope.

Respondents allege no such deviation from this Court's instructions, nor any failure to give effect to any aspect of this Court's writs. Quite the contrary—respondents complain that the military judge is being *too* careful in hewing to those instructions, giving the extraordinary writs this Court issued too broad a scope. *See* Mot. 6, 7, 14. If they were well-founded, such complaints would state an error, not a violation of this Court's order. As demonstrated by *Sprague*, that type of error is entirely remediable on appeal and provides no basis for this Court to intervene in the ongoing military-commission proceedings now.

MATERIAL UNDER SEAL DELETED

## CONCLUSION

The motion to clarify the mandate should be denied.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN

*/s/ Melissa N. Patterson*
MELISSA N. PATTERSON
SOPHIA SHAMS
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2495*
*sophia.shams@usdoj.gov*

August 2026

MATERIAL UNDER SEAL DELETED

## CERTIFICATE OF COMPLIANCE

I certify that this response complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in 14-point CenturyExpd BT, a proportionally spaced font.

I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3,676 words, excluding the parts exempted under Federal Rule of Appellate Procedure 32(f), according to the count of Microsoft Word.

/s/ *Melissa N. Patterson*
Melissa N. Patterson

MATERIAL UNDER SEAL DELETED

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, the sealed version of the foregoing was filed electronically with the Court under and delivered by electronic mail to counsel for respondents. On the same date, I electronically filed a redacted, public version of this response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Melissa N. Patterson*
Melissa N. Patterson

# ATTACHMENTS

A. AE 955SS (KSM)/AE 957NN (MAH) (Mil. Comm'n Feb. 26, 2026)

B. AE 955UU (KSM)/AE 957PP (MAH) (Mil. Comm'n Mar. 2, 2026)

C. AE 955XX (GOV)/AE 956PP (GOV)/AE 957SS (GOV) (Mil. Comm'n Mar. 12, 2026)