ORAL ARGUMENT HELD ON JANUARY 28, 2025
**UNITED STATES COURT OF APPEALS**
***for the* District of Columbia Circuit**

| | | |
|---|---|---|
| | ) | No. 25-1009 |
| In re: UNITED STATES, | ) | **RESPONDENTS' REPLY IN SUPPORT OF THEIR MOTION TO CLARIFY** |
| *Petitioner.* | ) | |
| | ) | Dated: August 31, 2026 |

The writ this Court issued on July 11, 2025, ECF Doc. No. 2124901 ("Order"), and its supporting opinion held, in relevant part, that the Secretary of Defense's withdrawal from Respondents' pretrial agreements was not untimely for the reasons the Commission and CMCR had held it to be under Rule for Military Commissions ("R.M.C.") 705(d)(4)(B). *In re United States*, 143 F.4th 411, 429-437 (D.C. Cir. 2025). The new Military Judge now presiding over Respondents' trial has interpreted this Court's Order to prohibit the Commission from deciding any legal question arising out of the pretrial agreements that might entitle Respondents to relief. Respondents therefore moved this Court to clarify that three specific questions, which were neither presented to nor decided by this Court, remain open for the Military Judge to decide on their merits in the first instance.

Petitioner opposes Respondents' motion, but not on the merits. It does not dispute that this Court decided one question: that the four acts the Commission identified as precluding the Secretary's withdrawal did not constitute the beginning of performance under R.M.C. 705(d)(4)(B). It does not defend the Military Judge's reading of the Order on the merits, arguing instead that "[r]egardless of who has the better of these points," any error should await an appeal from a final capital judgment. Resp.15. It also concedes that, because this is a mandamus proceeding, "a mandate does not issue." Resp.8.

Nevertheless, Petitioner insists that Respondents' motion should be denied because this Court lacks the power to say what its own outstanding orders mean, unless Respondents either obtain a new extraordinary writ or satisfy the standard for recalling a mandate that, by Petitioner's own account, never issued. That is not the law, and none of Petitioner's authorities holds otherwise.

## I. The Law Governing the Recall of the Mandate Does Not Apply Because There Is Nothing to Recall and No Judgment to Reopen.

Petitioner principally argues that this Court may only clarify its orders when a movant satisfies the stringent standard governing the recall of a mandate. Resp.8-13. This argument is doubly wrong.

Foremost, there is no need to recall the mandate because there is no mandate. Unlike appeals, which divest the lower court of jurisdiction, mandamus petitions are "separate action[s], not appeal[s]." *In re Flynn*, 973 F.3d 74, 78 (D.C.

Cir. 2020) (en banc) (citation omitted). Like district court injunctions, writs that issue in such actions are remedial orders. They neither require a mandate to become effective nor embody any final judgment.

As this Court explained in rejecting Respondents' jurisdictional objections, writs issue in aid of this Court's "appellate jurisdiction over the underlying proceeding," which is not yet subject to final judgment in any tribunal. 143 F.4th at 423; *see Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943). Filing a mandamus petition does not divest the lower court of jurisdiction. *Clark v. Taylor*, 627 F.2d 284, 288 (D.C. Cir. 1980). And once issued, the writ acts directly upon those to whom it is addressed.

The absence of a mandate in mandamus proceedings is of more than formal significance. A writ entered on an interlocutory basis is neither a final judgment nor a judgment at all. It is an interlocutory order directing equitable relief. Extraordinary writs do not implicate "the profound interests in repose" that attach when a mandate issues after final judgment, and an appellate court relinquishes jurisdiction over a case. *Calderon v. Thompson*, 523 U.S. 538, 550 (1998). The writ here issued in an ongoing case where the precise relief Petitioner sought was to *prevent* any repose and finality.

## II. This Court's Continuing Authority to Construe Its Own Order Does Not Require a New Writ.

Conceding there is no mandate to recall, Petitioner alternatively argues that Respondents must satisfy the mandamus standard for this Court to clarify its Order. Resp.10-13. But the courts to have held that mandamus is the proper vehicle for correcting a lower court's misapplication of a prior appellate opinion have done so because once an appeal is decided, the mandate issues, and the case is remanded, the court of appeals lacks jurisdiction over the case. *Johnson v. Bechtel*, 801 F.2d 412, 415 (D.C. Cir. 1986) ("Issuance of the mandate formally marks the end of appellate jurisdiction. Jurisdiction returns to the tribunal to which the mandate is directed"). Returning the case to the court of appeals outside the ordinary appellate process therefore requires resort to the All Writs Act.

A writ of mandamus, however, entails no mandate, no remand, and no divestiture of this Court's jurisdiction once the writ has issued. It is an order granting equitable relief as an exercise of this Court's prospective appellate jurisdiction. There is therefore no need for an additional writ of mandamus to invoke this Court's prospective appellate jurisdiction anew, because clarifying the scope of this Court's Order is an exercise of the same jurisdiction that Petitioner invoked when it petitioned this Court to issue it.

What is more, by issuing an order with continuing prospective effect, this Court assumed a special duty to ensure that those it binds understand its scope.

Parties in doubt about an order's terms "may petition the court granting it for a modification or construction of the order," and "courts would not be apt to withhold a clarification in the light of a concrete situation that left parties … in the dark as to their duty toward the court." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945). "Questions of construction had better be ironed out before enforcement orders issue than upon contempt proceedings." *Id.* (quoting *J. I. Case Co. v. NLRB*, 321 U.S. 332, 341 (1944)). And, while a party seeking to *modify* such an order bears a substantial burden, no such burden applies to a motion asking to "only elaborate[] on the meaning of preexisting injunctive provisions" because it does not "actually change[] the legal relationship of the parties." *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 844, 848 (D.C. Cir. 2012).

Here, there is good cause for clarification because the Military Judge has construed this Court's Order to preclude Respondents from seeking any relief arising out of their pretrial agreements. That is not what this Court held, in either the Order or its opinion. And Petitioner conspicuously does not defend the Military Judge's interpretation on the merits. It says only that, "[r]egardless of who has the better of these points," any error can be corrected through "the ordinary appellate process." Resp.15. If that is all Petitioner can muster in defense of the Military Judge's misconstruction of the Order, that is good cause enough for this Court to clarify what the Order means.

As Respondents stated in their motion, they do not seek to recall a mandate, to relitigate any issue, or to change a single word of this Court's opinion. Mot. 4, 10. They ask only that this Court resolve an ambiguity in the scope of its Order that came to light when the Military Judge construed it to preclude his consideration of legal questions neither explicitly nor implicitly decided by this Court, and never decided by any court.

### III. Even If Respondents Must Meet the Mandamus Standard, That Standard Is Readily Met.

**1. Respondents have a clear and indisputable right to relief.** Just as the Commission has a duty not to do what this Court prohibited, it has an equal duty to apply this Court's opinion faithfully. Judicial decisions decide only the questions presented, and their preclusive effect on lower tribunals extends only to what the appellate court "has affirmatively decided …, be it explicitly or by necessary implication." *Crocker v. Piedmont Aviation*, 49 F.3d 735, 739 (D.C. Cir. 1995); *see In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895) (on remand, a lower court "may consider and decide any matters left open by the mandate"). Respondents have a statutory and constitutional right to seek relief on legal arguments that this Court did not decide. That right is clear and indisputable.

Petitioner contends that Respondents, in effect, forfeited their alternative performance argument by not advancing it sufficiently in this Court. Resp.6, 14-15. This contention is a concession. As responding parties, Respondents had the right

to assert any alternative ground on which the rulings below could be sustained, *United States v. American Railway Express*, 265 U.S. 425, 435 (1924), but they had no obligation to do so. A prevailing party need not cross-appeal to defend a judgment on grounds that were not expressly rejected by the lower court, *Jennings v. Stephens*, 574 U.S. 271, 276 (2015), and this Court has refused to force "appellees to put forth every conceivable alternative ground for affirmance." *Crocker*, 49 F.3d at 740.

Petitioner's forfeiture argument therefore concedes what matters most: the performance argument the Military Judge deemed precluded was never presented to this Court and, for that reason, could not have been precluded. To be sure, Respondents pressed it below. But the Military Judge never ruled on it, the CMCR never reached it, and Judge Wilkins "decline[d] to decide the question in the first instance," with no member of the panel suggesting otherwise. 143 F.4th at 446 n.1 (Wilkins, J., concurring in part and dissenting in part). Respondents have a clear and indisputable right to have this argument decided on the merits.

Respondents also have a clear and indisputable right to seek the remedies that their pretrial agreements expressly provided them in the event Petitioner withdrew. This Court held, in no uncertain terms, that "the military judge's order of November 6, 2024, preventing the Secretary of Defense's withdrawal from the pretrial agreements, be vacated." Removing an obstacle to the Secretary's

withdrawal in no way purports to adjudicate the legal consequences that the parties agreed would follow if such a withdrawal occurred.

Rather than defend the Military Judge's conclusion that this Court had precluded him from deciding issues that were never before this Court, Petitioner incorporates by reference its briefing in opposition to the Respondents' motions before the Commission arguing the merits. Resp.15. Those arguments are meritless. But regardless, Respondents have a clear and indisputable right to their arguments being decided on the merits by the Commission and not ducked because of an overly broad interpretation of this Court's Order.

**2. Respondents have no other adequate means of obtaining relief.** This Court's Order continues to bind the Commission in the conduct of its proceedings, and the Military Judge has now held twice that the Order precludes him from adjudicating questions Respondents have a statutory and constitutional right to have adjudicated. This Court has routinely granted requests to correct a lower court's or agency's misapprehension of the scope of an appellate order. *See City of Cleveland v. FPC*, 561 F.2d 344, 346-48 (D.C. Cir. 1977) (mandamus "may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision" (quoting *Yablonski v. United Mine Workers of America*, 454 F.2d 1036, 1038 (D.C. Cir. 1971))); *Atlantic City Electric v. FERC*, 329 F.3d 856,

858-59 (D.C. Cir. 2003) (granting petition to enforce the mandate where the agency had misconceived the court's prior decision).

In *City of Cleveland*, this Court granted a "Motion For An Order Directing Compliance With Mandate," reasoning that this Court's jurisdiction to do so rested on the "process of mandamus," which the Court further held "may appropriately be utilized to correct a misconception of the scope and effect of the appellate decision." 561 F.2d at 348 (cleaned up). There, as here, this Court deemed it necessary to correct the agency's erroneous interpretation of its opinion, which the agency had misconstrued "to confine the inquiry on remand." *Id*. Doing so was necessary because, even though the Court had issued a mandate, its preclusive effect "does not apply to points not decided on a previous appeal, even though they then could have been." *Id*.

Respondents will also suffer irreparable harm in the absence of an order clarifying the scope of this Court's Order. Whether Respondents continue to face the death penalty is at the heart of what the Military Judge has ruled he is precluded from deciding. Petitioner dismisses the gravity of that interest: "[i]f respondents are correct that they have some legal entitlement to avoid capital sentences … they can vindicate any such right on appeal after final judgment." Resp.15. That gets it precisely backwards. The Supreme Court has long emphasized the special importance of fair procedure in capital cases, including

notice of whether a proceeding is capital. *See Lankford v. Idaho*, 500 U.S. 110, 125 (1991).

This Court recognized in *In re al-Nashiri* that the mandamus calculus differs where the relief sought would itself "spare [the accused] the burdens of capital prosecution." 791 F.3d 71, 81 (D.C. Cir. 2015). In denying the writ, this Court distinguished *United States v. Harper*, in which the Ninth Circuit "relied on the 'substantial hardship' of a capital trial" to issue the writ, because al-Nashiri faced capital prosecution no matter the outcome. *Id.* (citing *Harper*, 729 F.2d 1216, 1222-23 (9th Cir. 1984)). By contrast, here the Military Judge believes himself prohibited from deciding whether this trial is capital at all.

"Enduring a trial that entails the possibility of a death penalty imposes a hardship 'different in kind' from enduring the discomfiture of any other trial," *Harper*, 729 F.2d at 1222, and no post-judgment appeal can restore years of capital litigation that might well be needlessly endured. The prospect of a death sentence forces grisly choices that distort an accused's trial strategy in ways that cannot be sufficiently corrected by post-trial review. In a capital trial, a defendant faces unique "practical and legally-cognizable disadvantages" arising from being "forced into trial tactics that are designed to avoid the death penalty but that have the consequence of making conviction more likely." *United States v. Quinones*, 313 F.3d 49, 59 (2d Cir. 2002); *see also Harper*, 729 F.2d at 1223. The "awesomeness

of the death penalty has no less impact when applied to" so-called unprivileged enemy belligerents. *Grisham v. Hagan*, 361 U.S. 278, 280 (1960).

**3. Clarifying the scope of this Court's Order is appropriate under the circumstances.** As this Court noted, these proceedings "implicate issues of immense national importance." 143 F.4th at 442. The country is now approaching a quarter-century since the September 11 attacks, and 18 years of pretrial litigation in the case of the men charged with those attacks. Obtaining long-delayed finality was why Petitioner and Respondents entered into the pretrial agreements. Petitioner's dismissive suggestion that the Military Judge's misconstruction of this Court's Order should be left to some far-away post-trial appeal begs for yet more distant finality. Such dismissiveness is particularly egregious where Petitioner is unwilling to defend the merits of the Military Judge's reading of the Order.

The Commission, the parties, and the public are entitled to resolution of this issue before a capital trial is conducted on a mistake.

## CONCLUSION

For the foregoing reasons, the motion for clarification should be granted.

Respectfully submitted,

Walter B. Ruiz
Suzanne M. Lachelier
Sean M. Gleason
Capt Joyclin N. Webster, JA, USAF
Capt Cameron Starr, JA, USAF
Capt Benjamin Pico, JA, USAF

Military Commissions Defense Organization
1620 Defense Pentagon
Washington, D.C. 20301-1620

*Counsel for Respondent,*
*Mustafa al Hawsawi*

/s/ Michel Paradis
Michel Paradis
Gary Sowards
Gabriela McQuade
Delphine Lourtau
Derek Poteet
Melanie Partow
Capt Ayana Anderson, JA, USAF

Military Commissions Defense Organization
1620 Defense Pentagon
Washington, D.C. 20301-1620

*Counsel for Respondent,*
*Khalid Shaikh Mohammad*

**CERTIFICATE OF COMPLIANCE**

I certify that this reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced typeface, and with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,471 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

/s/ Michel Paradis
Michel Paradis
Military Commissions Defense Organization
1620 Defense Pentagon
Washington, D.C. 20301-1620